UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| ADVANTAGE POINT, L.P. | : | Civil Action No. 14-5517 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF KUTZTOWN, KUTZTOWN | : | |
| MUNICIPAL AUTHORITY, PEGGY | : | |
| DEVLIN, SANDRA K. GREEN, GABRIEL | : | |
| KHALIFE, DEREK D. MACE, RACHAEL | : | |
| B. MARTIN, JAMES F. SCHLEGEL, | : | |
| EDWIN K. SEYLER, KEVIN J. SNYDER, | : | |
| LEE W. ERB, WILLIAM FOX, ANDREW | : | |
| SCHLEGEL, SHEILA FULTON, DONALD | : | |
| L. SECHLER, SSM GROUP, INC., DARYL | : | |
| A. JENKINS, CHRISTINA CRAWFORD, | : | |
| TIMOTHY G. DIETRICH, ESQUIRE, | : | |
| KEITH MOONEY, ESQUIRE, JEFFREY | : | |
| D. LOBACH, ESQUIRE, GEORGE | : | |
| WERNER, ESQUIRE, BARLEY SNYDER, | : | |
| LLC, JOSEPH A. O'KEEFE and MEL | : | |
| FISHBURN, | : | |
| Defendants. | : | |

_____


**MEMORANDUM OPINION AND ORDER**

**Joseph F. Leeson, Jr.**                                June 30, 2015
**United States District Judge**


1.    **INTRODUCTION**

    This civil rights action arises from a delayed real estate development project. According to the amended complaint, in connection with the development of student housing in Maxatawny Township ("township" or "Maxatawny"), the township and plaintiff Advantage Point, LP – the developer -

successfully sought an exemption from the lengthy sewage planning process required under Pennsylvania law. An April 30, 2014 approval letter issued by the Pennsylvania Department of Environmental Protection authorized plaintiff to bypass that sewage planning process and simply hook its project up to the sewer main owned by the neighboring Borough of Kutztown ("Kutztown"). Kutztown, however, appealed the issuance of the April 30, 2014 approval to the Pennsylvania Environmental Hearing Board ("EHB"), leaving plaintiff's development at a stand-still.

Plaintiff attributes the appeal to a conspiracy among defendants Kutztown Borough and its Municipal Authority[1], SSM Group, Inc. ("SSM") (Kutztown's engineers)[2], and Barley, Snyder, LLC ("Barley") (Kutztown's legal counsel)[3]. The goals of the alleged conspiracy are to hide alleged legal malpractice committed by Barley Snyder in related litigation involving Kutztown, and to force Maxatawny to abide by the terms of a long-standing inter-municipal sewer service agreement between Maxatawny and Kutztown. Plaintiff alleges that it is merely a pawn in these maneuverings, and that the

---

[1] The Kutztown defendants are Borough of Kutztown, Kutztown Municipal Authority, Gabriel Khalife (manager of the Borough and the Authority), Edwin Seyler, Peggy Devlin, Derek Mace, Rachael Martin, James Schlegel, and Kevin Snyder (Borough Council members), Sandra Green (Mayor of Kutztown), Lee Erb, William Fox, Andrew Schlegal, Sheila Fulton, and Donald Schlegel (members of Kutztown Municipal Authority).

[2] The SSM defendants are SSM Group, Inc., Darryl Jenkins and Christina Crawford, the latter employees of SSM.

[3] The Barley Snyder defendants are Barley Snyder, LLC, Timothy Dietrich, Keith Mooney, Jeffrey Lobach, and George Werner. They are alleged to have acted as counsel for Kutztown, and acted on their own behalf throughout the proceedings giving rise to this litigation. They were not included in the original complaint, but were added as defendants in the amended complaint.

conduct of the defendants vis-à-vis plaintiff's project has violated plaintiff's constitutional rights and caused it great economic loss. The Kutztown, SSM and Barley defendants each filed separate motions to dismiss the amended complaint.

On December 16, 2014, while Kutztown and SSM's motions were pending, the Environmental Hearing Board issued a decision in favor of Kutztown. *See* Adjudication, Exhibit 1 to SSM's supplemental brief in support of motion to dismiss, doc. no. 60. The Adjudication issued in connection with the decision includes numerous findings of fact.

