## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADVANTAGE POINT, L.P., | : | |
| | : | Case No. 5:14-cv-05517-JFL |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL REQUESTED** |
| | : | |
| BOROUGH OF KUTZTOWN, *ET AL.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2015, upon consideration of Defendants' SSM Group, Inc., Darryl Jenkins, and Christina Crawford's Motion to Dismiss the Second Amended Complaint (Doc. 87), Defendants' Borough of Kutztown, Kutztown Municipal Authority, Devlin, Green, Khalife, Mace, Martin, J. Schlegel, Seyler, Seyler, Snyder, Erb, Fox, A. Schlegel, Fulton and Sechler's Motion to Dismiss Second Amended Complaint (Doc. 88), and Defendants' Timothy G. Dietrich, Keith Mooney, Jeffrey D. Lobach, George Werner, Charles Haws, and Barley Snyder LLC's Motion to Dismiss Second Amended Complaint (Doc. 90), and Plaintiff's Omnibus Brief in Opposition to Defendants' Motions to Dismiss the Second Amended Complaint, it is hereby **ORDERED** that defendants' motions (Doc. 87, 88, and 90) are **DENIED**.

BY THE COURT:

_____

Honorable Joseph F. Leeson, Jr., U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| ADVANTAGE POINT, L.P., | : | Case No. 5:14-cv-05517-JFL |
| | : | |
| Plaintiff, | : | |
| | : | **JURY TRIAL REQUESTED** |
| v. | : | |
| | : | |
| BOROUGH OF KUTZTOWN, *ET AL.* | : | |
| | : | |
| Defendants. | : | |

_____

### PLAINTIFF ADVANTAGE POINT, L.P.'S OMNIBUS BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

KANG HAGGERTY & FETBROYT LLC

Edward T. Kang
Daniel D. Haggerty
David P. Dean
123 S. Broad Street, Suite 1670
P: (215) 525-5850
F: (215) 525-5860
*Attorneys for Plaintiff,*
*Advantage Point, LP*

Dated: August 28, 2015

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    THE FACTUAL ALLEGATIONS IN THE SAC ............................................... 2

III.   LEGAL STANDARD ........................................................................................ 15

IV.    ARGUMENT ..................................................................................................... 16

    A. ADVANTAGE'S CLAIMS AGAINST DEFENDANTS ARE NOT BARRED BY
    COLLATERAL ESTOPPEL ............................................................................ 16

        1.  The Issues Presented in the SAC are Not Identical to the Issue Decided
        by the EHB ............................................................................................. 17

        2.  No Issue Asserted in the SAC was Fully and Fairly Litigated Nor
        Essential to the EHB's Determination ............................................... 18

    B. ADVANTAGE'S CLAIMS AGAINST DEFENDANTS ARE RIPE. ......................... 19

    C. THE SSM DEFENDANTS AND BARLEY DEFENDANTS ACTED UNDER
    COLOR OF STATE LAW .............................................................................. 26

        1.  The SSM Defendants Acted Under Color of State Law ................................. 26

        2.  The Barley Defendants Acted Under Color of State Law ............................. 29

        3.  The Barley Defendants Were Co-Conspirators and Plaintiff Has Sufficiently
        Pled Involvement for Their Sole Benefit, Outside the Scope
        of Representation ................................................................................. 33

    D. PLAINTIFF HAS SUFFICIENTLY PLED ITS CONSTITUTIONAL CLAIMS
    AGAINST DEFENDANTS ............................................................................. 36

        1.  The SAC Sufficiently Asserts a Claim Against Defendants for Violations of
        Advantage's Equal Protection Rights ............................................... 36

    2.  The SAC Sufficiently Pleads a Violation of Plaintiff's Procedural Due
    Process Rights ...................................................................................... 41

        3.  The SAC Sufficiently Pleads a Violation of Plaintiff's Substantive Due
        Process Rights ...................................................................................... 44

        4.  The SAC Sufficiently Alleges a Claim for Unconstitutional Taking of
        Advantage's Property .......................................................................... 49

        5.  The SAC Sufficiently Alleges a First Amendment Claim for Retaliation. ..... 51

    E. THE SAC HAS SUFFICIENTLY ALLEGED A CLAIM AGAINST THE
    DEFENDANTS FOR TORTIOUS INTERFERENCE OF EXISTING OR
    PROSPECTIVE CONTRACTUAL RELATIONS ................................................. 52

    F. ADVANTAGE HAS SUFFICIENTLY ALLEGED A CLAIM AGAINST
    DEFENDANTS FOR CONSPIRACY ................................................................ 55

    G. NEITHER THE KUTZTOWN DEFENDANTS NOR THE BARLEY DEFENDANTS
    ARE ENTITLED TO QUALIFIED IMMUNITY ................................................. 56

H. THE COURT SHOULD NOT STRIKE THE PARAGRAPHS OF THE SAC RELATING TO DAMAGES. ........................................................................ 58

I. ADVANTAGE POINT HAS THE CAPACITY TO BRING SUIT AGAINST DEFENDANTS ........................................................................................ 58

J. THE SAC COMPLIES WITH RULE 8(a)(2) ............................................. 59

K. ADVANTAGE SHOULD BE GRANTED LEAVE TO AMEND IF APPROPRIATE. ................................................................................... 60

V. CONCLUSION ............................................................................................. 60

**Table of Authorities**

**Cases**

*ABD Monroe, Inc. v. Monroe Twp.*, No. CIV.A.04-1412(WHW),
2008 WL 58876 (D.N.J. 2008) .............................................. 47

*Adler Barish v. Epstein*, 482 Pa. 416, 393 A.2d at 1183 (1978)................. 52

*Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) .................. 23

*Ammlung v. City of Chester,* 494 F.2d 811 (3d Cir.1974) ........................... 34

*Andrekovich v. PennPrime Liab. Trust,*
2013 U.S. Dist. LEXIS 29781 (W.D. Pa. Mar. 5, 2013) ...................... 33

*Angelico v. Lehigh Valley Hosp.,* 184 F.3d 268 (3rd Cir. 1999) ........................... 29, 30

*Annunziato v. The Gan, Inc.,* 744 F.2d 244 (2d Cir. 1984)........................... 27

*Anselma Station, Ltd. v. Pennoni Associates, Inc.*, 654 A.2d 608 (Pa. Commw. Ct. 1995)......... 28

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................... 15, 59

*Belkowski v. Kruczek*, 2010 WL 1433099 (W.D.Pa. 2010)................................. 30, 31, 32

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .................................... 15, 16, 59

*Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988)....................................... 20, 42

*Blain v. Twp. of Radnor*, 167 F. App'x 330 (3d Cir. 2006) ........................ 47

*Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253 (3d Cir. 1995).................... 20, 21, 22

*Board of Regents of State Colleges v. Roth,* 408 U.S. 577 (1972)........................... 44

*Bochetto v. Gibson*, 580 Pa. 245, 860 A.2d 67 (2004) ................................... 54

*Brubaker v. E. Hempfield Twp.*, 234 F. App'x 32 (3d Cir. 2007) ........................ 24, 25

*Cherry Hill Towers, L.L.C. v. Twp. of Cherry Hill,*
407 F. Supp. 2d 648, 654 (D.N.J. 2006) ...................................... 44, 45

*Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532 (E.D.Pa. 1982) .................. 27

*City of Cleburne v. Cleburne Living Center,* 473 U.S. 432,
105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ...................................... 36

*Corneal v. Jackson Twp.,* 313 F.Supp.2d 457 (M.D.Pa. 2003),
*aff'd.*, 94 Fed.Appx. 76 (3d Cir.2004) ...................................... 47

*Cornell Companies, Inc. v. Borough of New Morgan,*
512 F.Supp.2d 238 (E.D. Pa. 2007) ......................................... 21, 26

*County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159 (3d Cir. 2006)........................... *passim*

*Crawford–El v. Britton*, 523 U.S. 574 (1998).........................................................51, 52

*Crumpacker v. Civiletti*, 90 F.R.D. 326 (N.D. Ind. 1981) ...........................................59

*Darr v. Wolfe,* 767 F.2d 79 (3d Cir. 1985) ..................................................................26

*Dasrath v. Continental Airlines, Inc.,* 228 F.Supp.2d 531 (D.N.J. 2002) ....................20

*DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,* 53 F.3d 592 (3d Cir. 1995)........45

*Dennis v. Sparks,* 449 U.S. 24 (1980) .........................................................................26

*Doe v. County of Centre, PA*, 242 F.3d 437 (3d Cir. 2001)....................................19, 20

*Dunsmore v. Chester Cnty. Children & Youth Servs.*, 1993 WL 101200 (E.D. Pa. 1993) ..........57

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614,
    111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) ................................................................30

*Edmundson v. Borough of Kennett Square*, 4 F.3d 186 (3d Cir. 1993)..........................16

*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274 (3d Cir. 2004) ..........................37, 47, 48

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, CA,*
    482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)........................................49, 50

*Foman v. Davis*, 371 U.S. 178 (1962) ..........................................................................60

*Fortune Dev., L.P. v. Bern Twp.*, 2013 WL 990454 (E.D. Pa. 2013)......................41, 42

*Frompovicz v. Twp. of S. Mannheim*, 2007 WL 2908292 (M.D.Pa. 2007) ...................30

*Gillibeau v. City of Richmond*, 417 F.2d 426 (9th Cir. 1969).......................................59

*Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005)..........................................44

*Good v. Dauphin County Social Services for Children & Youth,*
    891 F.2d 1087, 1091 (3d Cir.1989).........................................................................57

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................................57

*Harris ex rel. Litz v. Lehigh Cnty. Office of Children & Youth Servs.*,
    418 F.Supp.2d 643 (E.D. Pa. 2005) .......................................................................44

*Hauptmann v. Wilentz,* 570 F.Supp. 351 (D.N.J. 1983) ...............................................27

*Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) ...................................32, 33, 35

*Holland Transp., Inc. v. Twp. of Upper Chichester*, 2002 WL 31518836
    (E.D. Pa. 2002), *aff'd sub nom. Holland Transp., Inc. v. Upper Chichester Twp.*,
    75 F. App'x 876 (3d Cir. 2003) ..............................................................................21

*Hosp. Bldg. Co. v. Trustees of Rex,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)..........55

*Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir. 1984) .......................60

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 116 L.Ed. 2d 589 (1991).................57

iv

*Imperiale v. Hahnemann Univ.*, 776 F.Supp. 189 (E.D. Pa. 1991)
    *aff'd*, 966 F.2d 125 (3d Cir. 1992) ........................................................ 35

*Johnston v. Dauphin Borough*, 2006 WL 1410766 (M.D.Pa. 2006) ........................................... 47

*Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187 (3d Cir. 2004) ....................................... 19

*King v. Twp. of East Lampeter,* 17 F.Supp.2d 394 (E.D.Pa. 1998),
    *aff'd.,* 182 F.3d 903 (3d Cir.1999) ...................................................... 50

*Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996) ................................................ 33

*Kolodziej v. Borough of Elizabeth*, 2008 WL 4858295 (W.D. Pa. 2008) .................................... 21

*Kriss v. Fayette Cnty.*, 504 F. App'x 182 (3d Cir. 2012) ................................................ 52

*Leveto v. Lapina,* 258 F.3d 156 (3d Cir.2001) ................................................. 56

*Lingle v. Chevron, USA, Inc.,* 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) .............. 49

*Long v. Bristol Twp*., 2012 WL 2864410 (E.D. Pa. 2012) ............................................ 44

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ................. 30

*Lum v. Bank of Am.,* 361 F.3d 217 (3d Cir. 2004) ....................................................... 15

*MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340,
    106 S.Ct. 2561, 91 L.Ed.2d 285 ....................................................... 22

*Maple Properties, Inc. v. Township of Upper Providence, et al.,* 2004 WL 2579740 ................. 45

*Marshall v. Fenstermacher*, 388 F. Supp. 2d 536 (E.D. Pa. 2005) ............................... 32

*Matthew Johnston, et al. v. Dauphin Borough, et al.*, 2006 WL 1410766 ................................ 47

*Merrill Lynch Business Financial Services, Inc. v. Plesco, Inc.*,
    859 F. Supp. 818 (E.D. Pa. 1994) .................................................... 60

*Midnight Sessions, Ltd., et al. v. City of Philadelphia, et al.,* 945 F.2d 667 (3d Cir. 1991) ......... 50

*Mitchell v. Horn*, 318 F.3d 523 (3d Cir.2003) ............................................. 51

*N'Jai v. Floyd*, 386 F.App'x 141 (3d Cir. 2010) ....................................... 35

*Nicolette v. Caruso*, 315 F.Supp.2d 710 (W.D.Pa.2003) ................................. 47, 48, 55

*Nollan v. California Coastal Comm'n, supra,* 483 U.S. 834, 107 S.Ct. 3147 (1987) ................. 23

*Nuway Environmental Limited v. Upper Darby Twp.,* 2006 WL 212289 (E.D.Pa. 2006) .......... 36

*O'Hanlon v. City of Chester*, 2002 WL 393122 (E.D.Pa. 2002) ................................. 30

*Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001) .......... 22, 25

*Pardue v. Gray*, 136 Fed.Appx. 529 (3d Cir. 2005) ...................................... 55

*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) .................................... 41

*Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003) ............................................................... 19

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) ................. 22

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ......... 15

*Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) ...................................................... 15

*Pilchen v. City of Auburn, N.Y.,* 728 F. Supp. 2d 192 (N.D.N.Y. 2010) ...................................... 46

*Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833,
112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ...................................................................................... 41

*Post v. Mendel*, 510 Pa. 213, 507 A.2d 351 (Pa.1986) ................................................................. 54

*Prosperi v. Twp. of Scott*, 2006 WL 2583754 (W.D. Pa. 2006) ........................................... *passim*

*Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252 (3d Cir. 2008) .................................................... 17

*Rackin v. University of Pennsylvania*, 386 F.Supp. 992 (E.D.Pa. 1974) ...................................... 35

*Ransom v. Marrazzo*, 848 F.2d 398 (3rd Cir. 1988) ............................................................... 45, 46

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................................... 57

*Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) ........... 50

*Simon Property Group v. Palombaro, et al.*, 2009 WL 1549293 (W.D.Pa. 2009) ...................... 16

*Skepton v. Bucks Cnty., Pa.*, 628 F. Supp. 177 (E.D. Pa. 1986) ....................................... 26, 27, 28

*Skupien v. Borough of Gallitzin*, 134 Pa. Cmwlth. 115, 578 A.2d 577 (1990) ........................... 45

*Spencer v. Steinman*, 968 F.Supp. 1011 (E.D. Pa. 1997) ........................................................ 33, 34

*Spradlin v. Borough of Danville*, 2005 WL 3320788 (M.D.Pa. 2005) .................................... 30, 45

*Strickland v. University of Scranton*, 700 A.2d 979 (Pa.Super. 1997) ........................................ 52

*Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204 (7th Cir. 1980) .................................... 27

