UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADVANTAGE POINT, LP | : CIVIL ACTION |
| v. | : |
| | : CASE NO.: 5:14-cv-05517 |
| BOROUGH OF KUTZTOWN, et al. | : |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT OF DEFENDANTS, TIMOTHY G. DIETRICH, ESQUIRE, KEITH MOONEY, ESQUIRE, JEFFREY D. LOBACH, ESQUIRE, GEORGE WERNER, ESQUIRE, CHARLES HAWS, ESQUIRE, AND BARLEY SNYDER, LLC**

## I.    INTRODUCTION

The Barley Defendants are alleged to have conspired with their clients, the Kutztown Defendants, to violate Advantage Point's alleged constitutional right to tap into Kutztown's sewer main, even though the Advantage Point development is not in Kutztown.[1] Advantage Point cites no law, rule, ordinance, or agreement, which would provide it with a constitutional right to tap into the sewer main of a neighboring municipality. Nor has Advantage Point cited any authority in support of its contention that it may prosecute its newly minted claim that the defendants violated its constitutional rights by opposing Maxatawny's efforts to construct a new Force Main through the Borough of Kutztown. As reflected in Exhibit "I" to Advantage Point's Second Amended Complaint, Maxatawny, not Advantage Point, seeks to install the new Force Main in the streets of Kutztown where Kutztown already maintains water and sewer facilities and where

---

[1] At ¶1, Advantage Point alleges, "[t]his is a case about a municipality engaging in conspiracy with its solicitor . . . ."

gas lines may be located. Further, the Influent Pumping Station for the wastewater treatment plant is located within an easement on property owned by Kutztown.

Notwithstanding its failure to cite applicable authority, Advantage Point claims that the Barley Defendants are liable to for providing legal services to Kutztown, which allegedly caused Kutztown to deprive Advantage Point from connecting to Kutztown's sewer main, or from connecting to Maxatawny's proposed new Force Main.

All of the conduct imputed to the Barley Defendants that allegedly gives rise to Advantage Point's claims was done in the course and scope of providing legal services to Kutztown. In fact, all of the conduct imputed to the Barley Defendants could have only been performed on behalf of Kutztown. The Barley Defendants are incapable of independently obstructing Advantage Point's efforts to attach to Kutztown's sewer main; thus, they cannot be held liable to Advantage Point as a matter of law.

In its response to the Barley Defendants' Motion to Dismiss, Advantage Point ignores the facts alleged in its own pleading, and binding case law, which provides that an attorney cannot be deemed to have conspired with his own client, or be deemed to have acted under color of state law for §1983 purposes, if the conduct at issue was performed in connection with providing legal services to that client.

Moreover, as more thoroughly set forth in Defendants' instant Rule 12(b)(6) motions, even if the Barley Defendants could be deemed to have conspired with its client, the facts as alleged by Advantage Point nonetheless fail to state any viable causes of action.

II.     **SUPPLEMENTAL ARGUMENT**

   A. **THE BARLEY DEFENDANTS CANNOT BE DEEMED TO HAVE ACTED UNDER COLOR OR STATE LAW NOR CONSPIRED WITH THEIR CLIENTS**

Advantage Point cites *Belkowski v. Kruczek*, 2010 U.S. Dist. LEXIS 34194 (W.D. Pa. Apr. 7, 2010) for the proposition that it has alleged facts that sufficiently reflect that the Barley Defendants should be deemed to have been state actors for §1983 purposes. *Belkowski* actually supports the Barley Defendants' position. In that case, Janis Belkowski alleged that her rights to free speech were violated when she was ordered to stop speaking at a borough meeting by the borough solicitor. Belkowski did not allege that the attorney defendant acted together with state officials. The District Court was required to accept Belkowski's allegations as true, and could not consider the solicitor's contention that she was acting on behalf of the borough. *Id.* at 4.[2] Here, the Barley Defendants seek to have Advantage Point's repeated allegations reflecting that they were acting jointly with their clients taken as true. Indeed, Advantage Point has not alleged, and cannot allege, facts that reflect that the Barley Defendants acted solely for their own benefit, or outside the scope of providing legal services. Plaintiff's claims as asserted against the Barley Defendants should be dismissed because, as alleged by Advantage Point, the Barley Defendants were indeed acting as attorneys for the Kutztown Defendants.

