UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————

| | | |
|---|---|---|
| ADVANTAGE POINT, L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-05517 |
| | : | |
| BOROUGH OF KUTZTOWN; KUTZTOWN | : | |
| MUNICIPAL AUTHORITY; PEGGY | : | |
| DEVLIN; SANDRA K. GREEN; GABRIEL | : | |
| KHALIFE; DEREK D. MACE; RACHAEL | : | |
| B. MARTIN; JAMES F. SCHLEGEL; | : | |
| EDWIN K. SEYLER; KEVIN J. SNYDER; | : | |
| LEE W. ERB; WILLIAM FOX; ANDREW | : | |
| SCHLEGEL; SHEILA FULTON; DONALD | : | |
| L. SECHLER; SSM GROUP, INC.; DARYL | : | |
| A. JENKINS; CHRISTINA CRAWFORD; | : | |
| TIMOTHY G. DIETRICH, ESQUIRE; | : | |
| KEITH MOONEY, ESQUIRE; JEFFREY | : | |
| D. LOBACH, ESQUIRE; GEORGE | : | |
| WERNER, ESQUIRE; CHARLES HAWS, | : | |
| ESQUIRE; BARLEY SNYDER, LLC, | : | |
| | : | |
| Defendants. | : | |

———————————————————————————

## MEMORANDUM OPINION

**SSM Defendants' Motion to Dismiss, ECF No. 87 – Granted in part and denied in part**
**Kutztown Defendants' Motion to Dismiss, ECF No. 88 – Granted in part and denied in part**
**Barley Snyder Defendants' Motion to Dismiss, ECF No. 90 – Granted in part and denied in part**

**Joseph F. Leeson, Jr.**                                                    **March 24, 2016**
**United States District Judge**

## I.      Introduction

Motions to Dismiss the Second Amended Complaint have been filed by each of the three sets of Defendants in this case: the Kutztown Defendants,[1] ECF No. 88, the SSM Defendants,[2] ECF No. 87, and the Barley Snyder Defendants,[3] ECF No. 90. For the reasons stated below, Defendants' motions are granted in part and denied in part.

## II.     Factual Background

### A.      The Saucony Creek Regional Authority Agreement

Accepting as true all of the well-pled facts in the Second Amended Complaint, and drawing all reasonable inferences in favor of Advantage Point as the non-moving party, the pertinent facts are as follows. On May 4, 2006, Maxatawny Township ("Maxatawny") and the Borough of Kutztown ("Kutztown") entered into the Saucony Creek Regional Authority Agreement ("SCRA Agreement"), an inter-municipal sewage service agreement relating to the Maxatawny wastewater treatment plant. Second Am. Compl. ¶¶ 51, 105, ECF No. 83. Over time, differences arose between Kutztown and Maxatawny, and on October 25, 2012, Maxatawny advised Kutztown that it was withdrawing from the SCRA Agreement. Id. ¶ 107. On December 10, 2013, Kutztown advised Maxatawny that Kutztown was confiscating the Maxatawny plant due to Maxatawny's alleged breach of the SCRA Agreement. Id. ¶ 114. In response to this threat,

---

[1]      The Kutztown Defendants are Borough of Kutztown, Kutztown Municipal Authority, Gabriel Khalife (manager of the Borough and the Authority), Edwin Seyler, Peggy Devlin, Derek Mace, Rachael Martin, James Schlegel, and Kevin Snyder (Borough Council members), Sandra Green (Mayor of Kutztown), and Lee Erb, William Fox, Andrew Schlegel, Sheila Fulton, and Donald Sechler (members of Kutztown Municipal Authority).

[2]      The SSM Defendants are SSM Group, Inc. (Kutztown's engineers) and two SSM employees, Darryl Jenkins and Christina Crawford.

[3]      The Barley Snyder defendants are Barley Snyder, LLC, Timothy Dietrich, Keith Mooney, Jeffrey Lobach, George Werner, and Charles B. Haws. They are alleged to have acted as counsel for Kutztown and on their own behalf throughout the proceedings giving rise to this litigation.

2

Maxatawny filed a declaratory judgment action in Pennsylvania state court seeking a determination that Kutztown had waived its rights under the SCRA Agreement by not timely demanding arbitration as required in the Agreement. Id. ¶ 119. According to the Second Amended Complaint, Barley Snyder, Kutztown's counsel, is responsible for this failure to timely arbitrate, a failure that rises to the level of alleged malpractice. Id. ¶¶ 104, 116.

**B.      Availability of Sewage Treatment for Advantage Point's Project**

Advantage Point, a developer, planned for a student housing project to be located in Maxatawny. Id. ¶¶ 47-49, 52. Advantage Point owns the land on which the project is to be built. Id. ¶¶ 54-56. As originally envisioned, the project would tie into the Maxatawny Township Municipal Authority ("MTMA") Area A Sanitary Sewer System. Id. ¶ 68. The Area A System connects to the Maxatawny wastewater treatment plant through a twenty-inch gravity sewer main located in, and owned by, Kutztown. Id. ¶ 69. The Kutztown main connects, in turn, to Kutztown's wastewater treatment plant. Id. Kutztown treats some of the wastewater, while a portion of it is diverted to Maxatawny's wastewater treatment plant, which was constructed to serve Maxatawny residents within Area A. Id. ¶ 70.

The Kutztown main has the capacity to process an additional 300,000 gallons per day ("GPD") of wastewater than it is presently processing. Id. ¶ 81. One half of this capacity has been allocated to Maxatawny to serve Area A. Id. Of this portion, 26,174 GPD are in use, leaving 123,826 GPD unused. Id. ¶ 83. Advantage Point's project would require 69,544 GPD. Id. ¶ 84. Prior to the present dispute, Kutztown had not objected to the use of the main by any other customers located in Maxatawny, including the Cedar Shopping Center Development, a mixed use commercial development center that is also part of the Area A System and makes use of the Kutztown main for sewage. Id. ¶¶ 97-98.