Defendant SSM argues that principles of collateral estoppel require dismissal of plaintiff's amended complaint in light of the EHB's findings of fact. The Court agrees. Accordingly, for the following reasons, that portion of SSM's motion addressing the collateral estoppel effect of the EHB's Adjudication will be granted, and plaintiff's amended complaint will be dismissed without prejudice.[4]

## 2.    **FACTUAL BACKGROUND**

The Court writes this Memorandum Opinion for the parties and therefore the Court recounts only those facts relevant to the narrow issue before the Court.

---

[4] The remainder of SSM's motion to dismiss, and the motions of the Kutztown and Barley defendants will be denied without prejudice to refiling in the event plaintiff chooses to file a second amended complaint.

## A.   <u>Availability of Sewage Treatment for the Project</u>

According to the amended complaint, plaintiff, a developer, is planning a student housing project to be located in Maxatawny Township, which Township surrounds the Borough of Kutztown. Amended complaint, ¶¶ 41-43, 46. Plaintiff owns one parcel of land, and is the equitable owner of another parcel on which the project is to be built. *Id.,* ¶¶ 48-50. As envisioned, the project would tie into the Maxatawny Township Municipal Authority Area A Sanitary Sewer System. *Id.,* ¶ 60. The Area A System connects to an existing 20-inch gravity sewer main located in, and owned by, Kutztown. The Kutztown main connects, in turn, to Kutztown's Wastewater Treatment Plant. *Id.,* ¶ 62. Kutztown treats some of the waste water, while a portion of it is diverted to Maxatawny's Wastewater Treatment Plant. *Id.,* ¶ 63. The project is located in Area A, which is to be serviced by the Maxatawny Plant. *Id.,* ¶¶ 65-66. Maxatawny possesses all approvals for construction and operation of the Area A system, including connection to the Kutztown main. This is reflected in Maxatawny's 2007 Act 537 Plan, to which Kutztown has never objected. Area A is currently connected to the Kutztown main. *Id.,* ¶¶ 69-73.

The Kutztown main has the capacity to process an additional 300,000 GPD (gallons per day) of waste water. One-half of this capacity has been allocated to Maxatawny to serve Area A. Of this portion, 26,174 GPD are in use, leaving 123,826 GPD unused. The project would require 69,544 GPD. *Id.,* ¶¶ 74-79.

By two agreements dated December 27, 2012, the then owners of plaintiff's property reserved 74,000 GPD of the Maxatawny Plant's sewage treatment capacity for the project. *Id.*, ¶ 82. The Pennsylvania Department of Environmental Protection and the Delaware River Basin Commission have approved the use of the Kutztown main to transport sewage from the project to the Maxatawny Plant. Kutztown did not appeal these approvals. *Id.*, ¶¶ 85-86.

B.      **The Request for Exemption from the Sewage Planning Process**[5]

To allow the project's sewer to tie into the Area A System, on February 25, 2014, Maxatawny made an Act 537 Exemption Request. *Id.*, ¶ 89. In connection with the Act 537 Exemption Request, DEP requested certification from Kutztown as to the capacity of the Kutztown main to serve the project. *Id.*, ¶ 118. In a letter dated April 9, 2014 to Gabriel Khalife, Kutztown Borough Manager, Darryl A. Jenkins of SSM, Group, Inc., Kutztown's municipal engineer, responded that the Kutztown main had a reserve flow capacity of 300,000 GPD, 26,174 of which was in use, and that the project would require 69,544. SSM/Jenkins also incorrectly stated that only 75,000 GPD of the 300,000 was allocated to Maxatawny, leaving insufficient capacity for the project. *Id.*, ¶¶ 119-122. In a second letter dated April 15, 2014, Jenkins corrected this error, stating that 150,000 GPD was allocated to Maxatawny, thus the main had adequate capacity for the project. Jenkins noted, however,

---

[5] The record does not reflect what the planning process is in the absence of an exemption.

that allocation issues relating to the "SCRA agreement"[6] should be resolved before approval was granted. *Id.*, ¶¶ 123-1134.

On April 30, 2014, the DEP issued an approval letter relating to the Exemption Request. *Id.*, ¶ 138. Kutztown appealed, arguing that the letters prepared by SSM/Jenkins were for the Borough's use and did not constitute certification required by DEP to support an Exemption Request, and also arguing that the substantive issues raised in the letter should have prevented approval. *Id.*, ¶¶ 139-43. The appeal remained pending as of the filing of the amended complaint on November 1, 2014, and plaintiff's project was on hold.