*Thomas v. Independence Tp*. 463 F.3d 285 (3d Cir. 2006) .............................................. 51, 56, 57

*Tower v. Glover,* 467 U.S. 914 (1984) .......................................................................................... 26

*TruePosition, Inc. v. LM Ericsson Tel. Co.*, 2012 WL 3584626 (E.D. Pa. Aug. 21, 2012) ......... 20

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA,*
316 F.3d 392 (3d Cir. 2003) .................................................................................. 21, 42, 47, 50

*Venetec Inter., Inc. v. Nexus Medical, LLC*, 541 F. Supp.2d 612 (D. Del. 2008) ....................... 60

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ........... 36

*Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994) ...................... 44

*Williams v. Borough of West Chester,* 891 F.2d 458 (3d Cir. 1989) ............................................ 44

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*,
473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) ............................................................ 22

*Willis v. Carroll Twp.*, 2008 WL 644762 (M.D. Pa. 2008) ..................................................... 30, 37

*Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118 (3d Cir. 2000).......................................... 21

*Yee v. City of Escondido, Cal.*, 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)............. 22

**Statutes**

25 Pa. Code § 71.51 ............................................................................................................... *passim*

25 Pa.Code § 71.14(a)................................................................................................................. 42

28 U.S.C. § 1983 ..................................................................................................................... *passim*

35 Pa. Stat. Ann. § 750.5(b)....................................................................................................... 42

42 U.S.C. §1983 ..................................................................................................................... 29, 55

**Other Authorities**

35 P.S. § 750.5(a).......................................................................................................................... 5

5 *Wright & Miller, Federal Practice & Procedure* § 1217 at 128 ............................................. 59

Restatement (Second) of Torts § 766.......................................................................................... 52

**Rules**

Fed. R. Civ. P. 17(b)(3)............................................................................................................... 58

Federal Rule of Civil Procedure 8(a)(2) ..................................................................................... 59

Local Civil Rule 5.1.1 ................................................................................................................. 58

Local Rule 53.2............................................................................................................................ 58

Pa. R. Civ. P. 2127(a) ................................................................................................................. 58

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|   |   |   |
|---|---|---|
| | : | |
| ADVANTAGE POINT, L.P., | : | Case No.  5:14-cv-05517-JFL |
| | : | |
| Plaintiff, | : | |
| | : | **JURY TRIAL REQUESTED** |
| v. | : | |
| | : | |
| BOROUGH OF KUTZTOWN, *ET AL.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

_____

### PLAINTIFF ADVANTAGE POINT, L.P.'S OMNIBUS BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

## I.   INTRODUCTION

On September 25, 2014, Plaintiff Advantage Point, L.P. ("Plaintiff" or "Advantage") filed this action against the Borough of Kutztown ("Borough"), Kutztown Municipal Authority ("KMA" and, with the Borough, collectively, "Kutztown"), various elected and appointed officials of Kutztown – Peggy Devlin, Sandra K. Green, Gabriel Khalife, Derek D. Mace, Rachael B. Martin, James F. Schlegel, Edwin K. Seyler, Kevin J. Snyder, Lee W. Erb, William Fox, Andrew Schlegel, Sheila Fulton, and Donald L. Sechler (collectively, the "Kutztown Individual Defendants" and together with Kutztown, collectively, the "Kutztown Defendants") – and Kutztown's engineers – SSM Group, Inc. ("SSM"), Darryl Jenkins, and Christina Crawford (Jenkins and Crawford and SSM are referred to, collectively, as the "SSM Defendants").

On November 10, 2014 Advantage filed its amended complaint (the "Amended Complaint").  The Amended Complaint asserted, among other things, claims against newly added defendants Barley Snyder ("Barley"), George Werner, Jeffrey Lobach, Keith Mooney, and Timothy Dietrich (collectively, the "Original Barley Defendants").  The Kutztown Defendants,

SSM Defendants, and Original Barley Defendants each moved separately to dismiss the Amended Complaint. On or about July 2, 2015, the Court issued a Memorandum Opinion and Order granting the motion of the SSM Defendants and dismissing the Amended Complaint without prejudice with leave to amend.[1]

With leave of the Court, Advantage filed a Second Amended Complaint (the "SAC") on or about July 17, 2015. The SAC asserts claims against all of the defendant and newly added defendant Charles Haws (with the Original Barley Defendants, collectively, the "Barley Defendants"). As agreed to among the parties and approved by the Court, the Kutztown Defendants, SSM Defendants, and Barley Defendants separately filed motions to dismiss the SAC (collectively, the "Motions") on or about August 7, 2015. Plaintiff now files this omnibus brief in opposition to the Motions.

## II.    THE FACTUAL ALLEGATIONS IN THE SAC

The SAC alleges that the Kutztown Defendants, the SSM Defendants (Kutztown's engineers), and the Barley Defendants (Kutztown's solicitors) (collectively, the "Defendants") have conspired to and did in fact obstruct and deliberately interfere with Advantage's development of a student housing project located in Maxatawny Township (the "Project").

In the SAC, Advantage specifically asserts claims against the Defendants for violating Advantage's equal protection rights (Count I), violating procedural due process rights (Count II), violating substantive due process rights (Count III), engaging in an unconstitutional taking (Count IV), retaliating against Advantage in violation of Advantages First Amendment rights

---

[1] The Court also denied without prejudice the motions to dismiss of the Kutztown Defendants and the Original Barley Defendants.

(Count VI),[2] tortiously interfering with existing or prospective contractual relations (Count V), and engaging in civil conspiracy (Count VI).

## The Project and Its Benefits to Kutztown

The Project consists of three structures containing 337 apartment units and one multi-use/recreation building with associated access drive and parking. The Project is located entirely in Maxatawny Township and will provide much needed housing for students of Kutztown University, which is also located in Maxatawny Township. (SAC ¶¶ 49, 53, 57).

Advantage has sought and obtained all necessary approvals for the development of the Project. (*Id.* ¶ 294). Water service for the Project has been approved and will be provided by the KMA (*Id.* ¶¶ 92, 93). Sewer service has been approved by and will be provided by Maxatawny Township Municipal Authority ("MTMA"; and, with Maxatawny Township, collectively, "Maxatawny").

The Project will provide student housing in Maxatawny Township, which will address issues Kutztown has had with Kutztown University's students being disruptive in Kutztown (*id.* ¶ 57) and other issues relating to parking, traffic, vandalism, and other potential issues with crowded student housing. (*Id.* ¶ 58). Also, Kutztown Borough Council members expressed the desire to have no more new student housing in the Borough and stated that they would like to see single family homes prohibited from being turned into student housing. (*Id.* ¶ 59). As recently as June, 2015, the Kutztown Zoning Hearing Board denied a request to allow additional student housing within the Borough. (*Id.*). The Project will provide student housing outside of Kutztown alleviating the Borough's concerns. (*Id.* ¶ 60).

---

[2] The SAC erroneously labels Plaintiff's retaliation claim as "Count VI," Plaintiff's tortious interference claim as "Count V," and Plaintiff's civil conspiracy claim as "Count VI." The claims should be labeled as "Count V," "Count VI," and "Count VII," respectively.

The Project will also generate a much needed revenue stream for Kutztown in the form of fees and taxes. (*Id.* ¶ 55). Specifically, if it proceeds, the Project will generate significant financial benefits to Kutztown, including a lump sum of $842,296 in water tapping fees, monthly water fees payable to the KMA, and an increase in property tax revenues which would directly benefit the residents of Kutztown, as Maxatawny and Kutztown are in the same Kutztown School District. (*Id.* ¶ 57). All of the financial benefits would have significantly lessened the financial burdens of the existing Kutztown residents by lowering their school taxes and water fees. (*Id.* ¶ 58).

All of the socioeconomic and financial benefits of the Project to Maxatawny and Kutztown would cost Kutztown nothing. Since the Project will be located in Maxatawny Township, the only thing it required (originally) from Kutztown was to connect to Kutztown's water system (which had been already approved by Kutztown). (*Id.* ¶ 67).

### The Sewer Collection System

As originally designed and planned, the Project was intended to tie into Maxatawny's sewer collection and conveyance system known as the Maxatawny Township Municipal Authority Area A Sanitary Sewer System (the "Area A System"). (*Id.* ¶ 68). As part of the approved Area A System, Maxatawny's sewer system connects to an existing 20-inch diameter gravity sewer main owned by and located in the Borough (the "Main"), which connects to an Influent Pump Station located at the KMA's Wastewater Treatment Plant. (*Id.* ¶ 69). The Influent Pump Station diverts a portion of the sewage from the Main to the MTMA Wastewater Treatment Plant (the "Maxatawny Plant") for treatment. (*Id.* ¶ 70).

Thus, for sewage from the Project to reach the Maxatawny Plant, it would be required to travel through the Area A System owned by Maxatawny, then through the Main located in

Kutztown,[3] then to the Influent Pump Station where it will be diverted to the Maxatawny Plant. (*Id.*; *see also* Exhibit "A" to the SAC).

The Main has sufficient capacity to accommodate an average daily flow of 1,200,000 gallons per day ("GPD"). (SAC ¶ 80). The current average annual flow through the Main is 876,000 GPD, leaving more than 300,000 GPD of unused, untapped capacity. (*See Id.* and Exhibit "D" to the SAC).

Maxatawny has sought and obtained all necessary approval for the construction and operation of the Area A System and, specifically, the connection to the Main, including the approvals of the Pennsylvania Department of Environmental Protection ("DEP") and Delaware River Basin Commission ("DRBC"). (SAC ¶ 75).

Maxatawny's 2007 Act 537 Plan[4] revision specified that Area A would be serviced by public sewers via the Main. Kutztown did not object to this means of providing sewer services to Area A, which includes the Project. (*Id.* ¶ 76). Specifically, Kutztown has neither appealed nor objected to the DEP Water Quality Management Permit or Act 537 Plan, which approved the construction of the Area A System and the connection to the Main. (*Id.* ¶¶ 76-77). Following the unopposed approvals, Maxatawny constructed the Area A System and connected it to the Main, all without any objection from Kutztown. (*Id.* ¶ 79).

As a result, there is now presently 26,174 GPD of sewage from ***186 Maxatawny customers*** flowing through the Main, and Kutztown has not objected to the use of the Main by these 186 other users, all of which are similarly situated to Advantage. (*Id.* ¶¶ 82, 97). In fact,

---

[3] As set forth below, Advantage no longer needs to use the Main to develop the Project.

[4] Section 5(a) of Pennsylvania's Sewage Facilities Act (a/k/a Act 537) requires each municipality to prepare an official sewage facilities plan, of which the DEP must approve, which is generally referred to as an Act 537 Plan. *See* 35 P.S. § 750.5(a).

numerous other Maxatawny's sewer customers have tied into the Area A System **both before and after** Advantage's request without any objection from Kutztown. (*Id.* ¶ 271). In particular, also included in the Area A System is the Cedar Shopping Center Development, a mixed use commercial development center located on Kutztown Road in Maxatawny. (*Id.* ¶ 98). Sewage from the Cedar Shopping Center Development flows into the Area A System and the Main. (*Id.* ¶ 100). As set forth in the SAC, the Cedar Shopping Center Development is similarly situated to the Project. (*Id.* ¶ 98).

In fact, in January 2015 another Maxatawny user, who was located in the Area A System (much like the Project) was **ordered** by Berks County Court of Common Pleas to tie into the Area A System, connecting to the Main. In that litigation, the particular Maxatawny user did not want to tie into the Area A System, but the court ordered the user to tie in because the user was located in Area A. Despite having full knowledge of the existence of the Berks County litigation, Kutztown never intervened to prevent the user from tying into the Main, which it would have done had its stated concerns about the Project been anything other than pretense. (*Id.* ¶ 203 and Exhibit "L" to the SAC).

The Project will generate 69,544 GPD of sewage. (SAC ¶ 84). It is undisputed that the Maxatawny Plant has sufficient capacity to treat the sewage generated by the Project, as Advantage has reserved 74,000 GPD of the Maxatawny Plant capacity in accordance with the MTMA's procedures and pursuant to the terms of two Public Sewer System Capacity Reservation Agreements, both dated December 27, 2012 (the "Reservation Agreements"). (*Id.* ¶ 87). In other words, Advantage has already paid for and contracted with Maxatawny to supply sewer service.

It is also undisputed that the Main has sufficient capacity to service the additional sewage that will be generated by the Project. Specifically, the Main has a gross capacity of 1,200,000 GPD, less present usage of 876,000 GPD, leaving a reserve flow capacity of over 300,000 GPD. Therefore, both the Main and Maxatawny Plant have sufficient capacity to service the Project. With respect to allocation, 150,000 GPD of the Main's reserve flow capacity is allocated to Maxatawny, with 26,174 GPD of the 150,000 GPD presently in use, (*Id.* ¶ 143), leaving more than sufficient allocation to service the Project's 69,544 GPD (*Id.*).

## The Saucony Creek Regional Authority Agreement

On or about May 4, 2006, Maxatawny and Kutztown entered into an inter-municipality sewage service agreement for the Saucony Creek Regional Authority ("SCRA") relating to, among other things, the Maxatawny Plant, which agreement is referred to commonly as the SCRA Agreement. (*Id.* ¶ 105).

Between Maxatawny and Kutztown, the SCRA Agreement provided an exclusive remedy for resolving disputes and provided contractually agreed upon time limits for initiating any claims. (*Id.* ¶ 109). Specifically, Maxatawny and Kutztown agreed that any claims that were not demanded within ninety days of when a party knew or should have known of a claim "shall forever foreclose" the right to assert the claim. (*Id.* ¶ 113). On or about October 25, 2012, Maxatawny told Kutztown that Maxatawny was withdrawing from the SCRA in accordance with agreement provisions. Thereafter, on or about November 30, 2012, Maxatawny forwarded to Kutztown a proposal to resolve any and all differences regarding the SCRA. (*Id.* ¶¶ 107-108). Although Kutztown apparently believed Maxatawny breached the SCRA Agreement by withdrawing from the agreement, it never demanded arbitration within the contractually agreed upon 90 day time period. (*Id.* ¶ 115). Instead, belatedly on December 10, 2013, Kutztown,

through Dietrich, threatened to confiscate the Maxatawny Plant. (*Id.* ¶ 114). As a result, on December 27, 2013, Maxatawny initiated a Declaratory Judgment action (the "Dec. Action") seeking a determination that Kutztown waived its contractual rights under the SCRA Agreement based on the 90 day limitation. (*Id.* ¶ 119).

Advantage believes that the Barley Defendants failed to notify Kutztown that Kutztown was required to demand arbitration within 90 days from when Kutztown knew Maxatawny was withdrawing from the SCRA Agreement. In other words, Advantage believes the Barley Defendants breached their duty to Kutztown by failing to timely tell Kutztown of Kutztown's rights and duties under the SCRA Agreement. (*Id.* ¶¶ 116-118).