Advantage Point's reliance on this Court's decision in *Marshall v. Fenstermacher*, 388 F. Supp. 2d 536, 554 (E.D. Pa. 2005) is likewise misplaced. In that case, Marshall alleged that the attorney defendant assisted his client in "furthering and participating in the allegedly fraudulent conveyance of the [client's] assets," and that the intracorporate conspiracy doctrine did not apply to fraudulent conduct. *Id*. at 554. Here, Advantage Point has not alleged that the Barley

---

[2] It is also worth pointing out the District Court specifically stated that it was "not holding that Plaintiff has established that Defendant [attorney] was a state actor and is subject to liability under §1983 for the purpose of this cause of action." *Belkowski*, 2010 U.S. Dist. LEXIS 34194 at 9.

3

Defendants, or anyone else, participated in a fraud. An attorney cannot be deemed to have been acting in the course and scope of representing his client, where the conduct at issue is the commission of a crime.  The allegedly wrongful conduct imputed to the Barley Defendants that purportedly gives rise to Advantage Point's instant claims consist of; a) allegedly assisting the SSM defendants in preparing the April 15, 2014 to the Kutztown Borough manager; b) objecting to Advantage Point's exemption request to the DEP on behalf of Kutztown; (c) filing the successful appeal with the EHB on behalf of Kutztown; and, (d) targeting Advantage Point with a preliminary injunction on behalf of Kutztown.  Each of these tasks constitute providing legal services to a client.  They do not concern fraudulent conduct that would fall outside the scope of providing legal services. Accordingly, the holding in *Fenstermacher* is inapplicable.

### B. THE BARLEY DEFENDANTS CANNOT BE HELD LIABLE TO PLAINTIFFS UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL

The Barley Defendants do not believe that Plaintiff has sufficiently addressed their arguments as to the collateral estoppel defense; thus, no further briefing is required.

### C. PLAINTIFF CANNOT DEMONTRATE A VIABLE EQUAL PROTECTION CLAIM

Equal protection claims are traditionally brought by "plaintiffs who allege that they are members of a protected class that has been denied equal protection of the law." *Timoney v. Upper Merion Twp.,* No, 01-1622, 2004 WL 2823227, at *3 (E.D. Pa. Dec. 8, 2004). However, plaintiffs who are not members of a protected class can bring an equal protection claim under a "class of one" theory. *Id.*  Advantage Point does not claim that it has been denied equal protection under a protected class theory; rather, its claim is premised on a class of one theory.

As more thoroughly set forth in the SSM Defendants' arguments in support of dismissal of Plaintiff's Second Amended Complaint, which are incorporated herein by reference, the Advantage

Point Development is nothing like other properties in Maxatawny that have been permitted to connect to Kutztown's sewer main.  Advantage Point does not seek to connect to Kutztown's Interceptor Main pursuant to the SCRA Agreement.  It alleges that the Agreement is no longer in force.  By contrast, however, all other Kutztown residents who have tapped into Kutztown's Interceptor Main, were only able to do so pursuant to the terms of the SCRA Agreement between Kutztown and Maxatawny.  Advantage Point is thus not similarly situated to other residents of Maxatawny in this regard.

To the extent Advantage Point relies on its new claim regarding Kutztown's alleged obstruction of Maxatawny's efforts to construct a new Force Main through the Borough of Kutztown, such reliance is misplaced.  Such conduct, even if proven, does not reflect discrimination against Advantage Point.  Moreover, Advantage Point has not alleged that it would be the only user of the new Force Main proposed by Maxatawny; thus, it cannot be deemed to be a class of one for purposes of its equal protection claim.  Accordingly, Advantage Point's equal protection claim should be dismissed.