C.      **Maxatawny's Request for Exemption from the Sewage Planning Process**

To allow the Advantage Point project's sewer to tie into the Area A System, on February 25, 2014, Maxatawny made an Act 537 exemption request to the Pennsylvania Department of Environmental Protection ("DEP" or "the Department"). Id. ¶ 131. Under Act 537, also known as the Pennsylvania Sewage Facilities Act, 35 Pa. Stat. and Cons. Stat. § 750.1-750.20 (West, Westlaw through 2016 Regular Session Act 4), townships within the Commonwealth are required to develop and implement sewage-treatment plans and construct sewage-treatment systems to service properties within their boundaries. Pursuant to Title 25, Section 71.51 of Pennsylvania's Administrative Code, a municipality shall revise its official plan whenever a new "subdivision" is proposed, except that a municipality need not revise its plan "for subdivisions proposing a connection to or an extension of public sewers" when certain requirements have been satisfied. 25 Pa. Code § 71.51(b)(2). Among these requirements is that the applicant must provide

> written certification from the permittees of the collection, conveyance and treatment facilities to the municipality in which the subdivision is located and the Department or delegated agency with jurisdiction over the municipality in which the subdivision is located that there is capacity to receive and treat the sewage flows from the applicant's proposed new land development and that the additional wasteload from the proposed new land development will not create a hydraulic or organic overload or 5-year projected overload.

Id. § 71.51(b)(2)(iii). Municipalities that can meet this and other requirements are exempted from the requirement to revise their official plan.

In connection with Maxatawny's Act 537 exemption request, DEP asked Kutztown to certify that the Kutztown main had sufficient capacity to serve Advantage Point's project. Second Am. Compl. ¶ 132. However, "[o]nce it became clear that Defendants could attempt to exert pressure on Maxatawny over the SCRA dispute using the Advantage Point Project as

4

leverage, Kutztown in effect enacted a policy of selectively preventing the Advantage Point Project from using the Main." Id. ¶ 129.

According to the Second Amended Complaint, the development and implementation of this alleged policy proceeded by means of a conspiracy between the Kutztown Defendants, SSM Defendants, and Barley Snyder Defendants. The alleged "masterminds" of the conspiracy were the Barley Snyder Defendants, who "instructed and advised the Kutztown Defendants to block the Advantage Point Project to put pressure on Maxatawny so that Maxatawny would change its position on the SCRA agreement," thus enabling the Barley Snyder Defendants to conceal their alleged malpractice with respect to the SCRA Agreement. Id. ¶ ¶ 44, 209-210. The conspiracy unfolded as follows. "First, the Kutztown Defendants, together with the Barley [Snyder] Defendants and SSM Defendants, conspired to prevent Advantage and Maxatawny from obtaining approval of Maxatawny Township's Act 537 Exemption Request" by refusing to certify that the Kutztown main had sufficient capacity for Advantage Point's project. Id. ¶¶ 130, 133. This aspect of the alleged policy is evidenced by a letter dated April 15, 2014, from Darryl A. Jenkins of the SSM Group to Gabriel Khalife, Kutztown Borough Manager, which Jenkins prepared "at the direction of Kutztown and the Barley Defendants, including Mooney and Dietrich." Id. ¶¶ 138-39 and Ex. E. In that letter, Jenkins correctly stated that 150,000 GPD of capacity in the Kutztown main was allocated to Maxatawny, correcting an error in a previous letter, dated April 9, 2014, in which Jenkins had stated that only 75,000 GPD was allocated. Id. ¶ 142. However, in the April 15 letter Jenkins also stated that "[u]ntil the issue is resolved regarding whether or not the SCRA agreements remain in full force and effect, it would seem that [Maxatawny] Township and MTMA's authority to flow sewer through the Kutztown [main] is at issue and must be resolved." Id. Ex. E. By means of this statement, Jenkins's letter

"announced a new policy targeted at one development – the Advantage Point Project." Id. ¶ 144. This policy "required Maxatawny first would have to bow down to Kutztown's demands concerning the SCRA Agreement, before [the] Advantage Point Project would be permitted to proceed." Id.  In short, Advantage Point alleges that Defendants, "by way of their April 15, 2014 letter, effectively established that until the dispute between Maxatawny and Kutztown concerning the SCRA agreement is resolved (in Kutztown's favor), Kutztown will not permit the Advantage Point Project to go forward." Id. ¶ 147.

On April 30, 2014, DEP approved Maxatawny's Act 537 exemption request, having determined that Jenkins's April 15, 2014 letter constituted the required certification of the Kutztown main's capacity. Id. ¶¶ 148-49. Kutztown appealed DEP's approval to the Pennsylvania Environmental Hearing Board ("EHB"). Id. ¶ 150.

### D.      The EHB's Adjudication and the Commonwealth Court Opinion

On December 16, 2014, the EHB issued an Adjudication in favor of Kutztown, finding that the April 15, 2014 Jenkins letter did not constitute the required certification of the Kutztown main's capacity. See Borough of Kutztown, No. 2014-064-L, 2014 WL 7407202 (Pa. Envtl. Hearing Bd. Dec. 16, 2014). The EHB found that it was "very clear" that the April 15, 2014 Jenkins letter did not supply the necessary certification, which meant that "the Department erred in granting the planning exemption to Maxatawny Township for the Advantage Point project." Id. at *12.

Maxatawny appealed the EHB decision to the Commonwealth Court of Pennsylvania, and Advantage Point and Kutztown intervened. See Maxatawny Twp. v. Dep't of Envtl. Prot.,

No. 2369 C.D. 2014, 2015 WL 6474282 (Pa. Commw. Ct. Oct. 16, 2015).[4] The court affirmed the EHB's decision, finding that the EHB used the proper standard of review and that the decision was supported by substantial evidence. Id. at *8, *10.

### E.      The New Force Main

"Faced with the improper obstruction of the Advantage Point Project by Defendants, and by Kutztown's de facto policy to block Advantage's ability to connect to the Main, while allowing other similarly situated users, Maxatawny was forced to change course in an attempt to salvage the Project." Second Am. Compl. ¶ 159. Accordingly, in April 2015 Maxatawny submitted an Act 537 Official Plan Revision to DEP that included the proposed construction of a "new force main" which would re-route sewage from the Area A System away from the Kutztown main. Id. ¶ 161. With the new main, the Advantage Point project would be able to use the Area A System without the need to use Kutztown's main. Id. ¶ 162.