### C. The Jenkins Letters

The April 9 and 15, 2014 Jenkins letters are the focus of plaintiff's conspiracy theory, and are addressed extensively in the following paragraphs of the amended complaint:

---

[6] On May 4, 2006, Maxatawny and Kutztown entered into the SCRA [Saucony Creek Regional Authority] Agreement – an inter-municipal sewage service agreement relating to the Maxatawny Plant. Differences arose between the municipalities, and on October 25, 2012, Maxatawny advised Kutztown that it was withdrawing from the SCRA agreement. Efforts to resolve the differences were unsuccessful and on December 10, 2013, Kutztown advised Maxatawny that Kutztown was confiscating the Maxatawny Plant. In response to this threat, on December 27, 2013, Maxatawny filed a declaratory judgment action seeking a determination that Kutztown had waived its rights under the SCRA agreement by not timely demanding arbitration as required in the agreement (the agreement includes a 90-day limitation on commencing claims arising under it.). Amended complaint, ¶¶ 151-66.

According to the amended complaint, the failure to timely arbitrate constitutes malpractice on the part of Barley Snyder, Kutztown's counsel. Realizing the nature of the situation, the firm urged Kutztown to (1) threaten to confiscate the Maxatawny Plant; (2) defend the declaratory judgment action; and (3) appeal the exemption approval, thereby delaying the development of plaintiff's project and putting pressure on Maxatawny, which would derive significant economic benefit from the project. *Id.*, ¶¶ 163, 165, 180-83.

118. In the course of seeking the Exemption Request, the DEP by way of its letter dated March 21, 2014 requested a certification from Kutztown concerning the capacity of the Main to serve the Advantage Point Project.

119. On April 9, and in response to the DEP's March 21, 2014 letter, SSM (Jenkins) prepared a letter to the Borough.

120. In his April 9, 2014 letter, Jenkins acknowledged that the Main has a reserve flow capacity of 300,000 GPD, that 26,174 GDP were then in use, and that the Advantage Point Project required 69,544 GPD, all of which is accurate.

121. Instead of focusing on capacity, as he should have done in his role as Kutztown's engineer and as required by the DEP's March 21, 2014 letter, Jenkins claimed that only 75,000 GPD of the total 300,000 GPD of available capacity were allocated to transport flows from Maxatawny.

122. Based on his incorrectly asserted limitation on allocation, Jenkins concluded that there was only 48,826 GPD of capacity available for the Advantage Point Project, resulting in a shortfall in capacity of 20,718 GPD (69,544-48,826).

123. When it was uncovered that the facts were misrepresented in the April 9, 2014 letter, the Kutztown Defendants, SSM Defendants, and Barley Defendants created a new letter to interfere with the Exemption Request.

124. SSM (Jenkins), together with input from the Barley Defendants and Kutztown Defendants, issued a new letter on April 15, 2014.

125. In his April 15, 2014 letter, Jenkins asserted that he had "confirmed that Maxatawny was provided a total flow allocation of 150,000 GPD," not the 75,000 GPD indicated in the April 9, 2014 letter.

126. **But**, while he admitted (as he must) in his April 15, 2014 letter that the Main has sufficient capacity to serve the Advantage Point Project, Jenkins, under the direction of the Barley defendants and the Kutztown Defendants, created new arbitrary issues relating to the "SCRA agreement" (see next section below), which had nothing to do with the Main's capacity to serve Advantage's sewage needs.

127. It has never been asserted, nor is there any dispute, that the Area A System, the Main, and the MTMA Plant have the capacity to receive and treat the sewage flows from the Advantage Point Project, and that the additional waste load from the Advantage Point Project will not create a hydraulic or organic overload or 5-year projected overload, in compliance with 25 Pa. Code § 71.51(b)(2)(iii), which was the only open issue to be considered by the DEP concerning the Exemption Request.

128. Jenkins acknowledged (as he must) that the Main has a reserve flow capacity of 300,000 GPD, that 150,000 GPD of that capacity is allocated to Maxatawny, that 26,174 GPD of the 150,000 GPD are in sue, and that the Advantage Point Project requires only 69,544 GPD.