Before Maxatawny terminated the SCRA Agreement, Kutztown had voiced no opposition to the Project. In fact, however, in April 2013, Kutztown indicated its approval for the Project. Kutztown approved Advantage's request for 70,000 gallons per day of water from KMA without any objection. (*Id.* ¶ 93). Thereafter, on or about September 19, 2013, Kutztown advised Advantage that it had been approved for 70,000 GPD water and demanded $842,296 in water tapping fees. (*Id.*).

But, since Maxatawny terminated the SCRA Agreement and commenced the Dec. Action, the Defendants have lashed out against Advantage and interfered with Advantage's development of the Project to achieve their self-serving objective of forcing Maxatawny to accept Kutztown back into the SCRA Agreement so that the Kutztown Defendants can reap the economic awards of being a participating member of the SCRA. (*Id.* ¶¶ 192-197, 217-230). The Defendants knew that Maxatawny has approved and very much wanted the Project completed for the many benefits the Project will provide both communities. (*Id.* ¶¶ 305-306). By blocking the Project that Maxatawny supported and wanted, and as set forth below, the Barley Defendants

thought they could bring Maxatawny back into the SCRA Agreement, which would "rectify" (indeed, hide) the Barley Defendants' malpractice in failing to timely and properly advise Kutztown of Kutztown's rights under the SCRA Agreement. (*Id.* ¶¶ 109-117, 126, 192-195).

### **Defendants' Attempts to Block the Project**

For the Project to tie into the Area A System, Maxatawny was required to obtain approval from the DEP for an Act 537 Plan revision exemption.[5] (*Id.* ¶ 131). In furtherance of this objective, on or about February 25, 2014, an Act 537 Exemption Request (the "Exemption Request") was submitted to the DEP by Motley Associates, Inc., Maxatawny's engineers. (*Id.*). In response to the Exemption Request, the DEP, by way of its letter dated March 21, 2014, requested a certification from Kutztown concerning the capacity of the Main to serve the Project. (*Id.* ¶ 132).[6]

In other words, for the Project to move forward, a simple certification from Kutztown was requested confirming that the Main has sufficient capacity to handle the sewage flows from the Project. This was a simple request as the Main does, in fact, have sufficient capacity to service the Project. This fact is undisputed. (*Id.* ¶¶ 80, 81, 83, 84).

But, rather than simply acknowledging that the Main had sufficient capacity to accommodate the Project's sewage needs, the Defendants, under the direction of the Barley Defendants, conspired to turn a simple acknowledgment of capacity into a tool to interfere with and delay the development of the Project for the Barley Defendants' own self-serving objectives. (*Id.* ¶¶ 137-147). Despite that the Main undisputedly has the capacity to handle the sewage from the Project, Kutztown, under the Barley Defendants' directions, has refused (and continues to

---

[5] *See* 25 Pa. Code § 71.51.

[6] *See* 25 Pa. Code § 71.5 1(b)(2)(iii).

refuse), to certify that the Main has such capacity, for the sole purpose of targeting Advantage and blocking the Project. (*Id.* ¶¶ 133-134).

This illegitimate purpose is highlighted in Jenkins's April 15, 2014 letter, which evidenced Kutztown's adoption of new policy targeted solely at Advantage. This policy was adopted without public hearing or notice, had no relation to the merits of the Project and was directed exclusively at Advantage. (*Id.* ¶ 137).[7]

Jenkins's April 15, 2014 letter, which was supposed to be written by SSM and directed to Kutztown, and the time records of the Barley Defendants, which reflect the Barley Defendants actually assisted the SSM Defendants prepare the April 15, 2014 letter, evidenced Kutztown's illegal policy targeting Advantage. (*Id.* ¶¶ 138-140 and Exhibit "E" to SAC). In their April 15, 2014 letter, the Defendants, while admitting, as they must, that the Main has sufficient capacity for the Project, announced a new policy concerning the use of the Main, targeted at one person (and only one person): Advantage. This new policy adopted by the Defendants and announced in the April 15, 2014 letter required Maxatawny first would have to bow down to Kutztown's demands concerning the SCRA Agreement, before the Project would be permitted to proceed. The Defendants, by way of the SSM Defendants' April 15, 2014 letter, effectively established that until the dispute between Maxatawny and Kutztown concerning the SCRA Agreement is resolved (in Kutztown's favor), Kutztown will not permit the Project to go forward. (SAC ¶ 147). This new policy was not based on the needs of Kutztown or the interest of the community

---

[7] Further, the stated reasons for blocking the Project set forth in the April 15, 2014 letter were provided only after the SSM Defendants attempted to falsely claim, in a letter dated April 9, 2014, that only 75,000 GPD (rather than 150,000 GPD) of available capacity was allocated to Maxatawny, and thus insufficient capacity existed for the Project. (*Id.* ¶¶ 135-136 and Exhibit "D" to SAC). When it was revealed that SSM's representations concerning capacity were false, Defendants issued the April 15th letter.

but rather on the self-serving objectives of the Defendants, which had no relation to the merits of the Project.[8] (*Id.* ¶ 144).

Despite their attempts to derail the Project's Exemption Request approval, on or about April 30, 2014, the DEP ultimately determined that the Exemption Request satisfied all of the regulatory requirements and approved the Exemption Request by way of its approval letter dated April 30, 2014 (the "Exemption Approval"). (*Id.* ¶ 148). The Defendants, under Kutztown's name, appealed to the Pennsylvania Environmental Hearing Board ("EHB"). (*Id.* ¶ 150). The *sole issue* presented before the EHB on appeal (the "Appeal") was whether the April 15, 2014 letter constituted the required certification necessary for the approval of the Exemption Request under 25 Pa. Code § 71.51(b)(2)(iii). (*Id.* ¶ 151).

On or about December 16, 2014, the EHB issued its adjudication in the Appeal, finding that the April 15, 2015 letter from Jenkins was not a "certification" as defined in 25 Pa. Code § 71.51(b)(2)(iii). (*Id.* ¶ 152, Exhibit "G" to SAC). In issuing its adjudication, the EHB made forty six paragraphs of factual findings, many of which address the content of the April 15th letter, and whether that letter was intended as a "certification" under the regulations. (SAC ¶ 153, Exhibit "G" to SAC). In addition to its findings concerning the "certification," the EHB made the following relevant factual findings:

- "Kutztown's interceptor is the only existing way to get Advantage Point's sewage to the treatment plant in Maxatawny." (Exhibit G at ¶ 9);

- Kutztown and Maxatawny are parties to an intermunicipal agreement concerning, among other things, the use of the Main, and formed a joint municipal authority thereunder (the SCRA). (Exhibit G at ¶¶ 11-12);

---

[8] On or about December 10, 2013 (over four months before the April 15, 2014 letter), the Barley Defendants wrote a letter to Maxatawny indicating that Kutztown intended to confiscate the Maxatawny Plant. (*Id.* ¶ 114).

- A dispute between Kutztown and Maxatawny concerning the SCRA Agreement is ongoing. (Exhibit G at ¶ 13);

- "It is Kutztown's view that Maxatawny cannot use its interceptor for the Advantage Point sewage if the intermunicipal agreement is no longer viable." (Exhibit G at ¶ 14)

- While the dispute between Kutztown and Maxatawny was ongoing, Advantage, on behalf of Maxatawny, submitted an exemption request to the DEP, which request "seeks permission from the Department to be excused from the more extensive sewage facilities planning that would normally be required for a new development." (Exhibit G at ¶ 16-17)

- The DEP interprets Pa. Code § 71.51(b)(2) to mean that an applicant must obtain certification to obtain the requested exemption, and further, "[e]ven if a certification is withheld for an improper reason or no reason at all, an exemption is not available under the Department's interpretation." (Exhibit G at ¶ 19)

- "If the exemption cannot be obtained, the applicant must go through the normal planning process." (Exhibit G at ¶ 20)

- "The normal planning process, however, also requires a similar certification in Section J of Component S of the planning modules." (Exhibit G at ¶ 21)

- "If the certification is not obtained for whatever reason, the Department will not approve the planning modules." (Exhibit G at ¶ 22)

Notably, the EHB, in its adjudication, did not consider or address the reasons or motives of the Defendants, nor did it consider or address the constitutionality (or, more accurately, the unconstitutionality) of Kutztown's policy of targeting only Advantage. To that end, the EHB, in its adjudication, acknowledged that its ruling dealt **only** with the question of whether a certification had been made under the code requirements:

> Because the requirement for a certification is mandatory and cannot be waived, it follows that a permittee's reasons for withholding a certification are ***irrelevant from the Department's perspective***….A certification may be withhold for any reason or no reason at all, but since the requirement cannot be waived, the reasons do not matter. ***There is no occasion for the Department (or this Board) to scrutinize the permittee's motivation in withholding its certification***.

(Exhibit G to SAC at p. 14) (emphasis added).  The EHB further explained the limits of
its inquiry as follows:

> To the extent the appellees argue that Kutztown can be forced to
> execute a certification by injunction, mandamus, order, or
> otherwise, ***that is an issue for another day and/or another
> tribunal. This appeal is limited to the question of whether a
> certification was in fact issued.***

(Exhibit G to SAC at p. 14 n. 4) (emphasis added).

### Defendants Attempt to Block the New Force Main

Faced with Defendants' obstruction of the Project, along with Kutztown's de facto policy
to block Advantage's ability to connect to the Main, while allowing other similarly situated users
unfettered access to the Main, it became clear that it would be futile for Advantage to go through
the normal planning process.  Therefore, Maxatawny, who wanted the Project, proposed to
construct a new force main (the "New Main"), which would re-route sewage from the Area A
System away from the Main.  (SAC ¶¶ 159 – 161).  With the construction of the New Main, the
Project would be able to use the Area A System without the need for the use of Kutztown's
Main, and render moot the Kutztown Defendants' stated reasons for blocking the Project, among
other things the purported concerns over the capacity of the Main and its ability to handle
Maxatawny's future sewage flows. (*Id.* ¶ 163 and Exhibit "E" to SAC). As set forth in the
Official Plan revision submitted to DEP for approval, the New Main would begin at the Koffee
Lane Pump Station, located in Maxatawny Township, and reconnect to the existing system at the
Influent Pump Station at KMA's Wastewater Treatment Plant on Krumsville Road, also located
in Maxatawny Township.  (*Id.* ¶ 164, Exhibit "H" to SAC).  Further, the length of the New Main
would be located entirely along state highway rights of way, and therefore would not be in
locations controlled by Kutztown. (SAC ¶ 167).

Despite that the New Main effectively addresses Kutztown's purported concern over the Main's capacity, the Defendants acted to block the construction of the New Main in an additional effort to obstruct the Project. After Maxatawny Township submitted the proposed Official Plan Revision to DEP on or about April 8, 2015, Kutztown, through its counsel Defendants Haws and Barley, submitted a letter to DEP on or about May 21, 2015 setting forth its purported objections to the proposed Official Plan Revision regarding the New Main. (*Id.* ¶ 168 – 169, Exhibit "I" to SAC). The letter relies on an attached letter from Jenkins, on behalf of the SSM Defendants, acting in their capacity as Kutztown's engineer. (SAC ¶ 170 – 171). The Barley Defendants, again, orchestrated the latest manifestation of Kutztown's unconstitutional policy to prevent the development of the Advantage Point Project. (*Id.* ¶ 176).

The objections of Defendants to the proposed New Main are frivolous and disingenuous. For example, the SSM Defendants' letter objects to the New Main in part due to their assertion that the proposed New Main creates a property dispute between Maxatawny and Kutztown, despite the plans to construct the New Main through non-Kutztown property and/or property to which Maxatawny has the right to access. (*Id.* ¶¶ 164, 167, 179). Further, as SSM was heavily involved in the design of the sewage and water system in the Area A System, it is already in possession of the answers to the questions it claims need answering. (*Id.* ¶172).

Notwithstanding the frivolous objections of the Barley Defendants and the SSM Defendants, on or about May 22, 2015, DEP approved Maxatawny's plan revision for the New Main. (*Id.* ¶181 and Exhibit "J" to SAC). Notably, the May 22nd letter specifies that DEP's plan approval does not include complete approval of system design—the subject of many of the Barley Defendants' and SSM Defendants' purported objections to the plan—but instead notes that system design would be addressed in the later Water Quality Management (Part II) permit

application process. (Exhibit J to SAC).  The Borough, joined by KMA, and at the direction of the Barley Defendants and assistance of the SSM Defendants, decided to appeal the approval, as a further means to block the Project. (SAC ¶¶ 183 – 190, and Exhibit "K" to SAC).

**Impact on Advantage**

The Kutztown Defendants, at the direction of the Barley Defendants and assistance of the SSM Defendants, have conspired to damage Advantage for their own self-serving and unlawful purposes.  As a result, the Defendants have caused and continue to cause significant damage to Advantage.

## III.   LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff and determine whether, under a reasonable reading of the complaint, the plaintiff is entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008).  In addition to the allegations in the complaint, "courts generally consider . . . exhibits attached to the complaint, matters of public record and documents that form the basis of the claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that to state a claim, the complaint must allege sufficient factual allegations "to raise a right to relief above the speculative level." *Id*., 127 S.Ct. at 1965.[9]  In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the

---

[9] Applying *Twombly*, a district court in the Third Circuit has said,

> We may not dismiss a complaint because it appears unlikely or improbable that plaintiffs can prove the facts alleged or will ultimately prevail on the merits. *Twombly,* 127 S. Ct. at 1965, 1969 n. 8.  Instead, we must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 1965.  In

Supreme Court, applying *Twombly,* explained, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.,* 129 S.Ct. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. ARGUMENT

### A. ADVANTAGE'S CLAIMS AGAINST DEFENDANTS ARE NOT BARRED BY COLLATERAL ESTOPPEL

Defendants separately argue that the December 16, 2014 EHB adjudication—concerning whether the April 15, 2015 letter from Jenkins constituted a "certification" as defined in 25 Pa. Code § 71.51(b)(2)(iii)—precludes Plaintiff's claims on the grounds of collateral estoppel. However, this argument fundamentally misconstrues the scope of the EHB ruling—notably, the EHB stated explicitly that any question outside the narrow one of "certification" ***is an issue for another day and/or another tribunal***" (Exhibit G to SAC at p. 14 n.4)—and misinterprets Pennsylvania law. Accordingly, Defendants' argument should be rejected.

At the outset, it must be noted that in Section 1983 cases, decisions of state administrative agencies that have been reviewed by state courts may be afforded preclusive effect in federal courts, but only state administrative fact-finding is entitled to preclusive effect in the federal courts when the agency ruling remains un-reviewed by state courts. *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) (citations omitted). In this case,

---

the end, if, in view of the facts alleged, it can be reasonably conceived that the plaintiffs could, upon trial, establish a case that would entitle them to relief, the motion to dismiss should not be granted. *Id.*, at 1969, n. 8.