**D. ADVANTAGE POINT'S TORTIOUS INTERFERENCE CLAIMS AS ASSERTED AGAINST THE BARLEY DEFENDANTS SHOULD BE DISMISSED**

Each of Advantage Point's claims pertains to the Barley Defendants' communications addressed to its clients, to agents of Maxatawny, and in materials filed with the DEP, the EHB, and the Berks County Court of Common Pleas.  All of the communications pertain to the Barley Defendants' efforts to resolve a legal dispute with Maxatawny on behalf of Kutztown.  The doctrine of judicial privilege, thus, serves to immunize the Barley Defendants from Advantage Point's instant claims.

In its response brief, Advantage Point merely refers to the Jenkins letter in support of its contention that the Barley Defendants interfered with its contracts and prospective contracts, further suggesting that the Jenkins' letter was not sent in contemplation of litigation, but that the letter caused litigation. As recognized by the EHB, the letter was sent to Kutztown from its engineers. The letter, therefore, cannot be deemed to have interfered with Advantage Point's contracts or prospective contracts.

Even if the letter could be deemed to have interfered with Advantage Point's contractual or prospective relationships, it clearly contemplates litigation between Kutztown and Maxatawny. As alleged by Plaintiff, the letter suggests that Kutztown resolve its dispute with Maxatawny regarding the SCRA Agreement before issuing a certification for Advantage Point's Development - the very issue that is currently being litigated in the Berks County Court of Common Pleas and which was at issue before the EHB. Accordingly, even if the Barley Derfenants did assist SSM in drafting the letter, they are entitled to judicial immunity.

Even if the doctrine of judicial immunity did not apply, Advantage Point's tortious interference claims must fail. Advantage Point alleges that the Defendants tortiously interfered with its Public Sewer System Capacity Reservation Agreements Contracts with Maxatawny. (Second Amend. Comp. at ¶330). In its instant response to the instant motions at p. 53, Advantage Point attempts to add two additional tortious interference claims, stating:

> "[w]ith respect to its prospective relations, the Defendants' conduct has interfered with Advantage's ability to either (a) sell the project for a significant return on investment or (B) develop the Project and enter into leases with the student tenants to occupy the 337 apartment units, thereby depriving Advantage of the revenues the Project would have generated."[3]

---

[3] At ¶335 of its Second Amended Complaint, Advantage Point offers the threadbare legal conclusion that "[a]s a direct result of the Defendants' tortious interference, Advantage was unable to either develop or sell the Property at a significant profit." This allegation does not allege that the defendants interfered with Advantage Point's contracts with a prospective buyer of the development. Nor does it reflect interference with prospective contracts between Advantage Point and prospective lessees.

6

Advantage Point has not identified any potential buyers of the development. Nor has it identified any potential apartment lessees. Even if Plaintiff were permitted to add new tortious interference claims in response to Rule 12(b)(6) motion, its failure to identify the prospective contracting parties is fatal to its claims. *Polydyne, Inc. v. City of Phila.*, 2005 Phila. Ct. Com. Pl. LEXIS 250 (Pa. C.P. 2005) ("In order to bring a claim for tortious interference with contractual relations, [plaintiff] must specifically identify the entities with which he had existing or prospective contractual relationships.").

Moreover, Advantage Point's tortious interference claims as pled, and as newly fabricated in its response brief, are not viable because the Defendants are not alleged to have directed interference at a third party in order to influence him not to deal with Advantage Point. As determined by the EHB, "[t]he [Jenkins] letter is clearly addressed to Kutztown, not Maxatawny, Advantage Point, or the Department [of Environmental Protection]. Jenkins viewed himself as providing comments for the sole use of his client [Kutztown]."[4] However, in order to state a viable tortious interference claim, the alleged inducement must be "conduct conveying to the third person the actor's desire to influence him not to deal with the other." *Binks Mfg. Co. v. Bedwell Co.*, 1997 U.S. Dist. LEXIS 11661 (E.D. Pa. 1997), *citing* Restat. 2d of Torts, § 766 cmt. k. As held by this Court:

> If the actor's conduct has the unintended result of harming prospective relations, no liability attaches under § 766. The interference must be directed toward a third party business relation. Pennsylvania has not adopted Restatement Section 766A, which contemplates a cause of action for interference directed at the plaintiff. Section 766B defines the tort of interference with prospective contractual relations, mirroring the language of Section 766. As in the case of interference with existing contractual relations, Pennsylvania courts have not recognized the Restatement

---

[4] Barley Defendants' memorandum, Exhibit "2" at p. 16.

> (Second) Section 766B, which contemplates a cause of action for conduct directed toward the plaintiff, rather than a third party. *Waterfront Renaissance Assocs. v. City of Philadelphia*, 2008 U.S. Dist. LEXIS 25868, 31-32 (E.D. Pa. Mar. 31, 2008).

See also, *Leopold Graphics, Inc. v. CIT Group/Equipment Fin., Inc.*, 2002 U.S. Dist. LEXIS 11633 (E. D. Pa. 2002) ("Plaintiff's interference with contract claim, as pled, must be dismissed since it does not allege that Defendants directed any action toward Plaintiff's customers in an attempt to induce them to breach their contracts with Plaintiff.").

Advantage Point has not alleged any conduct reflecting that the Barley Defendants directed their alleged interference at any third parties. Even if Advantage Point could demonstrate that the Barley Defendants' conduct caused Maxatawny, prospective buyers of the development, or renters of units, to not deal with Advantage Point, such would not give rise to liability for tortious interference because the interference was not directed them. Accordingly, Advantage Point's tortious interference claim as asserted against the Barley Defendants should be dismissed with prejudice.

### E. ADVANTAGE POINT DOES NOT HAVE THE CAPACITY TO BRING THE INSTANT LAWSUIT

In its response brief, Advantage Point argues that pursuant to Fed. R. Civ. P. 17(b)(3)(A), it is not required to file its instant lawsuit in the name of its partners. That rule, however, provides that a limited partnership may only prosecute a lawsuit in its common name if the laws of the state where the suit is commenced do not provide the limited partnership with the capacity to sue. Under Pennsylvania law, limited partnerships do have the capacity to bring suit, as long as the suit is brought in the name of its then partners trading in the firm name. Pa .R. C. P 2127(a) provides that "[a] partnership having a right of action shall prosecute such right in the names of the then partners trading in the firm name, in the following manner: 'A, B and C trading

as X & Co." Pa. R. Civ. P. 2127(a).'" As Advantage Point is not a real party in interest in this matter, its instant claims should be dismissed.

### III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Barley Defendants' Motion to Dismiss, Defendants, Timothy G. Dietrich, Esquire, Keith Mooney, Esquire, Jeffrey D. Lobach, Esquire, George Werner, Esquire, and Barley Snyder, LLC, respectfully request that this Honorable Court dismiss them from this matter with prejudice.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

BY: /s/ Aaron Moore
**ARTHUR W. LEFCO, ESQUIRE**
**AARON E. MOORE, ESQUIRE**
Attorney ID No.: 12909
Attorney ID No.: 91672
2000 Market Street
Suite 2300
Philadelphia, PA 19103
215-575-2899
Attorneys for Defendants, Timothy G. Dietrich, Esquire, Keith Mooney, Esquire, Jeffrey D. Lobach, Esquire, George Werner, Esquire, and Barley Snyder, LLC

Date: 9/11/2015

9

## CERTIFICATE OF SERVICE

      Aaron Moore hereby certifies that on the date set forth below he served the foregoing Reply in Support of Motion to Dismiss Plaintiff's Second Amended Complaint on all parties to this matter via ECF filing.

                                                   */s/ Aaron Moore*
                                                   Aaron E. Moore

Date: September 11, 2015