By letter dated May 21, 2015, Charles Haws (a Barley Snyder attorney) wrote to DEP to "convey the comments of [Kutztown]" regarding the new main plan. Id. Ex. I. Among other things, the letter stated that because Maxatawny's plan proposed that the new main would flow through an influent pump station located on property owned by Kutztown, the plan "creates a clear property dispute." Id.  Haws also enclosed a letter dated May 13, 2015, from Jenkins, on behalf of SSM to Gabriel Khalife, Manager for the Borough of Kutztown. Id. Jenkins wrote that his letter was "intended to provide a general summary of the content of the [new main] planning module." Id. According to the Second Amended Complaint, the concerns raised by Barley Snyder and SSM with respect to the new main plan "are frivolous, and are intended solely to harm Advantage and Maxatawny." Id. ¶ 178.

---

[4]      Advantage Point notified this Court of the Commonwealth Court's decision in a supplemental brief. See ECF No. 101.

On May 22, 2015, DEP approved Maxatawny's plan revision for the new main. <u>Id.</u> ¶ 181. On June 19, 2015, "at the urging of the Barley Defendants and SSM Defendants," Kutztown appealed the approval to the EHB, "despite the lack of legitimate grounds to do so." <u>Id.</u> ¶¶ 183, 187. On February 29, 2016, the EHB issued an Adjudication dismissing Kutztown's appeal of DEP's approval of Maxatawny's new main plan.[5] <u>See</u> <u>Borough of Kutztown</u>, No. 2015-087-L, 2016 WL 1073111 (Pa. Envtl. Hearing Bd. Feb. 29, 2016).

## III.    Procedural History and Advantage Point's Claims

This Court's June 30, 2015, Memorandum and Order dismissed the Amended Complaint without prejudice. <u>Advantage Point, L.P. v. Borough of Kutztown</u>, No. CIV.A. 14-5517, 2015 WL 4079472 (E.D. Pa. July 2, 2015); ECF Nos. 81-82. Advantage Point subsequently filed its Second Amended Complaint on July 17, 2015, adding Barley Snyder Defendant Charles Haws and including the following claims: (1) violation of Advantage Point's right to equal protection under the Fourteenth Amendment; (2) violation of Advantage Point's due process rights under the Fourteenth Amendment; (3) violation of Advantage Point's procedural due process rights under the Fourteenth Amendment; (4) violation of the Fifth Amendment's Takings Clause; (5) retaliation in violation of the First and Fourteenth Amendments;[6] (6) tortious interference with existing or prospective contractual relations; and (7) Title VI civil conspiracy. In response, each of the three sets of Defendants moved to dismiss all of Advantage Point's claims against them.

## IV.    Legal Standard – Motion to Dismiss

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

---

[5]     Advantage Point notified this Court of the EHB's Adjudication in a supplemental brief. <u>See</u> ECF No. 103.

[6]     This claim was not included in the previous Amended Complaint.

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). While Rule 8 of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citing Twombly, 550 U.S. at 555)); see Fed. R. Civ. P. 8(a)(2). For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d 224, 232 (citing Twombly, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 678. Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555). This is because Rule 8(a)(2) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'" See id., 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Detailed factual allegations" are not required, id. at 678 (quoting Twombly, 550 U.S. at 555), but a claim must be "nudged . . . across the line from conceivable to plausible," id. at 680 (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,'" but there must be "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

V.     **Analysis - Threshold Issues**

A.     **Advantage Point's claims against Defendants are not precluded by the doctrine of collateral estoppel.**

"Issue preclusion, also known as collateral estoppel, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" M & M Stone Co. v. Hornberger, No. CIVA 07-CV-4784, 2009 WL 3245460, at *10 (E.D. Pa. Sept. 30, 2009) (quoting Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009)).

> Under Pennsylvania law, issue preclusion applies if (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom issue preclusion is asserted was a party, or in privity with a party, in the prior case; (4) the party, or person privy to the party, against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

Id.

As detailed in the Court's previous Memorandum, Advantage Point's Amended Complaint included numerous allegations concerning the "preparation and purpose" of Jenkins's April 15, 2014 letter, including, for example, allegations that Jenkins prepared the letter "to be used by the Kutztown Defendants to interfere with Advantage's rights" and that the letter "was prepared to unlawfully oppose the Exemption Request." See Advantage Point, 2015 WL 4079472, at *4 (quoting Am. Compl. ¶¶ 133, 145). The Court found that all such allegations concerning Jenkins's unlawful purpose in preparing the letter were at odds with and therefore precluded by the EHB's findings as set forth in its Adjudication. Id. at *9. Specifically, the Court found that Advantage Point was precluded from alleging that "the Jenkins [April 15] letter was anything more than what the EHB found that it was—comments from the borough engineer to the borough manager." Id. The Court found that "rendering such comments does not provide an

adequate factual basis for the constitutional claims asserted against the SSM defendants," and the Court therefore dismissed all such claims against the SSM Defendants. Id. The Court cautioned Advantage Point to "give due deference to the multiple findings of the EHB in particular, and principles of collateral estoppel in general, should it decide to file a second amended complaint." Id.

Defendants contend that Advantage Point has failed to heed the Court's warning by continuing to assert claims pertaining to Jenkins's April 15, 2014 letter that have already been rejected by the Court. SSM Defs.' Mem. 9-15, ECF No. 87-1; Kutztown Defs.' Mem. 34-35, ECF No. 89; Barley Defs.' Mem. 14-15, ECF No. 90. Advantage Point responds that the claims in the Second Amended Complaint "do not depend on the April 15th letter itself. Instead, the letter (along with the April 9th letter) is relevant because it shows the unlawful de facto policy of the Defendants to block the development of the Project." Pl.'s Br. 18, ECF No. 92.

The Court agrees with Advantage Point that the Second Amended Complaint alleges that the primary source of harm to Advantage Point is the "policy" enacted by Defendants to oppose Advantage Point's project and use of the main, rather than the Jenkins letters as such, and that the allegations concerning the alleged policy are not precluded by the EHB Adjudication. As Advantage Point observes, the EHB found that "a permittee's reasons for withholding a certification are irrelevant from the Department's perspective" and "[t]here is no occasion for the Department (or this Board) to scrutinize the permittee's motivation in withholding its certification." Id. (quoting Kutztown, 2014 WL 7407202 at * 8). In short, the EHB did not make any preclusive findings concerning the motivations behind Kutztown's alleged withholding of the certification or the existence of the policy alleged by the Second Amended Complaint.