129. Despite the available capacity in the Main, Jenkins conspired with the Kutztown Defendants and Barley Defendants to prepare the April 15, 2014 letter in such a way to delay the Advantage Point Project by attempting to interfere with the Exemption Request by making **allocation** an issue.

130. Jenkins, together with the assistance of the Kutztown Defendants and the Barley Defendants, inserted additional (indeed, completely gratuitous) language relating to the alleged allocation issue in the April 15, 2014 letter, which the Defendant have used as a basis to illegally, tortiously, and maliciously interfere with Advantage's development of the Advantage Point Project.

131. Jenkins, together with the assistance of the Kutztown Defendants and the Barley Defendants, included in his April 15, 2014 letter numerous legal conclusions, allegations, and assertions concerning a dispute that has been ongoing between Maxatawny and Kutztown regarding the SCRA agreement, all of which were unrelated to the capacity of the Main.

132. All that Jenkins was required to do was to state the capacity of the Main.

133. Instead, with the assistance of the Barley Defendants and the Kutztown Defendants, he created a letter to be used by the Kutztown Defendants to interfere with Advantage's rights.

134. The Defendants, by way of their April 15, 2014 letter, argued that until the dispute between Maxatawny and Kutztown concerning the SCRA agreement is resolved, Advantage should not be permitted to tie into the Area A System.

138. On or about April 30, 2014, the DEP ultimately determined that the Exemption Request satisfied all of the regulatory requirements and approved the Exemption Request by way of its approval letter dated April 30, 2014 (the "Exemption Approval").

139. Having failed at preventing the DEP from approving the Exemption Request, the Defendants then claimed that the DEP erred because the April 9, 2014 and April 15, 2014 letters were not the certification responsive to the DEP's March 21, 2014 letter.

140. But for the DEP's March 21, 2014 letter requesting a certification from Kutztown, however, Kutztown and its engineer SSM had no independent reason to prepare either the April 9, 2014 letter or the April 15, 2014 letter.

141. The only reason Kutztown and SSM issued the April 9, 2014 or the April 15, 2014 letter was to respond to the DEP'S March 21, 2014 letter requesting a certification.

142. Yet, as described below, in their appeal challenging the Exemption Approval, the Defendants assert that Kutztown has never issued a certification in compliance with the DEP's March 21, 2014 letter.

143. In a blatant effort to unlawfully interfere with Advantage's rights, the Defendants (under the name Kutztown) appealed the Exemption Approval by way of filing a notice of appeal on or about May 14, 2104 (the "Appeal").

144. The Jenkins April 15, 2014 letter was the cornerstone of the Appeal, which Kutztown used extensively to argue why the DEP erred, and that the DEP never should have issued the Exemption Approval.

145. The Jenkins April 15, 2014 letter was prepared to unlawfully oppose the Exemption Request.

146. The Jenkins April 15, 2014 letter is referenced throughout the Appeal and was used by the Barley Defendants and the Kutztown Defendants as the basis for the Appeal.

147. Kutztown uses the April 15, 2014 letter in support of its argument that the "allocation issue" under the SCRA agreement should have been resolved before the DEP approved the Exemption Request.

148. Stated differently, the Jenkins April 15, 2014 letter, which was prepared with the assistance and input of the Barley Defendants and the Kutztown Defendants, goes beyond objective engineering practices and constitutes the unlawful interjection of the SSM Defendants and the Barley Defendants arguments into the Exemption Request process.

Amended complaint.

## D.    **EHB's Adjudication of Kutztown's Appeal**

On December 16, 2014, the EHB ruled in favor of Kutztown, finding that the April 15, 2014 Jenkins letter did not constitute the required certification from Kutztown regarding capacity. The EHB determined that DEP should not have approved the exemption request in the absence of the required certification.

As to the issues addressed on appeal, according to EHB, "[t]here is only one issue in this case: Did Kutztown, a permittee whose line must be used to transport sewage from the proposed new land development, provide the written certification required under Section 71.51(b)(2)(iii)? It is very clear that it did not, which means that the Department erred in granting the planning exemption to Maxatawny Township for the Advantage Point project." *Id.*, Discussion at 20.

The Jenkins letter figured largely in the EHB's Adjudication, and, indeed, was reproduced verbatim. *Id.*, Finding of Fact no. 32. The EHB made the following findings with respect to the letter:

30. At some point, Advantage Point's exemption request was forwarded to Kutztown's engineer, Darryl A. Jenkins of the SSM Group, Inc., for comment.