*Simon Property Group v. Palombaro, et al.*, 2009 WL 1549293 at * 3 (W.D.Pa. 2009).

while the EHB's adjudication has been appealed to the Pennsylvania Commonwealth Court, that court has not yet ruled on the merits of the appeal.

Furthermore, an issue is only "precluded" when **all** five of the following factors are satisfied: (1) identity of issues, (2) a final judgment on the merits, (3) identity of parties, (4) that the party seeking relitigation had a full and fair opportunity to argue the issue in the earlier proceeding, and (5) that the earlier determination was essential to the judgment. *Prusky v. ReliaStar Life Ins. Co*., 532 F.3d 252, 265 (3d Cir. 2008) (citations omitted).

Contrary to Defendants' assertions, the SAC is crafted to give due deference to the factual findings of the EHB. Indeed, it summarizes or recounts verbatim many of the factual findings in the EHB adjudication, and attaches the adjudication itself as an exhibit. (SAC ¶¶ 152 – 154, and Exhibit G to SAC).

Here, Defendants' collateral estoppel/issue preclusion arguments fail because the issue Defendants claim was litigated in the EHB is an un-reviewed agency decision. Further, at least three of the five elements listed above remain unsatisfied.

### 1. The Issues Presented in the SAC are Not Identical to the Issue Decided by the EHB

Plaintiff's claims against Defendants in the SAC are not identical to the lone issue decided by the EHB. As detailed in the SAC, the **only issue** the EHB addressed was whether Jenkins's April 15, 2014 letter constituted a certification under the regulatory code governing Act 537 exemption requests. (SAC ¶¶ 152 – 158). In addressing this narrow issue, the EHB specifically stated that it was not addressing the constitutional and tort issues raised by Plaintiff in this case, acknowledging that the motives of a permittee "are irrelevant from the Department's perspective," and thus "[t]here is no occasion for the Department (or this Board) to scrutinize the

permittee's motivation in withholding its certification." (*Id.* ¶ 157, and Exhibit G to SAC at p. 14).

This actual issue addressed by the EHB—whether the April 15th letter is a certification as defined by the code—is not raised in the SAC. Rather, the SAC raises issues—specifically, the tortious and unconstitutional actions of the Defendants—that were explicitly not addressed by the EHB. As such, Defendants cannot satisfy the first element of collateral estoppel.

### 2. No Issue Asserted in the SAC was Fully and Fairly Litigated Nor Essential to the EHB's Determination

Just as the issues raised in this case and the EHB adjudication do not share a common identity, Advantage did not have a full and fair opportunity, let alone any opportunity, in the EHB appeal to litigate the claims set forth in the SAC. As discussed above, the EHB adjudication dealt only with the question whether Jenkins's April 15, 2014 letter constituted a "certification" under applicable regulations. Advantage's SAC, on the other hand, addresses Defendants' improper, unconstitutional motives and actions in blocking, by any means at their disposal, the progress of the Project. Defendants' erroneously argue that the April 15, 2014 letter is the "focus of Advantage Point's claims." (The Barley Defendants' Brief at p. 5). Yet, Plaintiff's claims do not depend on the April 15th letter itself. Instead, the letter (along with the April 9th letter) is relevant because it shows the unlawful de facto policy of the Defendants to block the development of the Project.

The SAC alleges that Advantage has been damaged due to the unlawful acts and improper motives of Defendants in, among other things, refusing to issue the Act 537 certification for improper reasons. Whether Jenkins' April 15th letter constituted a certification was an issue at best incidental to the issues raised by the SAC. As to the constitutionality of Defendants' conduct, the EHB explicitly declined to address these issues.

> Because the requirement for a certification is mandatory and cannot be waived, it follows that a permittee's reasons for withholding a certification are ***irrelevant from the Department's perspective***….A certification may be withhold for any reason or no reason at all, but since the requirement cannot be waived, the reasons do not matter. ***There is no occasion for the Department (or this Board) to scrutinize the permittee's motivation in withholding its certification***.

(Exhibit G to SAC at p. 14) (emphasis added). The central claims in the SAC, then, were simply not addressed by the EHB, nor was Advantage given the opportunity to litigate them, despite being a party to the EHB appeal. As noted above, the EHB expressly stated that to the extent Advantage raised issues outside the narrow question of certification under Pa. Code § 71.51(b)(2)(iii), "***that is an issue for another day and/or another tribunal***." (*Id.* at n.4) (emphasis added).

Accordingly, the issue in the SAC was never fully and fairly litigated, and it certainly was not essential to the EHB Adjudication. In light of the foregoing, Defendants' issue preclusion arguments are unfounded and, as such, the Motion should be denied.

## B. ADVANTAGE'S CLAIMS AGAINST DEFENDANTS ARE RIPE.

"The ripeness doctrine serves 'to determine whether a party has brought an action prematurely and counsel's abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)); *see also County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).

The ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Doe v. County of Centre, PA*, 242 F.3d 437, 453 (3d Cir. 2001). Recently, a court from this district denied defendant's

ripeness argument and found that the action "is not premature." The court cautioned that (as we have in the present matter): "Where … the defendant is alleged to have engaged already in conduct that violates a plaintiff's rights, the force of a ripeness challenge is diminished." *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 2012 WL 3584626, at *26 (E.D. Pa. Aug. 21, 2012) (Kelly, J.) *certificate of appealability denied*, 2012 WL 4050798 (E.D. Pa. Sept. 14, 2012) (citing *Dasrath v. Continental Airlines, Inc.,* 228 F.Supp.2d 531, 546 (D.N.J. 2002) (which cited *Doe, supra,* 242 F.3d at 453)).

It is well established that a developer "has the right to be free from harassment in [its] land development efforts." *County Concrete Corp*, 442 F.3d at 170. Further, in those cases where a permit is being sought from a municipality, something that was not required here, a municipality cannot interfere with a developer's permit application. In *Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253, 267-68 (3d Cir. 1995), the Third Circuit addressed this analogous issue. In *Blanche*, the plaintiff asserted that the township "engaged in a campaign of harassment designed to force [it] to abandon its development of [an] industrial park." *Blanche*, 57 F.3d at 258. The ripeness of the claim was contested by the defendants. The court addressed the ripeness issue holding:

> In the instant case . . . plaintiffs are not appealing from an adverse decision on a permit application. Rather, plaintiffs are asserting that defendants, acting in their capacity as officers of the Township, deliberately and improperly interfered with the process by which the Township issued permits, in order to block or to delay the issuance of plaintiffs' permits, and that defendants did so for reasons unrelated to the merits of the application for the permits. Such actions, if proven, are sufficient to establish a substantive due process violation, actionable under § 1983, even if the ultimate outcome of plaintiffs' permit applications was favorable.[15] *See Bello v. Walker,* 840 F.2d 1124, 1128–30 (3d Cir.1988) (factfinder could conclude that council members, acting in their official capacity, improperly interfered with building permit process for partisan political or personal reasons unrelated

> to the merits of the permit applications). This is a substantively
> different type of claim than that presented in the ripeness
> cases, and internal review of the individual permit decisions is thus
> unnecessary to render such a claim ripe.

57 F.3d at 267-68, abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003).

Thus, where it is alleged that a municipality and its officials have deliberately engaged in a course of conduct to interfere with the issuance of a permit, and did so for reasons unrelated to the ***merits*** to the application for the permit, due process claims will be found to be ripe for federal adjudication. *See County Concrete Corp.*, 442 F.3d at 167; *Kolodziej v. Borough of Elizabeth*, 2008 WL 4858295 *4 (W.D. Pa. 2008); *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118 (3d Cir. 2000); *see also Holland Transp., Inc. v. Twp. of Upper Chichester*, 2002 WL 31518836 *12 (E.D. Pa. 2002) *aff'd sub nom. Holland Transp., Inc. v. Upper Chichester Twp.*, 75 F. App'x 876 (3d Cir. 2003); *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F.Supp.2d 238, 258 (E.D. Pa. 2007) (holding that "a course of conduct claim is sufficient to establish a ripe SDP claim"). Kutztown here has admitted to targeting Advantage for the unrelated reason of the Dec. Action. (SAC ¶¶ 196, 275).

In *County Concrete Corp.*, 442 F.3d at 168, the theory of liability advanced was that the county had enacted a law "specifically directed" or "aimed at" the plaintiff's land. *Id.* at 167, 170. The Third Circuit concluded: "It would be an exercise in futility to require appellants to seek a variance from an ordinance specifically directed at their properties. Accordingly, their facial challenge is ripe." *Id.* at 167. Citing its decision from *Blanche Rd. Corp*, the Third Circuit said, where,

> [T]he plaintiff [asserts] that the Township 'engaged in a campaign
> of harassment designed to force [it] to abandon its development of
> [an] industrial park,'… this type of [substantive due process] claim
> is 'substantively different' from 'that presented in the ripeness

cases' and that '[s]uch actions, if proven, are sufficient to establish a [substantive due process] violation, actionable under § 1983, *even if the ultimate outcome of plaintiff's permit applications [in the state proceeding] was favorable*."

442 F.3d at 166. (Emphasis added).  Therefore, the court held that, since the ultimate outcome of the state proceeding is ***irrelevant*** for the plaintiff to prevail on its constitutional claim, "no further appeals [from the state proceedings] were necessary in order to have a ripe, final determination for a federal court to review."  *Id.*

With respect to Advantage's takings claim, excessive regulation can constitute a "taking" under the Just Compensation Clause.  *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922).  Writing for the *Pennsylvania Coal* Court, Justice Holmes stated: "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." 260 U.S. at 415, 43 S.Ct. at 160.

A takings claim challenging application of land-use regulations is not ripe unless the agency charged with implementing the regulations has reached a final decision regarding their application to the property at issue.  *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).  A final decision does not occur until the responsible agency determines the extent of permitted development on the land.  *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351, 106 S.Ct. 2561, 91 L.Ed.2d 285; *Palazzolo v. Rhode Island,* 533 U.S. 606, 607, 121 S. Ct. 2448, 2452, 150 L. Ed. 2d 592 (2001).

That being said, the finality rules set forth in *Williamson County* do not apply to facial challenges to ordinances.  *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534, 112 S.Ct. 1522, 1532, 118 L.Ed.2d 153 (1992).  Thus, when a party mounts a facial challenge to the ordinance, contending that the ordinance does not substantially advance legitimate state interest no matter

how it is applied, the claim will be ripe. *Id.; see also Nollan v. California Coastal Comm'n, supra,* 483 U.S. 834(1987); *Agins v. Tiburon,* 447 U.S. 255, 260 (1980).

In arguing that Advantage's claims are not ripe, the Defendants mischaracterize the nature of this litigation. The Defendants confuse this matter with cases involving a denied variance or rejection of permit, which may be subject to further review. Here, the Defendants have arrived at a final definitive position, which is ripe for adjudication.

It is undisputed that the Area A System is properly connected to the Main and that the Main has sufficient capacity to service the Project. It is further undisputed that Advantage has satisfied all of the requirements of Maxatawny and DEP to tie into the Area A system. Kutztown's sole requested involvement in this matter was to certify to an undisputed fact – that the Main has adequate capacity. Kutztown was simply asked to set forth this fact in writing so that it could be submitted to the DEP. Rather than truthfully and simply certifying the capacity of the Main, however, Kutztown, under the direction of the Barley Defendants and assistance from the SSM Defendants, unlawfully enact a new de facto policy to "revive" the SCRA Agreement. (SAC ¶¶ 131-147).

Whether Kutztown is a member of the SCRA will have no bearing on this matter. Accordingly, conditioning the development of the Project on the resolution of the Dec. Action is wholly improper and a poorly concealed effort to hide the Defendants' malicious intent and action. This is especially true given the current attempts by Maxatawny to build a New Main to service the Project (which Defendants are also blocking).

The Defendants' decision to impermissibly tie the development of the Project to the resolution of the Dec. Action was a final, definitive decision. As in *County Concrete Corp.*, *supra*, 442 F.3d at 159, the Defendants issued its policy specifically directed at Advantage. As

such, it would be futile for Advantage to make further applications to Kutztown for an exception to the requirements of the April 15, 2014 letter.

Moreover, neither the Dec. Action nor the Commonwealth Court appeal of the EHB adjudication will be determinative of Advantage's cause of action against the Defendants. Neither the Dec. Action nor the appeal will resolve Advantage's damage arising out of the Defendants' unlawful conduct. The Defendants' decision to tie capacity to the Dec. Action was a final decision. It has been used as a roadblock to the Exemption Request, and the decision has been further extended by Defendants to block Maxatawny's plans for the New Main. Thus, regardless of whether the Appeal or Dec. Action is resolved, the cause of action exists.

The EHB determined that the sole issue before it was a technical analysis of the April 15, 2014 letter. The EHB even noted that even if "*Kutztown's position was unreasonable or unfair, it would not matter.*" (Exhibit G to SAC at pp. 14-15) (emphasis added). In other words, Kutztown could have engaged in any number of constitutional violations in refusing to turn over a certification; it would not have mattered to the EHB as it was not within its scope of review. By way of example, and in addition to the violations referenced in the SAC, Kutztown could have withheld issuing the certification to further a criminal scheme, extort money from Advantage, or discriminate on the basis of race, color, religion, national origin. These claims would not have been considered by the EHB, but obviously would provide the basis for ripe lawsuit. Accordingly, the Appeal is simply not determinative of Advantage's claims which are ripe for adjudication. Moreover, the EHB Adjudication, if anything, renders the Defendants' ripeness arguments moot.

As to Advantage's takings claim, it is also ripe and the Defendants' reliance on *Brubaker v. E. Hempfield Twp.*, 234 F. App'x 32, 35 (3d Cir. 2007) is misplaced. Advantage is not

seeking a permit or variance from Kutztown.  Advantage has all necessary permits and approvals from the applicable authorities.  It is the Defendants, not Advantage, that are the aggressors, doing everything in their power to interfere with Advantage's development of the Project.  The April 15, 2014 letter simply evidenced the Defendants' policy that is applicable to only one customer in the entire Area A System.  This policy, on its face, is unconstitutional.  It is unreasonable and, more importantly, a poorly veiled attempt to extract through the application of significant financial penalty a result in the Dec. Action to which the Defendants would not be entitled.

In this matter, a final decision has been reached by the Defendants – that is, Advantage cannot may not proceed with the Project until the Dec. Action is resolved in their favor.[10]  The mere fact that the Defendants tied their final decision to the outcome of a legal action for which Advantage is not a party does not render the decision not final for ripeness purpose.  It is well established that improperly burdening a property with unfair land-use procedures to avoid making a final decision is a specific exception to the finality rule giving rise to a ripe claim. *Palazzolo*, 533 U.S. at 606.

Furthermore, it would be an exercise in futility to require Advantage to exhaust all administrative actions, even if such actions were available to Advantage.  Kutztown has made clear that the Project will not move forward unless and until the Dec. Action is decided. Therefore, regardless of whether Advantage appeals the EHB Adjudication or files a separate exemption request, Kutztown will not permit the Project to be developed unless and until the Dec. Action is decided in their favor.  Advantage's claims are therefore ripe.