Accordingly, Advantage Point's claims against Defendants based on the policy alleged in the

Second Amended Complaint are not precluded by the EHB's findings.

### B.        Advantage Point's claims are ripe.

The SSM Defendants contend that Advantage Point's claims are unripe because:

(1) Kutztown has not yet had an opportunity to make a final decision regarding
the certification for the capacity of the Main; (2) there is a pending appeal of the
DEP's grant of Maxatawny's Request to construct the New Main; and (3) there is
pending litigation about Maxatawny's right to use the Main.

SSM Defs.' Mem. 15. The SSM Defendants cite the United States Court of Appeals for the Third

Circuit's holding in Acierno v. Mitchell, 6 F.3d 970 (3d Cir. 1993), that "a constitutional

challenge to a land-use decision is not ripe unless 'state authorities [are] given an opportunity "to

arrive[ ] at a final, definitive position regarding how [they] will apply the regulations at issue to

the particular land in question."'" Id. at 974 (quoting Taylor Inv., Ltd. v. Upper Darby Twp., 983

F.2d 1285 (3d Cir. 1993)). The Third Circuit has "consistently applied this finality rule to bar

constitutional claims by property owners or tenants who have challenged the denial of a permit

by an initial decision-maker but failed to take advantage of available, subsequent procedures."

Lauderbaugh v. Hopewell Twp., 319 F.3d 568, 574 (3d Cir. 2003).

Advantage Point contends that there are no procedures by which it can appeal or

otherwise challenge Kutztown's alleged decision to refuse to certify the capacity of the main.

Pl.'s Mem. 23. The Court agrees.[7] Although the EHB Adjudication discussed a "normal planning

process" that Maxatawny Township could pursue if it were unable to obtain the planning

---

[7]        Defendants contend that Advantage Point could have employed a procedure under
Pennsylvania's Act 537 in which "any person who is a resident or legal or equitable property
owner in a municipality may file a private request with the department requesting that the
department order the municipality to revise its official plan." 35 Pa. Stat. Ann. § 750.5; see SSM
Defs.' Mem. 23; Kutztown Defs.' Mem. 18. There is no indication, however, that Advantage
Point is "a resident or legal or equitable property owner" in Kutztown such that Advantage Point
would be able to avail itself of this procedure.

exemption it sought, this normal planning process "also requires a similar certification" from Kutztown as to the capacity of the main. Kutztown, 2014 WL 7407202, at *3. Accepting as true Advantage Point's allegation that Kutztown refuses to provide a certification until its demands are met, it follows that pursuit of the normal planning process would be futile. See Cty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 167 (3d Cir. 2006) (holding a plaintiff's facial challenge to a zoning ordinance was ripe when "[i]t would be an exercise in futility to require appellants to seek a variance from an ordinance specifically directed at their properties"); see also Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 349 (2d Cir. 2005) ("A property owner . . . will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile."). Accordingly, because Advantage Point has not failed to take advantage of any available procedures, its claims are ripe.[8]

### C.   Advantage Point has adequately alleged that the SSM Defendants acted under color of state law.

As set forth above, according to the Second Amended Complaint, the SSM Defendants violated Advantage Point's constitutional rights by participating, along with the Kutztown Defendants and the Barley Snyder Defendants, in the development and implementation of a policy to block Advantage Point's use of the Kutztown main.

"Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998).

---

[8]     In their brief, the Kutztown Defendants contend that Advantage Point's claims are unripe because of the pending appeal before the Commonwealth Court relating to Maxatawny's Act 537 Exemption Approval. Kutztown Defs.' Mem. 12. This argument is moot in view of the Commonwealth Court's decision discussed above. See Maxatawny Twp. v. Dep't of Envtl. Prot., No. 2369 C.D. 2014, 2015 WL 6474282 (Pa. Commw. Ct. Oct. 16, 2015).
        Ripeness concerns specifically related to Advantage Point's Fifth Amendment takings claims are discussed in section VI below.

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Mikhail v. Kahn, 991 F. Supp. 2d 596, 645 (E.D. Pa. 2014) (quoting Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010)). Such an agreement "must embody, at its heart, 'an agreement between the defendants and state officials—a "meeting of the minds"—to violate the plaintiff's rights.'" Id. (quoting Chambers v. Phila. Media Network, No. 11–6589, 2013 WL 4857995, at *3 (E.D. Pa. Sept. 12, 2013)). In order to survive a motion to dismiss, a plaintiff "must plead 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" Id. (quoting Great W. Mining & Mineral Co., 615 F.3d at 178).

Here, Advantage Point has plausibly alleged an agreement between the SSM Defendants and the Kutztown Defendants to formulate and implement the alleged policy to block Advantage Point's project and deny it use of the main. As set forth above, Advantage Point alleges that this agreement was formed in early 2014, following Kutztown's receipt of DEP's request for a certification of the capacity of its main for the Advantage Point project, and is evidenced by the letters authored by Jenkins in 2014 and 2015. Accepting these allegations as true, and drawing all reasonable inferences in Advantage Point's favor, the Court concludes that Advantage Point has sufficiently alleged that the SSM Defendants acted in conspiracy with the Kutztown Defendants (and Barley Snyder Defendants) and are therefore state actors for purposes of § 1983. See Prosperi v. Twp. of Scott, No. 2:06CV501, 2006 WL 2583754, at *3 (W.D. Pa. Sept. 7, 2006) (finding that a plaintiff's allegations that a private engineering firm irrationally singled out plaintiffs for disparate treatment and conspired with township defendants to prevent them from occupying their home, resulting in a temporary loss of the use and enjoyment of their property, adequately alleged that the firm acted under color of state law); Skepton v. Bucks Cty.,

Pa., 628 F. Supp. 177, 180 (E.D. Pa. 1986) (finding that a government contractor who was discharged from a public construction project sufficiently alleged that a private engineer acted under color of state law when the engineer was intimately involved in the county commissioners' administration of the project, participated in the county commissioners' meeting at which the contractor expressed concerns with the project, and participated in a meeting at which the commissioners decided to discharge the contractor).