31. Jenkins sent a letter dated April 15, 2014 to Gabriel Khalife, the Kutztown Borough Manager, providing his comments regarding Maxatawny's exemption request.

36. Jenkins's April 15, 2014 letter was not intended as a recommendation that Kutztown sign off on the exemption.

37. Jenkins's letter was not a certification on behalf of Kutztown that capacity was available in its interceptor now and/or for the next five years.

38. Kutztown did not authorize Jenkins to provide a certification.

39. Kutztown only asked Jenkins to review the exemption request and prepare comments.

40. The Department was not copied on the letter, and neither Jenkins nor Kutztown sent the letter to the Department.

41. Although Kutztown did not tell Jenkins to provide a copy of his comments to Advantage Point or Maxatawny, Advantage Point's engineer nevertheless obtained a copy of the letter from Jenkins.

42. Advantage Point's engineer sent a copy of the letter to the Department without clearing it with Kutztown, and asked if the letter could serve as the required certification of Kutztown.

*Id.*, Findings of Fact nos. 30, 31, 36-42 (references to underlying record omitted).

Though limiting its decision to the single issue noted above, the EHB nonetheless recognized the "allocation issue" to which plaintiff refers, *see id.*, Findings of Fact nos. 11-14 and Discussion at 15 n.5. The EHB found that DEP had "at all relevant times been aware of the dispute between Maxatawny and Kutztown," *Id.*, Discussion at 15, and faulted DEP for issuing an exemption under such circumstances:

> It should be remembered that this appeal involves the exemption from planning requirements, An exemption from planning requirements should be reserved for straightforward,

uncomplicated, noncontroversial situations where everyone is on board and there are not complicating factors. This case is nothing like that. The need for rational planning with appropriate input from all concerned parties as well as the public would seem to be particularly acute in cases such as this.

*Id.*, Discussion at 19. Moreover, the EHB noted Maxatawny's and plaintiff's frustration with Kutztown's position that it would not provide certification of the capacity of the main until the fate of the SCRA agreement was resolved, and opined that Kutztown's position was not unreasonable:

> Here, Kutztown has withheld its certification regarding the use of its inceptor. Maxatawny and Advantage Point complain bitterly that they are being held hostage to Kutztown's unreasonable and unfair demands regarding the use of its interceptor. We are not convinced that Kutztown's position is unreasonable or unfair, but even if it were, it would not matter. Maxatawny must obtain Kutztown's certification of its request for an exemption from planning requirements cannot be approved under 25 Pa. Code § 71.51.

*Id.*, Discussion at 14-15 (footnote omitted).

### 3.  **PLAINTIFF'S CLAIMS**

The amended complaint includes the following claims: Count I – violation of the Fourteenth Amendment - Equal Protection ("class of one"); Count II – violation of the Fourteenth Amendment - Procedural Due Process; Count III – violation of the Fourteenth Amendment - Substantive Due Process; Count IV – violation of the Fifth Amendment Takings Clause; Count V – tortious interference with existing or prospective contractual relations; Count VI – negligent misrepresentation (against SSM and Jenkins only); and Count VII – civil conspiracy.

The importance of the Jenkins letters to plaintiff's claims cannot be overstressed. To plaintiff, the letters are nothing less than the announcement and embodiment of a policy: that Kutztown will not provide certification of the capacity of its main until the declaratory judgment action addressing the vitality of the SCRA agreement is resolved. *See, e.g.*, plaintiff's memorandum in opposition to Barley defendants' motion to dismiss, doc. no. 62, at 24 (describing chain of events involved in defendants conspiracy as beginning with "the creation and announcement of the policy set forth in the April 15, 2014 letter, which impermissibly ties the development of the Project to the Dec. Action."). That alleged policy is the basis for plaintiff's claims. The letters themselves are the sole basis for the claims against the SSM defendants, and the foundation for the conspiracy claim. According to SSM, the facts upon which plaintiff's claims are based are contrary to those found by the EHB and, as such, plaintiff is precluded from asserting these claims.