---

[10] The Defendants' argument that this case is not ripe until the Dec. Action is resolved is further undermined as it was Maxatawny, not Kutztown, that started the Dec. Action.  (SAC ¶ 119).

Finally, Advantage is not merely challenging the Defendants' improper conduct, it is facially challenging Kutztown's enacted policy itself – that is, its policy of selectively prohibiting Advantage from using the Main unless the Dec. Action is concluded. There is no ordinance in this issue. There is only Kutztown's newly, selectively, and retroactively applied policy of preventing the Project from moving forward. Our courts have held that the finality rule does not apply to such facial challenges. *County. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 166 (3d Cir. 2006); *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F.Supp.2d 238, 257 (E.D. Pa. 2007) (Cornell does challenge the facial validity of the ordinance and such a claim is ripe). The SSM Defendants' conduct in conspiracy in working with the Kutztown Defendants and Barley Defendants to come up with the policy to delay the Project and impact on Advantage is only heightened by the EHB Adjudication.

For these reasons, Advantage's claims are ripe, and the Motions should be denied.

## C. THE SSM DEFENDANTS AND BARLEY DEFENDANTS ACTED UNDER COLOR OF STATE LAW

In their motions to dismiss, both the SSM Defendants and the Barley Defendants contend that the SAC does not establish that they were acting under color of state law, as required to state a violation of Section 1983. As set forth below, these arguments fail.

### 1. The SSM Defendants Acted Under Color of State Law

According to the Supreme Court, "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Skepton v. Bucks Cnty., Pa.*, 628 F. Supp. 177, 179 (E.D. Pa. 1986) (citing *Tower v. Glover,* 467 U.S. 914 (1984)); s*ee also Dennis v. Sparks,* 449 U.S. 24, 27–28 (1980); *Darr v. Wolfe,* 767 F.2d 79, 80 (3d Cir. 1985).

Plaintiff, to survive a motion to dismiss, must allege with sufficient factual particularity that the private and state actors "directed themselves toward an unconstitutional act by virtue of a mutual understanding or agreement." *Hauptmann v. Wilentz,* 570 F.Supp. 351, 382 (D.N.J. 1983), *aff'd mem.,* 770 F.2d 1070 (3d Cir. 1985). *See also Annunziato v. The Gan, Inc.,* 744 F.2d 244, 250–52 (2d Cir. 1984); *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206–07 (7th Cir. 1980); *Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532, 539–40 (E.D.Pa. 1982). The facts pled in a complaint need not directly establish the existence of an agreement between the private actors and municipal officials as long as they could, if proven, constitute adequate circumstantial evidence of conspiracy. *See Skepton, supra,* Pa. 628 F. Supp. at 179; *see also Hauptmann, supra,* 570 F.Supp. at 382, *aff'd mem.,* 770 F.2d 1070.

With respect to municipal engineers, our courts have repeatedly found the barest of pleadings sufficient to adequately allege that a municipal engineer is acting under the color of state law. In *Prosperi v. Twp. of Scott*, 2006 WL 2583754, (W.D. Pa. 2006), the plaintiffs alleged that,

> [T]he Engineer defendant is a person acting under color of state law, who irrationally singled them out for disparate treatment, and conspired with the other defendants and Carnegie Borough to prevent them from occupying their home, resulting in a temporary loss of the use and enjoyment of their property, for which the plaintiffs suffered damages.

*Id.* at *9 (internal citations to the underlying complaint omitted). Based on these averments, the court found that the "plaintiffs adequately allege that the defendants are persons acting under color of state law (citation omitted), who deprived them of their constitutionally protected property interest in accessing and enjoying their property (citation omitted)." *Id.* at *3.

In *Skepton* 628 F.Supp. at 179, plaintiff alleged that the defendant engineer, while acting under color of state law, terminated his contract on a basis that infringed his constitutionally

protected right to freedom of speech. In that matter, plaintiff's factual assertions suggested that the defendant engineer was intimately involved in the County Commissioners' administration of the prison project. The court found that the "allegations in the amended complaint, if proven, could establish that [the defendant engineer] had both the opportunity and the inclination to be a 'willful participant' in the Commissioners' decision to terminate [plaintiff's] contract." *Id.* at 180. Accordingly, the motion to dismiss was denied.

In *Anselma Station, Ltd. v. Pennoni Associates, Inc.*, 654 A.2d 608, 612 (Pa. Commw. Ct. 1995), plaintiff alleged that Pennoni [the defendant engineer] acted under color of state law because, at all material times, Pennoni was acting as the township engineer for West Pikeland Township. Pennoni's counsel conceded in its brief that Pennoni's inspection of the subject development plans and of the site were "[in] accordance with township supervisors' directions." The court therefore concluded "from the Complaint and from this concession that this question is clearly answered in favor of [Plaintiff] and that the first prong of a Section 1983 cause of action is satisfied," (that is, whether the conduct complained of was committed by a person acting under color of state law). *Id.*

In the present matter, Advantage alleges that the SSM Defendants were acting under color of state law because, at all material times, they were acting as the engineer for both the Borough and the KMA and were acting in accordance with the directions of Kutztown's elected officials, appointees, employees, and staff. (SAC ¶ 229). It is further alleged that the SSM Defendants (and the other Defendants), acting under color of state law, have intentionally, purposefully, and with deliberate indifference, violated Advantage's rights and privileges under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983 by treating

Advantage differently and in a discriminatory manner, and by denying fundamental due process required by law.   (*Id.* ¶ 268).

Specifically, it is averred that the SSM Defendants, together with the Kutztown Defendants and Barley Defendants, conspired to turn a simple acknowledgment of capacity into a tool to interfere with and delay the development of the Project for their own self-serving objectives.  (*Id.* ¶¶ 137-147).   Further, the SSM Defendants were providing services to the MTMA and at all times knew that the Main has sufficient capacity for the Project.   The SSM Defendants, however, conspired with the Barley Defendants and Kutztown Defendants to oppose the Exemption Request, and participated in the improper effort to block the construction of the New Main. (*Id.* ¶¶ 171-174).   In opposing the New Main, for example, the SSM Defendants interposed frivolous objections to the New Main, such as the assertion that the construction would create a property dispute between Maxatawny and Kutztown, despite their knowledge that Maxatawny plans to construct the New Main through non-Kutztown property and/or property to which Maxatawny has the right to access. (*Id.* ¶¶ 164, 167, 179).   There is no doubt the SSM Defendants were acting under the color of law.

### 2.   The Barley Defendants Acted Under Color of State Law

To prevail on a claim for relief pursuant to 28 U.S.C. § 1983 against an attorney, a plaintiff must show that the attorney defendant acted under the color of state law and denied him a federally protected constitutional or statutory right.  *Angelico v. Lehigh Valley Hosp.,* 184 F.3d 268, 277 (3rd Cir. 1999) ("*Angelico II*").   A person may be found to be acting under color of state law, or be considered a state actor, when "(1) he is a state official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature,

chargeable to the state." *Id.* (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 930, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

Conduct by private actors is typically beyond the scope of constitutional sanction; however, "governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). While an attorney does not act under color of state law simply by virtue of representing a state actor as a client, or by acting as solicitor on behalf of a municipality or public school board, *Angelico II*, 184 F.3d at 277*; Spradlin v. Borough of Danville*, 2005 WL 3320788, *3 (M.D.Pa. 2005); *O'Hanlon v. City of Chester*, 2002 WL 393122, *4 (E.D.Pa. 2002); *Belkowski v. Kruczek*, 2010 WL 1433099, at *3 (W.D. Pa. 2010), § 1983 liability will attach where the attorney or solicitor is, in some manner, "clothed in the authority of state law" at the time of the alleged constitutional violation. *O'Hanlon*, 2002 WL 393122, *4.

An attorney may be sufficiently clothed in the authority of the state when the attorney has gone beyond his or her traditional role as a provider of legal advice and begun to actually make official policy decisions that are ordinarily left to the state. *Belkowski v. Kruczek*, 2010 WL 1433099, *3 (W.D.Pa. 2010) ("When a municipality's attorney goes beyond the traditional attorney-client relationship, she may become a state actor.") (citing *Frompovicz v. Twp. of S. Mannheim*, 2007 WL 2908292, at *8 (M.D.Pa. 2007) (finding that the defendant acted under color of state law in his capacity as solicitor in evaluating and establishing zoning standards)); *Willis v. Carroll Twp.*, 2008 WL 644762, at *6 (M.D. Pa. 2008) (characterizing *Frompovicz* as "holding that a township solicitor acted under color of state law when he exercised policy-making authority").

The Barley Defendants here have exceeded the attorney-client relationship. The SAC alleges, for example, that the Barley Defendants were the masterminds behind both the creation and the announcement of a policy. (SAC ¶¶137-147, 210-211). They proceeded in secret, without a public hearing and with the intent to injure Advantage, all for self-serving reasons – to avoid a malpractice lawsuit from Kutztown. (*Id.* ¶¶ 137, 193-195). They did so without regard for the interest of Kutztown residents, even with the full knowledge that this new policy would deprive the residents of Kutztown millions of dollars of tax relief, water tapping fees and water service fees.[11]

The SAC, then, has sufficiently alleged the Barley Defendants' liability. As the court discussed in *Belkowski*, *supra*:

> The question becomes, has the Plaintiff stated a short and plain statement of the claim showing that she is entitled to relief? Plaintiff alleges that she her ability to be heard at a public session before the Borough Council was obstructed by Defendant McGrail, who ordered Plaintiff to stop talking. While Defendant McGrail may be the solicitor, the conduct attributable to her by Plaintiff does not appear to be, at least at this stage, to have been within the traditional functions of an attorney as part of an attorney-client relationship. *While it is one thing to render advice to a client, it appears to be another matter entirely to exercise some degree of control over the ability of residents to be heard at a public meeting, which is what Plaintiff has alleged.* To be clear, the Court is not holding that Plaintiff has established that Defendant McGrail was a state actor and is subject to liability under § 1983 for the purpose of this cause of action. Such a determination would have to made [sic] based upon facts that are simply not before the Court at this stage. *What the Court is holding, however, is that Plaintiff has alleged enough at this stage to raise a right to relief above the speculative level as it pertains to Defendant McGrail.*

---

[11] Without the Project to rely on to offset taxes and water rents, Kutztown's 2015 budget will require a 22 percent tax increase and 10 percent increases in sewer and water rents. (Exhibit C to SAC). It simply makes no sense for Kutztown to authorize such increases and impose that burden on the Kutztown residents when the Project would cost Kutztown nothing.

*Belkowski*, 2010 WL 1433099, at *3. (Emphasis added). As was the case in *Belkowski*, it is clear that Advantage has asserted sufficient allegations in the SAC to survive a motion to dismiss.

The Barley Defendants' argument that an attorney cannot conspire with its client are not applicable to the present matter. As set forth above, when an attorney steps outside of traditional functions of an attorney-client relationship and acts under the color of law, the attorney can be found liable under Section 1983 irrespective of any conspiracy allegation. *See id.* Furthermore, and as discussed in greater detail below, a claim for conspiracy has been adequately pled in the SAC. As set forth in *Heffernan v. Hunter* (relied on by the Barley Defendants): "It is, of course, axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy." *Heffernan*, 189 F.3d 405, 413 (3d Cir. 1999) (citation omitted); *see also Marshall v. Fenstermacher*, 388 F. Supp. 2d 536, 553 (E.D. Pa. 2005) ("[I]f an attorney counsels a client to act in a manner that violates the rights of a third party, the attorney may be liable to the extent that a non-lawyer would be in the same situation.").

As alleged in the SAC, the Barley Defendants did not merely advise about constitutional issues, they directed and ***participated*** in the violation of Advantage's constitutional rights for their own self-serving interests, and not for Kutztown, their client. (SAC ¶¶ 137, 193-195). Furthermore, but for the Barley Defendants' active participation and directions, the Kutztown Defendants would have had no reason to block the Project as the Project was beneficial to Kutztown and its residents. It was only after the Barley Defendants found out about their negligence in their failure to notify Kutztown of Maxatawny pulling out of the SCRA Agreement (*14 months after Maxatawny withdrew*) that Kutztown began to voice disapprovals for the

Project.  There is a direct correlation between the Barley Defendants' actions and Kutztown's policy aimed against Advantage in proceeding with the Project.

Accordingly, the Barley Defendants were acting under color of state law, and their motion should be denied.

### 3. The Barley Defendants Were Co-Conspirators and Plaintiff Has Sufficiently Pled Involvement for Their Sole Benefit, Outside the Scope of Representation

A private actor may be held liable under Section 1983 where the private actor wrongfully influenced the state actor's decisions or acted with the state actor in a conspiracy to violate Section 1983.  *See e.g.*, *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D. Pa. 1997) (citations omitted).  The cases on which the Barley Defendants rely are not persuasive in the instant matter for various reasons.  First, *Heffernan* was decided in the context of a Section 1985(3) claim, not a common law conspiracy claim under Section 1983.  Second, *Kneipp v. Tedder*[12] does not foreclose (and is not applicable to) cases that allege the liability of a private actor based on conspiratorial conduct.[13]  And, third, *Heffernan* and *Andrekovich v. PennPrime Liab. Trust* (an unreported, non-binding decision)[14] are factually misaligned with the instant matter where Advantage (1) plausibly alleges a conspiracy among the Barley Defendants, the SSM Defendants, and the Kutztown Defendants, and (2) clearly alleges that the Barely Defendants' conduct was (a) for their sole benefit and/or (b) outside the scope of representation.

#### i. Plaintiff Alleges a Legally Plausible Conspiracy

A plaintiff alleging conspiracy must aver "a combination of two or more persons to do a criminal act, or to do an unlawful act by unlawful means or for an unlawful purpose." *Spencer,*

---

[12] 95 F.3d 1199 (3d Cir. 1996).

[13] Plaintiff notes, however, that it has alleged "state action" by the Barley Defendants "under color of state law" where the Barley Defendants' actions constitute policy-making, as more fully briefed herein.

[14] 2013 U.S. Dist. LEXIS 29781 (W.D. Pa. Mar. 5, 2013).

968 F.Supp. at 1020 (citing *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir.1974)). A plaintiff will satisfy Section 1983 conspiracy requirements by alleging "factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Id.* (citations omitted).

In the SAC, Advantage alleges that the Barley Defendants, Kutztown Defendants, and SSM Defendants secretly conspired to delay the development of the Project for their self-serving purposes. The agreement set out in the SAC was carried out through a chain of events, including (1) the creation and announcement of the Kutztown's de facto policy, which impermissibly ties the development of the Project to the Dec. Action (SAC ¶¶ 138-140, 147); (2) the refusal to certify the capacity of the Main (*Id.* ¶¶ 133-134); (3) the nonsensical opposition to Maxatawny Township's efforts to build the New Main (*Id.* ¶¶ 159-191); (4) the disclosure of Advantage's principal, Greg Sarangoulis', confidential and privileged material to a person who has no right to such confidential and privileged materials and is, in fact, ***adverse*** to Advantage and Maxatawny (*Id.* ¶ 242); (5) the attempted consolidation of the Dec. Action with unrelated litigation in York County (concerning Sarangoulis' attempts to recover legal files from Barley) (*Id.* ¶¶ 247-256); and (6) the continued targeting of Advantage and its principal. (*Id.* ¶ 296).