    **D.**    **Advantage Point has plausibly alleged that the Barley Snyder Defendants acted under color of state law.**

As set forth above, Advantage Point alleges that the Barley Snyder Defendants "are the masterminds who devised the conspiracy against Advantage and instructed the Kutztown Defendants and SSM Defendants to carry out that conspiracy," in order to conceal their failure to advise Kutztown of the ninety-day limitation period for demanding arbitration under the SCRA Agreement. Second Am. Compl. ¶¶ 44, 193. The Barley Snyder Defendants argue that they "cannot be deemed to have been state actors under § 1983 because the conduct imputed to them which allegedly gives rise to Advantage Point's civil rights claims was done in the course and scope of providing legal services to Kutztown." Barley Defs.' Mem. 15. Advantage Point responds that an "attorney may be sufficiently clothed in the authority of the state when the attorney has gone beyond his or her traditional role as a provider of legal advice and begun to actually make official policy decisions that are ordinarily left to the state," and that in this case the Barley Snyder Defendants have done so by "masterminding" the alleged conspiracy. Pl.'s Mem. 30-31. In particular, Advantage Point relies on the case of Belkowski v. Kruczek, No. 209-CV-1549, 2010 WL 1433099 (W.D. Pa. Apr. 7, 2010), in which a plaintiff alleged that a borough solicitor had ordered her to stop speaking during a public meeting. Based on these allegations,

the court found that the plaintiff plausibly alleged that the solicitor had stepped outside of the traditional functions of an attorney and acted under color of state law. Id. at *3.

"[A]ttorneys performing their 'traditional functions' will not be considered state actors for the purpose of being subject to liability in a § 1983 action." Belkowski, No. 209-CV-1549, 2010 WL 1433099, at *3. Accordingly, "[t]o the extent that an attorney renders advice, drafts correspondence on behalf of a client as to legal disputes, or otherwise engages in litigation and equivalent legal activities, he or she will generally not be subject to liability as a state actor." Id.; see also Herring v. Chichester Sch. Dist., No. CIV. A. 06-5525, 2007 WL 3287400, at *5 (E.D. Pa. Nov. 6, 2007) ("When an attorney's alleged conspiratorial conduct occurs within the scope of representation, the conduct cannot be characterized as an actionable conspiracy."). However, "[t]he application of this protection only goes so far. When a municipality's attorney goes beyond the traditional attorney-client relationship, she may become a state actor." Belkowski, 2010 WL 1433099, at *3; see Frompovicz v. Twp. of S. Mannheim, No. 06-2120, 2007 WL 2908292, at *8 (M.D. Pa. 2007) (finding that the plaintiff stated a viable § 1983 claim against an attorney who went beyond making recommendations and decided official government policies). Here, the conduct alleged – masterminding the alleged conspiracy to block Advantage Point's project and deny it use of the main – is not within the traditional functions of legal counsel. Accordingly, Plaintiff has adequately alleged that the Barley Snyder Defendants acted under color of state law.

### E.     Advantage Point has the capacity to bring suit against Defendants.

The Barley Snyder Defendants contend that Advantage Point does not have capacity to bring the present lawsuit because, under Pennsylvania law, partnerships must proceed in the names of the partners. Barley Defs.' Mem. 12. Advantage Point responds that under Federal Rule

of Civil Procedure 17(b)(3)(A), a partnership or other unincorporated association with no capacity to sue under the relevant state's law may nevertheless sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws. Pl.'s Mem. 58-59. Advantage Point is correct. See Underwood v. Maloney, 256 F.2d 334, 337 (3d Cir. 1958) (stating that Rule 17(b) "provides that in cases by or against unincorporated associations . . . where jurisdiction is bottomed on diversity, as contrasted with jurisdiction based on a federal question, the courts must determine the capacity . . . to sue or be sued by reference to the law of the state in which the federal court is sitting") (emphasis added). Because, here, jurisdiction is based on federal question, Advantage Point may sue in its common name.

### F. Advantage Point's allegation of damages in the amount of $70 million is stricken.

The Barley Snyder Defendants contend that Advantage Point's allegation in paragraph 262 of the Second Amended Complaint that its damages "could grow to be in excess of seventy million dollars" must be stricken pursuant to Local Rule of Civil Procedure 5.1.1.[9] The Barley Snyder Defendants are correct and the allegation is therefore stricken. See Rototherm Corp. v. Penn Linen & Unif. Serv., Inc., No. CIV. A. 96-6544, 1997 WL 419627, at *17 (E.D. Pa. July 3, 1997) (striking an allegation that the "[p]laintiff does not know the full extent of its damages but believes its total damages exceed the sum of $7,000,000.00").

---

[9]     Local Civil Rule 5.1.1, "Pleading Claim for Unliquidated Damages," states:
No pleading asserting a claim for unliquidated damages shall contain any allegations as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the Court, to reveal whether the case is or is not subject to arbitration under Local Rule 53.2, and to specify the nature of the damages claimed, e.g., "compensatory," "punitive," or both.

**VI.    Analysis - Issues Related to Advantage Point's Specific Allegations**

    **A.    Advantage Point states an equal protection claim.**

Advantage Point contends that its equal protection claim against all Defendants is viable under a "class of one" theory. Pl.'s Br. 36. To state a claim under that theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). "Under Third Circuit law, to allege an equal protection claim founded on a 'class of one' theory, a plaintiff need not 'identify in a complaint actual instances where others have been treated differently.'" McLaughlin v. Forty Fort Borough, 64 F. Supp. 3d 631, 647 (M.D. Pa. 2014) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 244 (3d Cir. 2008)). "Determining whether an individual is 'similarly situated' to another individual is a case-by-case fact-intensive inquiry. . . . For that reason, some courts in this Circuit have stated that a final determination of this issue is inappropriate at the motion-to-dismiss stage." Id. (quoting Suber v. Guinta, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012); Borrell v. Bloomsburg Univ., 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013)).