4. **LEGAL ANALYSIS**

   A. **The Ripeness Doctrine**

      (i) **The Availability of the Normal Sewage Facilities Planning Process as an Alternative Avenue for Plaintiff to Seek Approval for Its Project**

In its motion to dismiss the amended complaint, SSM argued that plaintiff's claims were not ripe so long as Kutztown's appeal was pending. Even after the EHB issued its decision, SSM continued to argue that plaintiff's claims remain unripe because of the continuing availability of the normal sewage facilities planning process. The Adjudication speaks to this:

13

17. An exemption request seeks permission from the Department to be excused from the more extensive sewage facilities planning that would normally be required for a new development.

19. The Department interprets 25 Pa. Code § 71.51(b)(2) to mean that an applicant for an exemption must obtain a certification from the permittee(s) of the sewage facilities that are proposed to be used. Even if a certification is withheld for an improper reason or no reason at all, an exemption is not available under the Department's interpretation.

20. <u>If the exemption cannot be obtained, the applicant must go through the normal planning process</u>.

21. The normal planning process, however, also requires a similar certification in Section J of Component S of the planning modules.

22. If the certification is not obtained for whatever reason, the Department will not approve the planning modules.

*See* Adjudication, Findings of Fact nos. 17-21 (references to underlying record omitted, emphasis added).

There is no impediment to plaintiff and Maxatawny's completion of "the more extensive sewage facilities planning" required by 25 Pa. Code § 71.51 for a new development. However, plaintiff argues that it would be futile for it to do so in light of Kutztown's stated intent to withhold certification pending resolution of the Maxatawny declaratory judgment action.

### (ii) The Ripeness Doctrine and the Finality Rule

SSM also argues that plaintiff's claims are not ripe because no final decision has been issued with respect to plaintiff's ability to connect its project to Kutztown's main.[7] "Unripe claims should ordinarily be disposed of on a motion to dismiss, not summary judgment." *Taylor Inv., Ltd. v. Upper Darby*

---

[7] The EHB's decision has been appealed.

*Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993) (vacating award of summary judgment in defendant's favor and remanding with instructions to dismiss claims as unripe). In *Taylor*, as here, plaintiffs brought constitutional challenges to a land use decision under 42 U.S.C. § 1983. "The Supreme Court has held that such challenges are not ripe unless plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." *Id.* *Taylor* also addressed the scope of the finality rule, which recognizes that a property owner suffers no mature constitutional injury until the land use issue is finally determined and the injury, if any, to the plaintiff defined. Under *Taylor*, the finality rule applies to equal protection, due process and takings-type claims – the type of claims asserted by plaintiff here.

Plaintiff counters that the ripeness and finality arguments posed by SSM are not applicable. Plaintiff is challenging Kutztown's stated position – its policy - that it will not certify the capacity of the Main until the Maxatawny declaratory judgment action is resolved. The finality rule "does not apply . . . to *facial* attacks on a zoning ordinance, i.e., a claim that the mere enactment of a regulation either constitutes a taking without just compensation, or a substantive violation of due process or equal protection." *County Concrete Corp., v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (citations omitted, emphasis in original). Where the attack is only facial, the plaintiff is not required to exhaust all available procedures in order to render its claims ripe.

Putting aside the issue whether a policy not embodied in enacted legislation is subject to such a facial attack, collateral estoppel precludes this argument for the same reasons that it requires dismissal of plaintiff's amended complaint.

### B.     The Doctrine of Collateral Estoppel

SSM argues that collateral estoppel bars plaintiff's claims, because the issues raised in the amended complaint were already addressed, or could have been, in the proceedings before the EHB. Plaintiff counters that the doctrine cannot apply because, as explicitly stated in the Adjudication, the only issue decided by the EHB was **whether** Kutztown provided the required certification of capacity. Plaintiff's claims in this case rest on **why** and **how** certification was not provided, an issue the EHB explicitly did not address. *See, e.g.*, Adjudication, at 14 ["There is no occasion for the Department (or this Board) to scrutinize the permittee's motivation in withholding its certification."] As such, none of the issues raised in the amended complaint were presented, or, according to plaintiff, could have been, and the EHB's decision should not preclude litigation of the claims raised in the amended complaint.

As a preliminary matter, issue preclusion and claim preclusion are different. "'Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.' *Id.* 'Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.' *Id.*" *M&M Stone Co. v. PA*, 388 Fed. App'x

156, 161 (3d Cir. 2010) (affirming dismissal of substantive due process, equal protection, procedural due process, and First Amendment claims as barred under doctrine of issue preclusion in light of prior proceedings before EHB and Commonwealth Court), quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Issue preclusion, thus, is narrower.