Through this conspiracy, the Barley Defendants and the other Defendants have blocked the Project, treated Advantage differently from other similarly situated property owners to its disadvantage, restricted Advantage from its enjoyment of the rights and privileges enjoyed by other property owners, and denied Advantage its due process and equal opportunity rights.

### ii. Plaintiff Alleges the Barley Defendants Acted for their Own Benefit and/or Outside the Scope of their Representation

The Barley Defendants' brief in support of the Motion ignores (or, more particularly, drops into a vague footnote (20)), Advantage's clear allegations that the Barley Defendants acted

for their own benefit in extreme "CYA" fashion by contriving an entire litigation scheme against Advantage to cover their own malpractice relating to the SCRA. As discussed above, and as the Barley Defendants admit, where an attorney acts for his own sole benefit *or* outside the course of his representation, he is not excepted out of the ability to conspire with his client. *See e.g., Heffernan,* 189 F.3d at 412; *N'Jai v. Floyd*, 386 F.App'x 141, 144 (3d Cir. 2010) (citations omitted).[15]

The SAC alleges that the Barley Defendants' covering their own fatal mistakes was the ***primary motive*** in targeting Advantage and undermining the Project. (SAC ¶¶ 121, 126, 192-197). Further, the Barley Defendants' actions are not in Kutztown's interest, as Kutztown would reap the benefits of the Project, lowering their school taxes and water fees for its residents using the revenue generated from the Project. (*Id.* ¶¶ 63, 64, 264).

The Barley Defendants' footnote that "the reinstatement of the SCRA Agreement would accrue to Kutztown's benefit", then, is belied by the clear allegations in the SAC and, is in fact, absurd. Asking the Court to accept the Barley Defendants' argument while ignoring the facts pled in the SAC is improper for the purposes of ruling on the Motion. The absurdity of the Barley Defendants' argument is further highlighted in the SAC, which clearly alleges that the SCRA Agreement died already ***because*** the Barely Defendants failed to advise Kutztown to timely oppose its cancellation. Any financial "benefit" to Kutztown now relating to the SCRA Agreement could only come from Kutztown's holding its attorneys responsible for malpractice, which is exactly what the Barley Defendants are trying to avoid. Accordingly, Plaintiff has

---

[15] Moreover, the Barley Defendants are not shielded from Plaintiff's conspiracy claim where Plaintiff alleged a pattern of activities in furtherance of the conspiratorial agreement. *See e.g., Rackin v. University of Pennsylvania,* 386 F.Supp. 992, 1005–1006 (E.D.Pa. 1974) (claim of continued and varied instances of discrimination and harassment involving more than a single decision by one business entity supported a conspiracy allegation) abrogated on other grounds, as recognized by *Imperiale v. Hahnemann Univ.*, 776 F.Supp. 189 (E.D. Pa. 1991) *aff'd*, 966 F.2d 125 (3d Cir. 1992).

successfully alleged that the Barley Defendants were acting outside the scope of their representation, and their motion should be denied.

### D. PLAINTIFF HAS SUFFICIENTLY PLED ITS CONSTITUTIONAL CLAIMS AGAINST DEFENDANTS

#### 1. The SAC Sufficiently Asserts a Claim Against Defendants for Violations of Advantage's Equal Protection Rights

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

To state a viable equal protection claim based on purported selective treatment, the plaintiffs must allege: (1) they were selectively treated compared with others similarly situated, and (2) the selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, or by a malicious or bad faith intent to injure, or to inhibit the exercise of constitutional rights. *Nuway Environmental Limited v. Upper Darby Twp.,* 2006 WL 212289, *6 (E.D.Pa. 2006).

The Supreme Court has recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). In so doing, the Court has explained that the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *Id.* (Internal citations omitted).

To state a class of one equal protection claim, a plaintiff must allege the existence of similarly situated individuals whom the defendant treated differently than the plaintiff. *See Willis v. Carroll Twp.*, 2008 WL 644762, at *9 (M.D. Pa. 2008). A "class of one" can attack intentionally different treatment if it is irrational and wholly arbitrary. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004).

In *Prosperi, supra,* plaintiffs alleged that:

> [O]n or around September 29, 2004, [they] and their builder received a letter from the Scott [Township] C[ode] E[nforcement] Officer demanding that a permit be obtained for a paved driveway on Lot No. 1 and that if pavement proceeded without it, Scott Township would send the police. Other driveways in Scott Township have been installed and paved without the issuance of any permit. To [plaintiffs'] knowledge, Scott Township did not send the police to these homes (complaint at ¶ 41).

2006 WL 2583754, at *6. Based on these allegations, the court concluded that the plaintiffs had stated a cognizable equal protection claim. *Id.*

As set forth in the SAC, there is presently 26,174 GPD of sewage from 186 Maxatawny customers flowing through the Main, and Kutztown has not objected to the use of the Main by *any* of these 186 other users, all of which are similarly situated to Advantage. (SAC ¶ 82, 97). In particular, also included in the Area A System is the Cedar Shopping Center Development, a mixed use commercial development center located on Kutztown Road in Maxatawny. (*Id.* ¶ 98). Sewage from the Cedar Shopping Center Development flows into the Area A System and the Main. (*Id.* ¶ 100). In fact, in January 2015, another Maxatawny user was ordered by Berks County Court of Common Pleas to tie into the Area A System, connecting to the Main. In that litigation, the particular Maxatawny user did not want to tie into the Area A System, but the court ordered the user to tie in because the user was located in Area A. Despite having full knowledge of the existence of the Berks County litigation, Kutztown never intervened to prevent

the user in question from tying into the Main, which it would have done had its stated concerns about the Advantage Point Project been anything other than pretense. (*Id.* ¶ 203 and Exhibit "L" to the SAC).

The Defendants allege that Advantage is not similarly situated because the Project has larger sewage needs than other owners' needs. This assertion rings hollow for several reasons. First, until the Barley Defendants discovered their malpractice, Kutztown never objected to the Project knowing too well the amount of the Project's sewage needs. Before the Dec. Action was filed, in September 19, 2013 (just few months before the Dec. Action was filed), Kutztown even approved Advantage's request for 70,000 gallons per day of water from KMA without any objection, knowing that the Main would be eventually used to serve the sewage flowing from the Project. (SAC ¶ 95). And, there has never been any question regarding the Main's capacity to service the Project's sewage.

Second, and more importantly, sewage is fungible. Whether one gallon of sewage comes from the Project, the Cedar Shopping Center, or any one of the 186 other customers that are located in the Area A System *presently* using the Main, it is still one gallon of sewage. Provided there is sufficient capacity in the Main to handle that one gallon, it does not matter where it originates. Moreover, the Project's projected sewer usage, whether it was 69,000 gallons, 100,000 gallons, or 120,000 gallons, is *irrelevant* so long as sufficient capacity existed in the Main. The Defendants were asked to simply confirm the capacity of the Main, or more accurately, the amount of the Main available for use today, not five years from now. They were ***not*** asked to review, approve, consider, or otherwise insert themselves into the intimate details of the Area A System or the Maxatawny Plant. Nor were they asked for a strategic plan to address

and project capacity over some extended timeline. They were simply asked to tell how much more sewage could flow down a pipe at that moment.

It is undisputed that there is 123,826 GPD of unused, untapped capacity available for Maxatawny's customers. Jenkins stated this in his April 15, 2014 letter. The Project will add only an additional 69,544 GPD of sewage to the Area A System, which is well within the Main's capacity. (SAC ¶¶ 142-143 and Exhibit E to SAC). Despite the existence of adequate capacity for the Project, the Defendants conspired to treat Advantage differently from every other Maxatawny customer in order to stop the Project. They adopted a new policy directed at one customer – Advantage. They claimed that for Advantage to develop the Project, first, a lengthy litigation must be resolved, a litigation that did not involve Advantage and will have no bearing on the Main. They also claimed that additional information was needed, but it was information they themselves already possessed. The Defendants then went on a rampage of targeting Advantage by seeking an injunction, paying Barley to consolidate an action in York County, and involving Advantage's principal with the Dec. Action.

Further, Defendants have continued to single out Advantage through their inexplicable opposition to the construction of the New Main. As discussed above, the construction of the New Main would remove the purported issues raised by the Defendants in the April 15th letter from consideration, as the Project's sewage would not flow through the Main. In other words, the New Main—and, by extension, the Project—will not impact the sewage capacity of the Main, yet Defendants have opposed the construction of the New Main nevertheless. This opposition will negatively affect Advantage.

In *Prosperi*, the court recognized a cognizable equal protection claim because Scott Township permitted the driveways owned by others to be installed and paved without the

issuance of any permit. In comparing the plaintiff's driveway to other driveways in the municipality, the plaintiff did not plead the length of the other driveways, the location of the other driveways, the width of the other driveways, or any other irrelevant detail. Rather, the plaintiff merely averred that it was being treated differently from other driveway owners, and that was sufficient to establish a valid equal protection claim. That is the case here. Sewage is sewage. Every other Maxatawny customer that has sought to connect to the Area A System, both before and after Advantage has sought to do so, has done so without any objection from Kutztown. Only **one out of 187** customers (186 existing and Advantage) has faced objection – Advantage. Under these circumstances, an equal protection claim is made.

A troubling fact is that during this time, Crawford was working for the MTMA and had intimate, full knowledge regarding the capacity of the Main and Maxatawny Plant. (SAC ¶ 220). Despite this close knowledge and relationship, the SSM Defendants secretly conspired with each other, the Kutztown Defendants, and the Barley Defendants to interfere with the Project. The SSM Defendants' participation in the unlawful conspiracy is highlighted by the Jenkins April 15, 2014 letter, which instructed Kutztown to demand "a full accounting from Maxatawny" as to the amount of its sewage flows, which the SSM Defendants already had in their possession. In light of this selective targeting, Advantage's equal protection claims should withstand the Motion to Dismiss.

Just as troubling, Martin (one of the Kutztown Individual Defendants) was simultaneously working for College Town Communities, who owns student housing facilities in Kutztown, Pennsylvania and is a competitor of Advantage over student housing. (*Id.* ¶ 205). Martin wanted the Project delayed or terminated for her own purposes. This self-dealing

provides further explanation for Kutztown treating Advantage differently from every other sewer customer.

## 2. The SAC Sufficiently Pleads a Violation of Plaintiff's Procedural Due Process Rights

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Due Process Clause affords both procedural and substantive safeguards. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 846-47, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

To establish a violation of procedural due process, the plaintiffs must prove that a person acting under color of state law deprived them of a protected property interest, and that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Parratt v. Taylor*, 451 U.S. 527, 536-37, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The SSM Defendants and Kutztown Defendants both rely heavily on *Fortune Dev., L.P. v. Bern Twp.*, 2013 WL 990454 (E.D. Pa. 2013). In *Fortune,* the plaintiff/developer, Fortune, was attempting to develop a 58 acre property in Bern Township, Pennsylvania. It needed sewer to do so. Neither Bern Township nor Bern Township Municipal Authority (BTMA), however, owns or operates a plant. Rather, the closest facility was owned by Leesport Borough Authority (LBA). To provide sewer services to its property, Fortune needed BTMA to allocate additional sewer capacity to Fortune. This did not occur. Consequently, Fortune alleged that Bern Township and the BTMA, among others, deprived it of its legitimate claim of entitlement to wastewater treatment services without due process of law. The court dismissed Fortune's procedural due process claim finding that the procedures outlined in Act 537 (Pennsylvania's Sewage Facilities Act) afforded adequate due process. *Id.*

The court in *Fortune* found that Fortune could have availed itself of numerous remedies under Act 537.  The court noted that a property owner may request that the DEP order a municipality to revise its official plan if the municipality denies the property owner's written demand to do so "or fail[s] ... to reply in either the affirmative or negative within sixty days."  35 Pa. Stat. Ann. § 750.5(b); *see also* 25 Pa.Code § 71.14(a).  And, the court noted that Fortune could have used Act 537 procedures to require BTMA to allocate some of its reserved capacity in the LBA plant to Fortune, or to request additional capacity from the LBA plant and allocate such additional capacity to Fortune.  *Fortune,* 2013 WL 990454 at *5.

The present matter is readily distinguishable.  In *Fortune*, the project was located in Bern Township, was to be serviced by the BTMA, fell under the Bern Township 537 Plan, and, as such, Act 537 provided specific redress.  Here, the Project is located in Maxatawny Township, not Kutztown; sewer for the Project will be serviced by the MTMA not the KMA; the Area A System, which will service the Project, falls under Maxatawny's Act 537 Plan, not Kutztown's; and Maxatawny approved the Project, thus this is not a scenario presented in *Fortune*.[16] Accordingly, the harm caused by the Defendants and the relief sought by Advantage from the Defendants are not determinable under Act 537.[17]

Moreover, the Project as currently conceived, with the construction of the New Main, does not implicate any of the concerns expressed by the Defendants in their opposition to the Project as originally designed, and specifically their claimed capacity issues with the Main.  As

---

[16] Furthermore, and as noted above, Maxatawny, not Advantage, was the applicant that had applied for the Act 537 Plan revision exemption.  (SAC ¶¶ 130-131).

[17] The present matter is equally distinguishable from *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1988), cert. denied, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988), overruled on other grounds, *United Artists Theatre Circuit, supra,* 316 F.3d 392, wherein the court held that Pennsylvania affords a full judicial mechanism to challenge the administrative decision to deny an application for a building permit. Here, no building permit was sought from Kutztown; nor was it required.

discussed at length above, Maxatawny plans to construct the New Main through non-Kutztown property and/or property to which Maxatawny has the right to access, (*Id.* ¶¶ 164, 167, 179), and thus, it does not implicate Kutztown's Act 537 plan.

In this matter, the Kutztown Defendants, together with the SSM Defendants and Barley Defendants met, conspired, and chose to intentionally interfere with the Project in secret, without notice to Advantage, and without a single public hearing. The Defendants, among other things, objected to the Exemption Request, prepared the April 9, 2014 and April 15, 2014 letters, offering different rationales for opposing the Project, and reflecting the de facto policy targeting Advantage, sought an injunction targeting only Advantage, sought the consolidation of the Dec. Action with a separate York County Action involving Advantage's principal, blocked Maxatawny's construction of the New Main, and otherwise unlawfully blocked Maxatawny from allowing Advantage to use the Main. (*Id.* ¶¶ 137-147, 159-190, 214-215, 247-256). They took all these actions, not for any legitimate reason, but rather to gain leverage against Maxatawny. They are holding a $77 million project hostage for self-serving reasons, which have nothing to do with the merits of the Project or its many benefits to the community. Under these circumstances, a valid procedural due process claim exists.