With respect to the first required element, Advantage Point alleges that there are presently 26,174 GPD of sewage from 186 Maxatawny customers flowing through the Kutztown main, and that all such customers, including the Cedar Shopping Center, a mixed-use commercial development center in Maxatawny, are similarly situated to Advantage Point. Second Am. Compl. ¶¶ 97-101. Defendants contend that there are "vast differences" between Advantage Point's project and the 186 existing Maxatawny customers, such that Advantage Point is not similar situated to these customers. SSM Defs.' Mem. 21-22; see Kutztown Defs.' Mem. 30-31. In particular, the SSM Defendants contend that the Cedar Shopping Center

"reserved 15,000 GPD of sewer treatment capacity and is presently using only 3,000 GPD," while Advantage Point's project "consists of 337 apartment units and one multi-use/recreation building," for which Advantage Point seeks an allowance of 69,544 GPD of sewer treatment capacity – more than four times the sewer capacity that the Cedar Shopping Center had sought. SSM Defs.' Mem. 21. Further, the SSM Defendants cite the case of Clubside, Inc. v. Valentin, 468 F.3d 144 (2d Cir. 2006), which held that no reasonable juror could conclude that a 288-unit development of duplex and triplex townhouses was similarly situated to a 28-lot development of single-family homes when "[t]hese differences of type and scale would impose significantly different burdens on [the town's] sewer and water systems." Id. at 160. Advantage Point responds that the differences in scale between its project and the Cedar Shopping Center are irrelevant because the amount of additional sewage generated by Advantage Point's project is "well within the Main's capacity." Pl.'s Br. 39.

Although Defendants assert that there are vast differences in type and scale between Advantage Point's project and the existing Maxatawny-based users of the Kutztown main, Defendants do not assert that the Advantage Point project would impose a significantly greater burden on Kutztown's main than that imposed by the existing customers. Defendants, therefore, do not counter Advantage Point's contention that the differences in scale are irrelevant because its project is well within the main's capacity. At this stage, then, Advantage Point has sufficiently alleged that it is similarly situated to the existing customers and has successfully stated an equal protection claim under a "class of one" theory.[10]

---

[10]   Defendants do not dispute that Advantage Point has alleged, pursuant to the second and third elements of a "class of one" theory, that Defendants' actions were intentional and lacked a rational basis.

**B.      Advantage Point fails to state a procedural due process claim.**

The Supreme Court outlined the parameters of the Fourteenth Amendment's procedural

due process protection for property interests in <u>Board of Regents v. Roth</u>, 408 U.S. 564 (1972).

> First, the Court emphasized that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." <u>Id.</u> at 569. Second, the Court set forth the rationale for affording procedural protection to those property interests that are protected: "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person <u>has already acquired</u> in certain benefits." <u>Id.</u> at 576 (emphasis added). Third, the Court identified the attributes of the property interests protected by procedural due process:
>
> > "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a <u>legitimate claim of entitlement</u> to it."
>
> <u>Id.</u> at 577 (emphasis added). Finally, the Court identified the sources to which courts should look to determine a plaintiff's "entitlement" to a claimed property interest. Property interests, the Court declared, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." <u>Id.</u>

<u>Indep. Enterprises Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103 F.3d 1165, 1177 (3d Cir. 1997)

(quoting <u>Roth</u>, 408 U.S. 564). "According to the teachings of <u>Roth</u>, therefore, [a plaintiff] may

not pursue its procedural due process claims against [a defendant] unless 'an independent source

such as state law' affords it a 'legitimate claim of entitlement'" to the benefit sought. <u>See id.</u> at

1177-78. "[T]he law of [the Third Circuit] recognizes that 'an entitlement may exist for a benefit

sought but not yet obtained if state law limits the exercise of discretion by the state official

responsible for conferring the benefit.'" <u>Id.</u> at 1179.

Here, Advantage Point fails to allege the existence of any state law limits on the exercise

of Kutztown's discretion to grant or withhold a certification of the main's capacity. On the

contrary, as the EHB observed in its Adjudication, "[a] certification may be withheld for any

reason or no reason at all." See Kutztown, 2014 WL 7407202 at *8. Similarly, the Commonwealth Court of Pennsylvania observed that Maxatawny was unable to point the court to anything "in the statutory or regulatory scheme that indicates a permittee is compelled to certify capacity." See Maxatawny Twp., 2015 WL 6474282 at *9. Rather, "[c]ollaborative certification of capacity is a precondition to an exemption. DEP cannot waive the precondition, and an exemption request may not be granted without it. The Regulation does not mandate that a permittee provide it." Id. Accordingly, under Pennsylvania law Advantage Point has no entitlement to Kutztown's certification of the main's capacity, and it therefore cannot state a claim for a violation of its procedural due process rights.  Because, for the reasons set forth above, amendment would be futile, the Court dismisses Advantage Point's procedural due process claim with prejudice.

### C.      Advantage Point fails to state a substantive due process claim.

In order to allege a violation of substantive due process, a plaintiff must aver that a defendant's conduct deprived the plaintiff of a protected interest involving an arbitrary abuse of official power that "shocks the conscience." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003). The Third Circuit had held that "ownership is a property interest worthy of substantive due process protection." DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 600 (3d Cir. 1995), abrogated on other grounds by United Artists Theatre Circuit, 316 F.3d 392. A landowner's fundamental property interest is implicated "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property," DeBlasio, 53 F.3d at 601, and such situations may be present in cases involving "zoning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiffs," Indep. Enterprises

Inc., 103 F.3d at 1179 n. 12. Here, Advantage Point contends that Defendants' conduct has

impinged upon its use and enjoyment of property.

     Notwithstanding the Third Circuit's holding in DeBlasio, Defendants argue that

Advantage Point's substantive due process claim is foreclosed by Ransom v. Marrazzo, 848 F.2d

398 (3d Cir.1988), in which the Third Circuit held a "[t]he provision of water and sewer services,

whether by a municipality or by a private utility company, is not . . . a federally protected right."