"Although issue preclusion is an affirmative defense, it may be raised in a motion to dismiss under Federal Civil Procedure Rule 12(b)(6)." *M&M Stone Co.*, 388 Fed. App'x. at 162. This may be done without converting the motion into one for summary judgment. *Id.* "'A court that examines a transcript of a prior proceeding to find facts [rather than to merely consider whether issues have been previously addressed] converts a motion to dismiss into a motion for summary judgment.'" *Id.* (citations omitted). Within these parameters, we examine the Adjudication to determine what issues presented in plaintiff's amended complaint vis-à-vis the SSM defendants have already been litigated.

Under Pennsylvania law, issue preclusion applies if:    (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom issue preclusion is asserted was a party, or in privity with a party, in the prior case; (4) the party, or person privy to the party, against whom issue preclusion is asserted had a full and fair opportunity to   litigate the issue in the prior proceeding. *Id.* at 161. SSM argues that all of the criteria are satisfied.

Plaintiff's claims against the SSM defendants are based on the Jenkins letters. According to SSM, the factual averments with respect to those letters

were litigated by Advantage Point and decided by the EHB in the course of Kutztown's appeal, as noted above. There was a final judgment on the merits in that proceeding.[8] Plaintiff, an intervenor in the Appeal, had a full opportunity to present evidence on the issues decided by the EHB and which now underlie this litigation, and to litigate all issues now raised against the SSM defendants. Finally, the factual determinations were essential to the judgment. As such, plaintiff cannot now allege that the Jenkins letter was anything more than what the EHB found that it was - comments from the borough engineer to the borough manager – and that rendering such comments does not provide an adequate factual basis for the constitutional claims asserted against the SSM defendants.

While vigorously arguing that collateral estoppel does not bar its claims in this case, because the only issue decided by the EHB was whether Kutztown provided certification of capacity in connection with Maxatawny's exemption request, plaintiff, nonetheless, concedes that the fact-finding included in the Adjudication is entitled to preclusive effect. Plaintiff's supplemental memorandum in opposition to motion to dismiss at 32, doc. no. 62, citing *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) ("[I]n section 1983 cases, only state administrative factfinding is entitled to preclusive effect in the federal courts when the agency ruling remains

---

[8] A Petition for Review of the Adjudication has been filed with the Pennsylvania Commonwealth Court. SSM's supplemental brief in support of motion to dismiss, at 1, doc. no. 60. However, "[f]or purposes of collateral estoppel, a judgment is deemed final unless or until it is reversed on appeal. . . . [a] pending appeal does not destroy the finality of a decision." *App. of Pa. Turnpike Comm'n*, 715 A.2d 1219, 1223 n.9 (Pa. Cmwlth. 1998).

unreviewed by state courts.") (citations omitted). This is critical to the SSM defendants' collateral estoppel argument, because the cornerstone of the EHB decision is the purpose and import of the Jenkins letter. Similarly, the Jenkins letters lie at the heart of plaintiff's conspiracy theory. *See supra*. It is SSM's position that the EHB's findings with respect to the Jenkins letter preclude plaintiff's claims against SSM in this litigation, which are based entirely on the Jenkins letter.

The EHB's findings of fact with respect to the Jenkins letters are binding. The allegations in the amended complaint with respect to the preparation and purpose of the Jenkins letters are at odds with those findings. *See supra*. Under Pennsylvania law, the plaintiff cannot relitigate these matters, and further, cannot base its claims on a factual scenario that does not give due deference to previously litigated issues. Accordingly, the amended complaint must be dismissed.

**5.** **CONCLUSION**

The narrow ruling rendered herein should not be interpreted as holding that the EHB's decision is not entitled to further preclusive effect. It is merely reflective of the procedural posture of both the administrative proceedings and this case, and the intent not to convert defendants' motion to one for summary judgment. Indeed, the Adjudication strongly suggests that plaintiff is attempting to litigate claims in this case – for example, the reasonableness of Kutztown's decision to withhold certification pending resolution of the Maxatawny's declaratory judgment action – that have already been addressed

and decided. Plaintiff is cautioned to give due deference to the multiple findings of the EHB in particular, and principles of collateral estoppel in general, should it decide to file a second amended complaint.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
**Joseph F. Leeson, Jr.**
**United States District Judge**