Moreover, when the Defendants adopted their new policy set forth in the April 15, 2014 letter directed specifically at Advantage, a policy which conditioned the development of the Project on the conclusion of the Dec. Action, a policy which was to be applied to ***only one of 187*** customers, retroactively, they did so without any public hearing; they did so without considering the merits of the Project; they did so for the sole purpose of delaying the Project to achieve their own self-serving agenda; and specifically to the point, they did so in violation of Advantage's procedural due process rights.

### 3. The SAC Sufficiently Pleads a Violation of Plaintiff's Substantive Due Process Rights

#### i. Advantage Has Adequately Alleged a Protected Interest.

To maintain a Section 1983 claim, "a Plaintiff must show that the Defendants deprived him of a right or privilege secured by the Constitution or laws of the United States while acting under color of state law." *Williams v. Borough of West Chester,* 891 F.2d 458, 464 (3d Cir. 1989); *Harris ex rel. Litz v. Lehigh Cnty. Office of Children & Youth Servs.*, 418 F.Supp.2d 643, 647 (E.D. Pa. 2005).

The Third Circuit has held that cases involving "zoning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiff [ ]" implicate the fundamental property interest in the ownership of land. *Cherry Hill Towers, L.L.C. v. Twp. of Cherry Hill*, 407 F. Supp. 2d 648, 654 (D.N.J. 2006). *See also Board of Regents of State Colleges v. Roth,* 408 U.S. 577 (1972) ("Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."); *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005) (same); *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) ("A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'") (quoting *Roth*, 408 U.S. at 577).

In *Long v. Bristol Twp*., 2012 WL 2864410, at *5 (E.D. Pa. 2012), for example, the court found that an ownership interest in a property effected by a land use regulation, was sufficient to show a property interest protected by the Fourteenth Amendment's due process clause. *See also*

*Maple Properties, Inc. v. Township of Upper Providence, et al.,* 2004 WL 2579740, *2 (citing *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,* 53 F.3d 592, 600 (3d Cir. 1995)); *Cherry Hill Towers, LLC* 407 F.Supp.2d at 654. The use and enjoyment of property are interests protected by the substantive component of the Due Process Clause. *DeBlasio* 53 F.3d at 601; *Spradlin, supra,* 2005 WL 3320788, *8 (M.D.Pa. 2005). Furthermore, it is well established that a developer "has the *right* to be free from harassment in [its] land development efforts." *County Concrete Corp., supra,* 442 F.3d at 159, 170 (emphasis added).

Here, the Project has been approved for a student housing development. Advantage has obtained all necessary approvals and all rights to tie into the Area A System. The Defendants, without any legal right or basis, are interfering with Advantage's property rights. Accordingly, Advantage has sufficiently pled a due process claim.

The SSM Defendants' and Kutztown Defendants' reliance on *Ransom v. Marrazzo*, 848 F.2d 398 (3rd Cir. 1988) is misplaced. In that case, the federal court of appeals upheld an ordinance of the City of Philadelphia that permitted the city to refuse to provide service to residents if the city had placed an encumbrance on the property because a former occupant had failed to pay for water service. The *Ransom* court noted that the city's shutoff remedy and lien remedy was proper because those remedies do not "impose unconditional personal liability, but rather, [affect] the property, merely making payment of delinquencies a condition of continuation of service...." *Id.* at 408; s*ee Skupien v. Borough of Gallitzin*, 134 Pa. Cmwlth. 115, 118-19, 578 A.2d 577, 579 (1990). Moreover, in a footnote, the *Ransom* court identified it was not addressing the constitutional question of denying water service to non-delinquent tenants, but rather ruling only on the constitutional question of withholding water service to owners or "non-

tenants" because of the obligations of former users.  *Ransom,* 848 F.2d at 408, fn. 7.  *See also*

*Pilchen v. City of Auburn*, *N.Y.,* 728 F. Supp. 2d 192, 204 (N.D.N.Y. 2010).

The *Ransom c*ourt addressed the rights of the City of Philadelphia with respect to its

treatment of ***its*** customers ***when*** the customers failed to make water payments.  It did not

concern, for instance, the right of the City of Philadelphia to interfere with the customer of a

neighboring municipality for the sole purpose of affecting the outcome of litigation between two

neighboring towns.

In the present matter, Advantage is not, nor will it ever be, a sewer customer of

Kutztown.[18]  Advantage's sewer service provider is the MTMA.  Advantage has complied with

all of MTMA's requirements for tying into the Area A System.  And there is an excess of

capacity in the Main to serve Advantage's need.  Further, Maxatawny has proposed construction

of the New Main, which would remove the purported issues outlined in the April 15, 2014 letter.

All the Defendants want to do is to disrupt the Project, to prevent it from proceeding, and to

attempt to alter the course of the Dec. Action proceedings.[19]  By doing so, the Defendants have

interfered with Advantage's right to develop the Project.

The Defendants are not simply denying sewer service.  There is no sewer permit or

approval before Kutztown.  Rather, the Defendants are selectively targeting Advantage and

preventing it from developing the Project for illegitimate self-serving reasons.  In this context,

Advantage has sufficiently asserted a due process claim.

---

[18] This is especially true since Maxatawny Township plans to install the New Main, which would obviate
the need for using the Main.
[19] As set forth above (fn. 6 above), Kutztown knew the Project was important to Maxatawny as the
Project would bring significant financial and socioeconomic benefits to both Maxatawny and Kutztown.
(SAC ¶¶ 57-67).

ii.     **Defendants' Conduct Shocks the Conscience.**

In the Third Circuit, alleged violations of substantive due process are analyzed under a "shocks the conscience" standard. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003). Conscience shocking behavior includes actions involving corruption or self-dealing, hampering development to interfere with otherwise constitutionally protected activity, bias against an ethnic group, or a "virtual taking". *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285-86 (3d Cir. 2004); *ABD Monroe, Inc. v. Monroe Twp*., No. CIV.A.04-1412(WHW), 2008 WL 58876 *7 (D.N.J. 2008); *Blain v. Twp. of Radnor*, 167 F. App'x 330, 333 (3d Cir. 2006); *Prosperi* 2006 WL 2583754, at *4. Further, whether actions "shock the conscience" varies depending on the factual context. *Eichenlaub*, 385 F.3d at 274, 285. What is clear, however, is that the test is designed to avoid converting federal courts into super zoning tribunals. *Id.* Issues in a normal zoning dispute do not typically pass the "shocks the conscience test." *Id.* at 286.

The Due Process Clause "does not target government actions that are merely taken for an 'improper purpose' or in 'bad faith.'" *Johnston v. Dauphin Borough*, 2006 WL 1410766, *6 (M.D.Pa. 2006) (citing *United Artists Theatre Circuit*, 316 F.3d at 400-02). "Rather, it constrains only those activities that have *no reasonable relation* to legitimate government objectives." *Matthew Johnston, et al. v. Dauphin Borough, et al.*, 2006 WL 1410766 *6 (emphasis in original) (citing *Corneal v. Jackson Twp.*, 313 F.Supp.2d 457, 465-66 (M.D.Pa. 2003), aff'd., 94 Fed.Appx. 76 (3d Cir.2004)); *Prosperi,* 2006 WL 2583754, at *5 ("[W]here plaintiffs claim a course of conduct undertaken by defendants with the intent to harm and restrict their ability to utilize their property . . . it suffices to state a claim under the 'shocks the conscience' standard.") (citing *Nicolette v. Caruso,* 315 F.Supp.2d 710, 723 (W.D.Pa.2003)).

The present matter is anything but a normal zoning dispute. In fact, it has nothing to do with zoning at all. Here, the Project has been approved for use as student housing. All necessary permits and approvals were sought and obtained. The municipality where the Project is located and the sewer authority both not only approve, but also want the Project developed. The Project is not insignificant. It will cost $77 million to construct and will bring numerous benefits to Maxatawny and Kutztown. (SAC ¶ 257). Further, up until the start of the various litigations, there had only been approvals for the Project.

As set forth at length above, the Defendants have interfered with and restricted Advantage's development of the Project, not for any legitimate reason related to the merits of the Project, but rather for the specific purpose of causing harm to Advantage and using it as a pawn in Kutztown's dealings with Maxatawny under the directions of the Barley Defendants, who are using the dispute as a way to avoid malpractice lawsuit. These allegations "shock the conscience" under the standard elucidated in *Eichenlaub*, *Nicolette*, *Prosperi*. In addition, Defendants' present attempts to block the New Main, which has nothing to do with SSM and Kutztown's purported concerns outlined in the April 15, 2014 letter, also satisfies the "shocks the conscience" standard. The Defendants simply have no legitimate reason to prevent Advantage from tying into the Area A System (especially where its Engineer has admitted the capacity exists) or to block Maxatawny Township from building the New Main for Advantage.

Furthermore, as the Defendants' conduct has precluded the Project from moving forward with its *sole* approved use, the Defendants conduct has resulted in a taking of the property, or at the very least a temporary taking. A taking of property shocks the conscience giving rise to a substantive due process claim. *See Prosperi* 2006 WL 2583754, at *4; *Eichenlaub,* 385 F.3d at 274, 285-86.

Nor is this case a disguised zoning board appeal, as the Defendants argue. Advantage has not sought, nor does it intend to seek, any permit or approval from Kutztown. Advantage has not sought to redress (for example, appeal or reconsideration) of any Kutztown's "denial," as there was no such denial in the first place. Nor will any ongoing litigation, including the Dec. Action or the Commonwealth Court appeal, provide Advantage with any redress. To the contrary, this case concerns specific acts of the Defendants' unlawful conduct in harming Advantage for their own self-serving agenda. To say the least, the circumstances presented in this case are unusual and the Defendants' actions defy all (valid) reason. Under these circumstances, the Defendants' conduct is not merely in bad faith, but shocks the conscience and should not be permitted to continue.

### 4. The SAC Sufficiently Alleges a Claim for Unconstitutional Taking of Advantage's Property.

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." The United States Supreme Court has explained that this provision "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, CA,* 482 U.S. 304, 315, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (emphasis in original). "Thus, government action that works a taking of property rights necessarily implicates the constitutional obligation to pay just compensation." *Id.* (citation omitted).

A Fifth Amendment taking can occur, as it has here, through "regulations that completely deprive an owner of *all* economically beneficial use of [their] property." *Lingle v. Chevron, USA, Inc.,* 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (emphasis in original) (citations

omitted). "Temporary takings", which "deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *First English, supra,* 482 U.S. at 318. "A taking is *not* established simply upon a showing of the denial of the ability to exploit a property interest that the plaintiffs heretofore had believed was available." *Midnight Sessions, Ltd., et al. v. City of Philadelphia, et al.,* 945 F.2d 667, 676 (3d Cir. 1991) (emphasis in original)), abrogated on other grounds by *United Artists Theatre Circuit.* Rather, "municipal action can be considered a taking only if those actions deprive an owner of *all* economically viable uses of their property." *King v. Twp. of East Lampeter,* 17 F.Supp.2d 394, 422 (E.D.Pa. 1998) (emphasis added), *aff'd.,* 182 F.3d 903 (3d Cir.1999), *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

In *Prosperi,* the court found that a takings claim had been adequately pled. In this regard, the court stated:

> Here, the plaintiffs allege that Lot No. 1 and Lot No. 2 were used for permitted residential purposes pursuant to municipal zoning ordinances (complaint at ¶¶ 17-19); that from May to September 2004, the defendants conspired to deprive plaintiffs from obtaining an occupancy permit for their then completed residence on Lot No. 2 (complaint at ¶ 27), and on July 6, 2004, the plaintiffs' request for an occupancy permit was denied (complaint at ¶ 34); that Scott Township also denied plaintiffs' attempts to pave their driveway on Lot No. 1, which made access to their residence a hardship (complaint at ¶¶ 40-45); that the plaintiffs were forced to file state court mandamus actions to obtain both an occupancy permit for their residence and the permit needed to pave their driveway (complaint at ¶¶ 35, 38, 47); and that after receiving the occupancy permit, the plaintiffs moved into their new residence on October 4, 2004 (complaint at ¶ 38). Significantly, the plaintiffs allege that they exhausted all available state remedies for purposes of their Fifth Amendment takings claim (complaint at ¶ 76). Thus, to the extent the plaintiffs were temporarily denied occupancy and access to their property by the defendants' acts, such that they were

> deprived of all economically viable use of it, the defendants may
> be liable for an unconstitutional taking.

2006 WL 2583754 at *7.

In the present matter, Advantage has likewise adequately pled a takings claim. Here, Advantage has averred that it has sought and obtained all necessary approvals for the Project. As a result, student housing is the intended, approved use for the Property. Advantage is prepared to move forward with the Project and invest $77 million (inclusive of investments to date) to complete the Project. (SAC ¶ 257). However, the acts of Defendants, as detailed at length above, have stymied Maxatawny's attempts to construct the New Main, and have otherwise unlawfully prevented Advantage from developing the Project, for the purpose of gaining leverage against Maxatawny in the Dec. Action. In so doing, Defendants have denied Advantage the economically viable use of the property. Under these factual allegations, which the Court must accept as true, Plaintiff has adequately pled a takings claim.

### 5. The SAC Sufficiently Alleges a First Amendment Claim for Retaliation.

To sufficiently plead a First Amendment retaliation claim, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Tp*. 463 F.3d 285 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003)). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Thomas*, 463 F.3d at 296 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir.2006)). "The reason why such retaliation offends the Constitution is that it

threatens to inhibit exercise of the protected right." *Crawford–El v. Britton*, 523 U.S. 574, 589 n. 10 (1998).

In this case, the SAC alleges that Advantage engaged in constitutionally protected conduct, namely, filing suit against the Defendants to vindicate its constitutional rights, among others. *See, e.g., Kriss v. Fayette Cnty.*, 504 F. App'x 182, 186 (3d Cir. 2012) (filing lawsuit is "protected conduct" for purposes of First Amendment Retaliation claim). The SAC also alleges that Defendants continued to exert illegal influence over approvals for the Project, and also moved to block construction of the New Main, after Plaintiff filed the instant suit. This conduct by Defendants is more than sufficient to deter a person of ordinary firmness from executing his or her constitutional rights. For these reasons, Plaintiff has pleaded a First Amendment Retaliation claim, and Defendants' motions to dismiss should be denied.

## E. THE SAC HAS SUFFICIENTLY ALLEGED A CLAIM AGAINST THE DEFENDANTS FOR TORTIOUS INTERFERENCE OF EXISTING OR PROSPECTIVE CONTRACTUAL RELATIONS

Under Pennsylvania law, the elements of a cause of action for intentional interference with a contractual relation, whether existing or prospective, are: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa.Super. 1997) (citations omitted). The Supreme Court of Pennsylvania has expressly adopted the Restatement (Second) of Torts § 766 which states that a necessary element of this tort is improper conduct by the alleged tortfeasor. *See Adler Barish v. Epstein*, 482 Pa. 416, 431, 393 A.2d at 1183 (1978).