Id. at 412. In Fortune Development, L.P. v. Bern Twp., No. CIV.A. 12-2327, 2013 WL 990454

(E.D. Pa. Mar. 13, 2013), the district court applied the Third Circuit's holding in Ransom to a

residential developer's claim that it had "been unable to secure the wastewater treatment service

it need[ed] [for a proposed development] allegedly due to wrongful and obstructive conduct by

various local government entities." Id. at *1. The court found that, under Ransom, the

developer's interest in wastewater treatment services was not a property interest protected by

substantive due process. Id. at *7-8. The court explained that the deprivation of water or sewer

services did not constitute a denial of the "use or enjoyment of property" under DeBlasio

because, unlike the zoning decisions at issue in DeBlasio, the deprivation of water and sewer

services "does not directly prohibit the property's use." Id. at *8. Similarly, in Warren v. New

Castle County., No. 07–725, 2008 WL 2566947 (D. Del. June 26, 2008), the district court

applied Ransom to reject a developer's argument that it had sufficiently alleged a substantive due

process claim for deprivation of its right to own, use, enjoy, and develop property where "[t]he

only alleged interference with [the developer's] property rights [was] the County's denial of

access to public sewer" and the developer had not alleged that "the County prevented [the

developer] from constructing, entirely at its own expense, a private sewer alternative." Id. at *17-

18. This Court finds the application of Ransom in Fortune Development and Warren to be

persuasive, and accordingly finds that Advantage Point's interest in access to the Kutztown

main, and to sewer service more generally, is not a property interest protected by substantive due

process. For this reason, Advantage Point fails to state a substantive due process claim. Because,

for the reasons set forth above, amendment would be futile, the Court dismisses Advantage

Point's substantive due process claim with prejudice.

### D. Advantage Point's takings claim is unripe.

Advantage Point alleges that Defendants "have interfered with Advantage's property

rights to such an extent that they amounted to a taking of the Property." Second Am. Compl. ¶

320. Defendants contend that Advantage Point's takings claims is unripe because Advantage

Point has failed to allege that it sought just compensation through relevant procedures.[11] SSM

Defs.' Mem. 27.

"The Third Circuit has stated that if a state provides adequate procedures for seeking just

compensation, a property owner must use those procedures before asserting a violation of the

takings clause." Benckini v. Upper Saucon Twp., No. CIV.A. 04-4304, 2005 WL 2649316, at *6

(E.D. Pa. Oct. 17, 2005) (citing Cowell v. Palmer Twp., 263 F.3d 286, 290 (3d Cir. 2001)). "The

Third Circuit has further noted that Pennsylvania law provides for procedures whereby a

landowner may request that a taking be declared and just compensation be determined." Id.

(citing Cowell, 263 F.3d at 290 & n. 2). "[T]he burden is on the property owner to demonstrate

that the state's procedure is either 'unavailable or inadequate' before the claim is ripe." Glendon

Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1119 (E.D. Pa. 1993). "To meet this

burden the property owner must do more than show that the state procedure is unsure and

undeveloped; it must demonstrate either statutory or judicial rejection of such procedures, or

---

[11]     Advantage Point does not respond to this argument. See Pl.'s Mem. 49-51 (discussing
Advantage Point's takings claim).

actually bring an unsuccessful suit in state court." <u>Id.</u> Here, Advantage Point does not allege that it has sought just compensation through state procedures, nor has Advantage Point shown that such procedures are unavailable or inadequate. Accordingly, Advantage Point's takings claim is dismissed as unripe.

### E.       Advantage Point fails to state a First Amendment retaliation claim.

The Second Amended Complaint alleges that after Advantage Point filed the present lawsuit, Defendants retaliated against Advantage Point by "continuing their illegal actions against Plaintiff, and by attempting to block Maxatawny's construction of the New Main." Second Am. Compl. ¶ 325.

To state a First Amendment retaliation claim, a plaintiff must allege facts sufficient to plausibly show three elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006).

Here, Advantage Point has failed to allege a causal link between the protected conduct (filing the present lawsuit) and the alleged retaliatory action (opposition to the Maxatawny's new main plan). The Second Amended Complaint alleges that Defendants' opposition to the new main plan is the "latest manifestation of Kutztown's unconstitutional policy to prevent the development of the Advantage Point Project." Second Am. Compl. ¶¶ 174, 176.  Advantage Point alleges that Kutztown instituted this policy before Advantage Point initiated the present suit. This is at odds with the notion that Defendants opposed the new main plan because of

Advantage Point's protected conduct.[12] See Kriss v. Fayette Cty., 504 F. App'x 182, 189 (3d Cir. 2012) (holding that although the plaintiffs' allegations that county zoning authorities had "ignored them and made biased decisions" against them since at least 1996 may show that the authorities "harbored some general bias" against the plaintiffs, such allegations defeat the plaintiffs' claim that defendants "made biased decisions because of [plaintiffs'] lawsuit in 2009."). Accordingly, because Advantage Point fails to allege the requisite causal link, its First Amendment retaliation claim is dismissed. Because, for the reasons set forth above, amendment would be futile, the Court dismisses the claim with prejudice.

### F.   Advantage Point fails to state a tortious interference with contractual relations claim.

Advantage Point alleges that Defendants' actions "constitute a tortious interference with Advantage's business and development relationship with Maxatawny, including without limitation the Reservation Agreements," Second Am. Compl. ¶ 330,[13] and have resulted in Advantage Point being unable to either develop or sell the project at a significant profit, id. ¶ 335.

"Pennsylvania . . . does not appear to have recognized the tort of intentional interference with the plaintiff's performance of his own contract, although it does recognize a claim for tortious interference with a third party's performance." USPro Coatings & Bldg. Restoration, Inc. v. DIG-HP Cherry Hill Operating, LLC, No. CIV. A. 10-1715, 2011 WL 476521, at *6

---

[12]   Federal Rule of Civil Procedure 8 "permits inconsistency in both legal and factual allegations." Indep. Enterprises Inc., 103 F.3d at 1175. Here, however, Advantage Point is not alleging, for example, that Defendants opposed the new main plan either because of their earlier policy or because of retaliatory motives. Rather, Advantage Point alleges that the opposition to the new main was a continuation and manifestation of the earlier policy.

[13]   The "Reservation Agreements" are agreements reached between Advantage Point and Maxatawny to reserve 74,000 GPD of treatment capacity for Advantage Point's project. See Second Am. Compl. ¶ 87.

(E.D. Pa. Feb. 8, 2011). Accordingly, Advantage Point's allegations that Defendants' conduct has interfered with its performance of its contracts with Maxatawny do not state a cognizable claim.