The SSM Defendants, together with the Kutztown Defendants and Barley Defendants, conspired to interfere and disrupt Advantage's development of the Project. The SSM Defendants specifically worked with the Kutztown Defendants and Barley Defendants in the formulation of the new Kutztown policy, as reflected in the April 15, 2014 letter, for the purpose of delaying the Project and tying its completion to the conclusion of the Dec. Action. Although the Defendants' goal is to force their way back into the SCRA, the means they have chosen to accomplish that goal is to target and damage Advantage. In doing so, the Defendants have intentionally interfered with Advantage's existing agreements and relationship with Maxatawny, including the Public Sewer System Capacity Reservation Agreements, both dated December 27, 2012, entered into between the owners of the Property and the MTMA for the Project (SAC ¶ 87). More importantly, in causing the Project to stop, the Defendants interfered with Advantage's sale of the Project to a buyer. (*Id.* ¶ 335).

With respect to prospective relations, the Defendants' conduct has interfered with Advantage's ability to either (a) sell the Project for a significant return on investment or (b) develop the Project and enter into leases with the student tenants to occupy the 337 apartment units, thereby depriving Advantage of the revenues the Project would have generated.

As pled in the SAC, there is significant need for student housing for Kutztown University students. (*Id.* ¶ 57). Moreover, the cost of the project is $77 million dollars. (*Id.* ¶ 257). Under these circumstances, it is disingenuous for the Defendants to argue that these prospective agreements are not reasonably probable. Certainly, an investment of this magnitude would not be undertaken unless the maximum occupancy were anticipated. Accordingly, the SAC adequately alleges the existing and prospective contractual relations.

The Barley Defendants' contention that judicial privilege applies to any written communication by an attorney that results in a law suit (even if the communication itself is actionable and is the cause of the lawsuit) is, to put it bluntly, ludicrous.  Under that illogical conclusion, if the Barley Defendants wrote to all of ethnic minorities in town prohibiting them from speaking at council meetings based on their ethnicities, the Barley Defendants would say that is privileged. Similarly, if the Barley Defendants drafted and issued a new law targeted at a single resident of Maxatawny, intentionally treating that resident different from every other resident in Maxatawny and Kutztown, all for the purpose of harming that resident and advancing the Barley Defendants' self-serving agenda, then, of course, the Barley Defendants would claim such communication is privileged.  In each of these instances, Barley would be wrong.

The law of judicial privilege is clear:

> Whether a challenged communication is published prior to, or during, a judicial proceeding, *it must bear a certain relationship to the proceeding so as to qualify it as privileged*. That relationship is, in either case, the same in reference to communications made during judicial proceedings, *it is necessary that a protected communication have been pertinent and material to the redress sought and that the communication have been issued in the regular course of the proceedings*. Similarly, with respect to communications made prior to the institution of proceedings, the *protected communication would need to have been pertinent and material and would need to have been issued in the regular course of preparing for contemplated proceedings*.

*Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 356 (Pa.1986) (emphasis added).

"To assure that such claims are justly resolved, it is essential that pertinent issues be aired in a manner that is unfettered by the threat of libel or slander suits being filed." *Bochetto v. Gibson*, 580 Pa. 245, 860 A.2d 67, 71 (2004).  Thus, for a pre-suit communication to be privileged and "unfettered by the threat of libel or slander suits" it must "bear a certain

relationship to the proceeding so as to qualify it as privileged", "would need to have been issued in the regular course of *preparing for contemplated proceedings*." (Emphasis added).

In this case, there was no proceeding, contemplated or otherwise. Rather, the preparation and issuance of the April 15, 2014 letter caused there to be a proceeding. Stated differently, if the Barely Defendants had not announced Kutztown's new policy in the April 15, 2014 letter and had simply affirmed that capacity of the Main, there would have been no Appeal and, consequently, the present lawsuit would never have been filed. The April 15, 2014 letter was issued in preparation for a proceeding, the April 15, 2014 letter caused the proceeding to occur. The same principles apply to the allegations in the SAC against Defendant Haws.

Moreover, Advantage does not allege libel or slander in the SAC. Rather, it alleges constitutional violations based on Kutztown's de facto policy reflected in the April 15, 2014 letter. Accordingly, judicial privilege is wholly inapplicable to this matter.

### F. ADVANTAGE HAS SUFFICIENTLY ALLEGED A CLAIM AGAINST DEFENDANTS FOR CONSPIRACY

To set forth a viable conspiracy claim under § 1983, the plaintiffs must allege that two or more persons acting under color of state law reached an agreement to deprive them of a constitutional right. *Pardue v. Gray*, 136 Fed.Appx. 529, 533 (3d Cir. 2005). While "a conspiracy is not actually an element of a § 1983 claim. It is recognized, however, that civil conspiracy is a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." *County Concrete Corp.*, *supra,* 442 F.3d at 174. Our courts have cautioned against the dismissal of a conspiracy claims as "the proof [of the conspiracy] is largely in the hands of the alleged conspirators." *Nicolette, supra*, 315 F. Supp. 2d at 719; *Hosp. Bldg. Co. v. Trustees of Rex,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

Here, Advantage has adequately pled a conspiracy claim against the Defendants. The SAC states that when Kutztown was presented with a request from DEP to certify the capacity of the Main, the SSM Defendants, working with the Barley Defendants and Kutztown Defendants, under the color of state law, conspired with Kutztown to carefully craft a new policy targeting Advantage with the goal of blocking the Project.[20] The Defendants conspired to improperly tie the development of the Project to the complete resolution of the Dec. Action – a lengthy complicated litigation between two municipalities regarding the control of the MTMA Plant. (SAC ¶ 147). Moreover, they did this, not for any legitimate reason connected to the merits of the development, but to cause harm to both Advantage and Maxatawny so that Maxatawny would change its position in the Dec. Action. (*Id.* ¶ 144). In light of the forgoing, Advantage has sufficiently pled a conspiracy claim against the Defendants.

### G. NEITHER THE KUTZTOWN DEFENDANTS NOR THE BARLEY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In their motions to dismiss, both the Kutztown Defendants and the Barley Defendants have invoked the doctrine of qualified immunity. Because none of the Defendants are entitled to qualified immunity, this argument should be rejected.

The Third Circuit has stated that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina,* 258 F.3d 156, 161 (3d Cir.2001)*; Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

A court ruling on a qualified immunity issue must make a threshold inquiry as to whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the

---

[20] The Barley Defendants' billing records, which will be produced in discovery, show that the Barley Defendants spent a significant amount of time crafting the April 15, 2014 letter, a letter which should have addressed solely the capacity of the Main by the SSM Defendants, without any unlawful input from the Barley Defendants. (SAC ¶¶ 138-140, and Exhibit "E" to SAC).

officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Thomas*, 463 F.3d at 294. As stated exhaustively above, the SAC alleges that the Defendants, while acting under the color of state law, violated Advantage's constitutional rights. (SAC, *generally*).

The Barley Defendants claim that *Dunsmore v. Chester Cnty. Children & Youth Servs.*, 1993 WL 101200, at *2 (E.D. Pa. 1993) stands for the proposition that a "solicitor of a municipality is entitle to qualified immunity for actions taken by him in connection with representing the municipality". *See* Barley Defendants' brief at page 24. It does not. The Barley Defendants completely misstate *Dunsmore*. In *Dunsmore*, the court held:

> Qualified immunity, unlike absolute immunity, *does not protect an official from suit for conduct that violates clearly established legal rights. Good v. Dauphin County Social Services for Children & Youth*, 891 F.2d 1087, 1091 (3d Cir.1989). On the present record, it can not be said as a matter of law that defendant Borzillo's pre-hearing conduct is shielded from liability via qualified immunity.

1993 WL 101200, at *3 (E.D. Pa. 1993) (emphasis added).

Likewise, the Barley Defendants improperly rely on *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L.Ed. 2d 589 (1991). In that case, the Supreme Court was not concerned with qualified immunity of a municipal solicitor acting beyond the scope of an attorney-client relationship, but rather the qualified immunity of secret service agents when making an arrest.

The test here is whether Barley Snyder violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The SAC sets forth sufficient facts to demonstrate that this was the case. Accordingly, Barley Defendants' qualified immunity defense is inappropriate for a motion to dismiss, and Advantage has sufficiently plead claims against the Kutztown Defendants and Barley Defendants such that the qualified immunity defense is not applicable.

## H. THE COURT SHOULD NOT STRIKE THE PARAGRAPHS OF THE SAC RELATING TO DAMAGES.

The Barley Defendants contend that Local Civil Rule 5.1.1 compels the Court to strike portions of Plaintiff's SAC. Local Civil Rule 5.1.1, however, states only that:

> No pleading asserting a claim for unliquidated damages shall contain any allegations as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the court, to reveal whether the case is or is not subject to arbitration under Local Rule 53.2, and to specify the nature of the damages claimed, e.g., "compensatory," "punitive," or both.

While Plaintiff amended the *ad damnum* clauses in the Amended Complaint in response to the motions to dismiss the Amended Complaint, no such striking or amendment is necessary here. The allegation referenced by the Barley Defendants, in which Plaintiff speculates that Plaintiff's damages could someday be "in excess of $70,000,000" (SAC ¶ 262) should not be understood as a claim for damages. Rather, it is a description, in the body of the complaint, of the effect of the unconstitutional delay caused by the Defendants, and a rough estimate at that. The SAC does not *claim* this amount, nor does it specify any amount of damages in the *ad damnum* clause. For these reasons, the Barley Defendants motion to strike should be denied.

## I. ADVANTAGE POINT HAS THE CAPACITY TO BRING SUIT AGAINST DEFENDANTS

The Barley Defendants contend that the SAC should be dismissed because Advantage, as a limited partnership, lacks capacity to sue under Fed. R. Civ. P. 17(b)(3) and Pa. R. Civ. P. 2127(a). This contention lacks merit. While the Barley Defendants have correctly cited Fed. R. Civ. P. 17(b)(3) as providing that for a plaintiff, other than an individual or corporation, capacity to sue or be sued is determined "by the law of the state where the court is located," they have omitted the remainder of Rule 17(b)(3), which provides, in pertinent part: "*except that*: (A) a partnership or other unincorporated association with no such capacity under that state's law may

sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." This is clearly what Advantage is doing in this case. Accordingly, Advantage has capacity to sue pursuant to Rule 17.[21]

### J. THE SAC COMPLIES WITH RULE 8(a)(2)

Federal Rule of Civil Procedure 8(a)(2) provides:

> (a)     Claim for Relief.  A pleading that states a claim for relief must contain:
> . . .
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief.

Because of the varying complexity of litigation, the appropriate length and complexity of a pleading will vary from case to case.  Thus, it is left to the trial judge in each case to determine whether a particular pleading complies with the Rule 8 mandate for clarity and brevity. *Crumpacker v. Civiletti*, 90 F.R.D. 326, 329 (N.D. Ind. 1981); *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969); 5 *Wright & Miller, Federal Practice & Procedure* § 1217 at 128.

In the present matter, Advantage has asserted seven (7) separate claims for relief against twenty four (24) defendants, concerning a course of conduct that spans over several years, arising out of a complex set of facts, involving a dispute between two municipalities, various agreements, approvals, and three legal actions (separate from the present matter).

In the context of this litigation, the SAC is sufficiently short and plain to satisfy the Rule while satisfying the plausibility standard under the Supreme Court's ruling in *Iqbal* and *Twombly*.[22]

---

[21] Even if the Court determines that Advantage lacks capacity to sue, Advantage should be permitted to substitute the named plaintiff. *See, e.g., Lefta Associates v. Hurley*, 902 F. Supp. 2d 559, 564 (M.D. Pa. 2012).
[22] In fact, the Kutztown Defendants would have likely argued that the SAC fails the plausibility standard under *Iqbal* and *Twombly* had the SAC not contained all of the allegations.

### K. ADVANTAGE SHOULD BE GRANTED LEAVE TO AMEND IF APPROPRIATE.

The mere fact that Advantage amended the complaint twice does not, in and of itself, mean that any futures amendments should be precluded. Although the granting or denial of an opportunity to amend under Rule 15 is within the sound discretion of the court, leave to amend should be liberally granted and given when justice so requires:

> If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - *the leave sought should, as the rules require, be 'freely given.'*

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir. 1984); *Merrill Lynch Business Financial Services, Inc. v. Plesco, Inc.*, 859 F. Supp. 818, 822 (E.D. Pa. 1994); *Venetec Inter., Inc. v. Nexus Medical, LLC*, 541 F. Supp.2d 612, 617-18 (D. Del. 2008) (leave to amend pleadings is "freely given when justice so requires").

Accordingly, to the extent an amendment is needed to address any of the Court's concerns with the SAC, leave to amend should be granted rather than dismissing the SAC with prejudice.

### V. CONCLUSION

Based on the foregoing reasons, Advantage respectfully request the Court deny the Motions in their entirety.

*[signature page follows]*

KANG HAGGERTY & FETBROYT LLC

By: */s/Edward T. Kang*            
Edward T. Kang
Daniel D. Haggerty
David P. Dean
123 S. Broad Street, Suite 1670
P: (215) 525-5850
F: (215) 525-5860
*Attorneys for Plaintiff,*
*Advantage Point, LP*

Dated: August 28, 2015

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |
|---|---|
| ADVANTAGE POINT, LP, | : Case No. 5:14-cv-05517-EGS |
| | : |
| Plaintiff, | : |
| | : **JURY TRIAL REQUESTED** |
| v. | : |
| | : |
| BOROUGH OF KUTZTOWN, *ET AL.* | : |
| | : |
| Defendants. | : |

_____

## CERTIFICATE OF SERVICE

I, Edward T. Kang, hereby certify that on August 28, 2015, I caused a true and correct

copy of Plaintiff's Omnibus Brief in Opposition to Defendants' Motions to Dismiss the Second

Amended Complaint to be filed electronically with the ECF system maintained by the Clerk of

the United States District for the Eastern District of Pennsylvania, and the following counsel

representing the following parties will receive electronic notification:

| | |
|---|---|
| Sean P. McDonough, Esq. | G. Thompson Bell, III, Esq. |
| Dougherty, Leventhal & Price, LLP | Stacey A. Scrivani, Esq. |
| 75 Glenmaura National Blvd. | Stevens & Lee, P.C. |
| Moosic, PA 18507 | 111 N. Sixth Street, P.O. Box 679 |
| *Attorney for Kutztown Defendants* | Reading, PA 19603 |
| | *Attorneys for SSM Group Defendants* |

Arthur W. Lefco, Esq.
Aaron Moore, Esq.
Marshall Dennehey Warner Coleman &
Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorney for Barley Defendants*

/s/Edward T. Kang
Edward T. Kang