As set forth above, Advantage Point also alleges that Defendants' conduct has interfered with its <u>prospective</u> contracts insofar as Defendants have "interfered with Advantage's ability to either (a) sell the Project for a significant return on investment or (b) develop the Project and enter into leases with the student tenants to occupy the 337 apartment units." Pl.'s Br. 53. The Third Circuit had held that "[a] prospective contractual relation 'is something less than a contractual right, something more than a mere hope.'" <u>Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.</u>, 401 F.3d 123, 140 (3d Cir. 2005) (quoting <u>Thompson Coal Co. v. Pike Coal Co.</u>, 488 Pa. 198, 412 A.2d 466, 471 (1979)). "In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized absent the defendant's interference." <u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 213 (3d Cir. 2009). "Conclusory speculation that [a plaintiff] might have entered into a business or contractual relationship with unspecified third parties is insufficient to state a claim for tortious interference." <u>Gilmour v. Bohmueller</u>, No. CIV.A. 04-2535, 2005 WL 241181, at *14 (E.D. Pa. Jan. 27, 2005); see also <u>Brunson Commc'ns, Inc. v. Arbitron, Inc.</u>, 239 F. Supp. 2d 550, 578 (E.D. Pa. 2002) (granting motion to dismiss where the plaintiff could not identify "a single past, present or prospective customer" with whom it had a prospective contract that was not finalized because of the defendant's actions). Here, Advantage Point has not identified with specificity the identity of a buyer or any other party with whom it was reasonably likely to enter into a

contractual relationship. For this reason, Advantage Point fails to state a claim for intentional interference of a prospective contractual relation.

Finally, because the extensive facts alleged in the Second Amended Complaint provide this Court with no indication that further amendment could cure the defects identified here, Advantage Point's tortious interference with contractual relations claims are dismissed with prejudice.

**G.     Advantage Point fails to plausibly allege that Defendants formed a conspiracy to discriminate against it on the basis of race, color, or national origin.**

Advantage Point alleges under Count VI that Defendants "have intentionally, purposefully and with deliberate indifference, conspired to violate, and did in fact violate, the rights of plaintiff secured by Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d and 34 C.F.R. Part 100, by acting to target Advantage Point." Second Am. Compl. ¶ 344. Title 42, section 2000d of the U.S. Code provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Title 34, section 100.3 of the Code of Federal Regulations provides that "[n]o person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program to which this part applies." Advantage Point does not make any allegation that it has been discriminated against on the basis of race, color, or national origin, and it therefore fails to state a claim under 42 U.S.C. 2000d and 34 C.F.R. Part 100.[14] Because amendment would be futile, Advantage Point's Title VI conspiracy claims are dismissed with prejudice.

---

[14]     Advantage Point's brief does not discuss these claims.

**H.**     **The individual Kutztown Defendants and Barley Snyder Defendants are not entitled to qualified immunity from Advantage Point's equal protection claim.**

The Barley Snyder Defendants and Kutztown individual Defendants contend that they are entitled to qualified immunity. Kutztown Defs.' Mem. 37. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). There are two related but distinct inquiries in a qualified immunity case. One is whether the defendant's conduct violated the plaintiff's civil rights; the other is whether the right in question was clearly established at the time of the violation. Schneyder v. Smith, 653 F.3d 313, 318 (3d Cir. 2011). Having already found that Advantage Point has plausibly alleged a violation of its equal protection rights, the question becomes whether the particular right at issue was clearly established at the time of the alleged conduct.

"Ordinarily a constitutional duty is not clearly established simply because of the existence of a broad imperative . . . ." See Schneyder , 653 F.3d at 329. Rather, to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 635 (1987)). "The ultimate question . . .  is whether the defendant had '"fair warning" that his conduct deprived his victim of a constitutional right.'" Id. (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)).

Here, the wrongfulness of the alleged conduct is clear. That is, it should have been clear to any reasonable official that intentionally blocking Advantage Point's access to the Kutztown main for irrational and wholly arbitrary reasons, when other similarly-situated users of the main

29

were not treated in the same manner, was violative of Advantage Point's right to equal

protection. Accordingly, the individual Kutztown and Barley Snyder Defendants are not entitled

to qualified immunity. See Teed v. Hilltown Twp., No. CIV.A. 03-CV-6040, 2004 WL 1149486,

at *7 (E.D. Pa. May 20, 2004) (finding that plaintiffs' allegations that their right to equal

protection was violated by township's application of zoning regulations were sufficient to allege

the violation of a clearly established constitutional right).[15]

## VII.   Conclusion

For the reasons stated above, Defendants' motions to dismiss are granted in part and

denied in part. As a result of the Court's determinations in the present Memorandum, Advantage

Point's procedural due process claim, substantive due process claim, First Amendment

retaliation claim, tortious interference claims, and Title VI claim are dismissed with prejudice.

Advantage Point's takings claim is dismissed as unripe. Advantage Point has stated a claim

against all Defendants for violation of its equal protection rights. A separate order follows.

---

[15]    The Barley Snyder Defendants contend that they are immune from liability under the
Pennsylvania common law doctrine of judicial privilege. Barley Snyder Defs.' Mem. 25-26.
"The judicial privilege – often referred to, in Pennsylvania, as 'judicial immunity' – extends to
'communications which are issued in the regular course of judicial proceedings and which are
pertinent and material to the redress or relief sought.'" Gen. Refractories Co. v. Fireman's Fund
Ins. Co., 337 F.3d 297, 311 (3d Cir. 2003) (quoting Post v. Mendel, 507 A.2d 351, 353 (Pa.
1986)). Here, however, the Barley Snyder Defendants' alleged agreement with the Kutztown
Defendants to block Advantage Point's project does not fall within the scope of this privilege.
Moreover, this doctrine is not applicable to Advantage Point's constitutional claims because
"state common law cannot provide a defense to a federal cause of action." See Lin v. Rohm &
Haas Co., No. 2:11-CV-3158-WY, 2014 WL 3509982, at *1 (E.D. Pa. July 16, 2014); see also
Agresta v. Goode, 797 F. Supp. 399, 405 (E.D. Pa. 1992) ("Extension of the judicial privilege to
section 1983 actions would effect a substantial enlargement of official immunity in the section
1983 context.").

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge