UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ADVANTAGE POINT, L.P.,                            :
                                                 :
               Plaintiff,                        :
                                                 :
        v.                                       :     No. 5:14-cv-05517
                                                 :
BOROUGH OF KUTZTOWN;                             :
KUTZTOWN MUNICIPAL AUTHORITY;                    :
PEGGY DEVLIN; SANDRA K. GREEN;                   :
GABRIEL KHALIFE; DEREK D. MACE;                  :
RACHAEL B. MARTIN; JAMES F. SCHLEGEL;  :
EDWIN K. SEYLER; KEVIN J. SNYDER;               :
LEE W. ERB; WILLIAM FOX;                         :
ANDREW SCHLEGEL; SHEILA FULTON;                 :
DONALD L. SECHLER; SSM GROUP, INC.;             :
DARYL A. JENKINS;                                :
CHRISTINA CRAWFORD;                              :
TIMOTHY G. DIETRICH, ESQUIRE;                   :
KEITH MOONEY, ESQUIRE;                          :
JEFFREY D. LOBACH, ESQUIRE;                     :
GEORGE WERNER, ESQUIRE;                         :
CHARLES HAWS, ESQUIRE;                          :
BARLEY SNYDER, LLC,                             :
                                                 :
               Defendants.                       :
_____

## MEMORANDUM AND ORDER

**Barley Snyder Defendants' Motion for Reconsideration, ECF No. 117 – Denied**
**Barley Snyder Defendants' Motion (in the Alternative) to Stay Proceedings, ECF No. 117 –**
**Granted**

**Joseph F. Leeson, Jr.**                                          **May 19, 2016**
**United States District Judge**

        Pending before the Court is a Motion for Reconsideration or (in the Alternative) to Stay

Proceedings of Defendants Timothy G. Dietrich, Esquire, Keith Mooney, Esquire, Jeffrey D.

Lobach, Esquire, George Werner, Esquire, Charles Haws, Esquire, and Barley Snyder, LLC

Eastern District of Pennsylvania (Allentown) (collectively "the Barley Snyder Defendants").

These Defendants seek reconsideration of this Court's Opinion and Order of March 25, 2016,

ECF Nos. 108, 109, granting in part and denying in part their Motion to Dismiss Plaintiff

Advantage Point's Second Amended Complaint. In addition to filing this Motion, the Barley

Snyder Defendants also appealed the Court's decision to deny qualified immunity. If they do not

prevail on their Motion for Reconsideration, the Barley Snyder Defendants seek a stay of these

proceedings during the pendency of their appeal before the United States Court of Appeals for

the Third Circuit of this Court's denial of qualified immunity. For the reasons set forth below,

the Barley Snyder Defendants' Motion for Reconsideration is denied, but their Motion (in the

Alternative) to Stay is granted.

## I.      Legal Standards

### A.      Motion for Reconsideration

To succeed on their Motion for Reconsideration, the Barley Snyder Defendants must

prove they are entitled to relief on one of three grounds: (1) an intervening change in controlling

law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent

manifest injustice. See Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (citing Max's

Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); N. River Ins. Co. v. CIGNA

Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

### B.      Motion to Stay

"In considering whether to grant a stay pending appeal, courts consider the following four

factors: (1) whether the appellant has made a strong showing of the likelihood of success on the

merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially

harm other parties with an interest in the litigation; and (4) whether a stay is in the public

2

interest." In re Revel AC, Inc., 802 F.3d 558, 565 (3d Cir. 2015) (citing Republic of Phil. v. Westinghouse Electric Corp., 949 F.2d 653, 658 (3d Cir. 1991)).

**II.      The Barley Snyder Defendants' Motion for Reconsideration is denied.**

The Barley Snyder Defendants seek reconsideration of the Court's Opinion and Order on three bases, which the Court shall consider in turn.

**A.      Advantage Point has stated an equal protection claim.**

First, the Barley Snyder Defendants seek reconsideration of the Court's determination that Advantage Point has sufficiently alleged an equal protection claim. They contend that Advantage Point is not similarly situated to other Maxatawny residents who connected to the Kutztown main because each of those residents connected to the main pursuant to the Saucony Creek Regional Agreement ("SCRA"), which was no longer in force at the time Advantage Point sought access to the main. Advantage Point responds that its Second Amended Complaint alleges that other Maxatawny residents connected to the Kutztown main both before and after Advantage Point sought access to the main – regardless of the status of the SCRA – and that all such users were able to do so without objection from Kutztown or the Barley Snyder Defendants.

As the Court explained in its previous opinion, "[u]nder Third Circuit law, to allege an equal protection claim founded on a 'class of one' theory, a plaintiff need not 'identify in a complaint actual instances where others have been treated differently.'" McLaughlin v. Forty Fort Borough, 64 F. Supp. 3d 631, 647 (M.D. Pa. 2014) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 244 (3d Cir. 2008)). "Rather, a general allegation that plaintiff has been treated differently from others similarly situated will suffice." Tomino v. City of Bethlehem, No. 08-CV-06018, 2010 WL 1348536, at *14 (E.D. Pa. Mar. 31, 2010) (citing Phillips, 515 F.3d at 244). Here, Advantage Point has made a "general allegation" that the Defendants treated it differently

from other Maxatawny residents who connected to the Kutztown main both before and after Advantage Point sought access to the main, which is sufficient under <u>Phillips</u>.

      **B.**     **Advantage Point has plausibly alleged that the Barley Snyder Defendants acted under color of state law.**

Second, the Barley Snyder Defendants contend that they were not state actors because their alleged wrongful conduct consists only of carrying out the traditional functions of an attorney, including the rendering of advice and drafting of correspondence.

"Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." <u>Filarsky v. Delia</u>, 132 S. Ct. 1657, 1661 (2012) (citing <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982)). As summarized in the Court's previous opinion, courts in this Circuit have found that a municipality's attorney becomes a state actor by going beyond the traditional attorney-client relationship. "For instance, a plaintiff states a viable § 1983 claim against an attorney who goes beyond making recommendations and decides official government policies." <u>See</u> <u>Majer v. Twp. of Long Beach</u>, No. CIV.A.06-2919MLC, 2009 WL 3208419, at *9-10 (D.N.J. Sept. 30, 2009) (denying summary judgment for a municipal attorney who "did not merely provide legal advice and services to his client, but . . . went beyond the usual attorney-client relationship and, even if lacking the requisite legal powers, became a <u>de facto</u> municipal decision-maker"). Here, Advantage Point has alleged that the Barley Snyder Defendants did just that: they decided upon (or "masterminded") Kutztown's alleged policy to block the Advantage Point project for irrational and wholly arbitrary reasons. These averments are sufficient to plausibly allege that the Barley Snyder attorneys went beyond the traditional attorney-client relationship and became state actors.

**C.      The Barley Snyder Defendants are not entitled to qualified immunity.**

Finally, the Barley Snyder Defendants contend that even if they were state actors, they are entitled to qualified immunity from Advantage Point's equal protection claim because their alleged conduct did not violate clearly established federal law. In this respect, they contend that the Court's prior opinion

> did not explain why it should have been clear to the [Barley Snyder] Defendants that they, as attorneys for the Kutztown Defendants, would be violating Advantage Point's right to equal protection by allegedly 'masterminding' Kutztown's decision to block Advantage Point from connecting to its sewer main, even though the SCRA had been terminated by Maxatawny.

Defs.' Mem. Supp. 9.[1]

Based on Supreme Court precedent, the "constitutional right not to be intentionally treated differently than other similarly situated property owners without a rational basis was clearly established" at the time of the conduct alleged in this case. See Gerhart v. Lake County, Montana, 637 F.3d 1013, 1025 (9th Cir. 2011) (citing Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam)). In Olech, the Court held that a property owner stated an equal protection claim against a muncipality under a "class of one" theory when the property owner alleged "that the [municipality] intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the [municipality] required only a 15-foot easement from other similarly situated property owners," and that the municipality did so for "irrational and wholly arbitrary reasons." Olech, 528 U.S. at 565. Similarly, Advantage Point has alleged that the Barley Snyder Defendants, in conspiracy with the other Defendants, treated it differently from other similarly situated Maxatawny residents by means of the conditions they

---

[1]      "Qualified immunity . . . may be available to private individuals under certain circumstances where they are in effect acting as government officials." Lang v. Pa. Higher Educ. Assistance Agency, 610 F. App'x 158, 163 n.7 (3d Cir. 2015).

imposed on Advantage Point for access to the Kutztown main, and that they did so for irrational and arbitrary reasons. This alleges a violation of clearly established law. See also Pa. Care, L.L.C. v. Ashley Borough, No. 3:10-CV-956, 2011 WL 1135008, at *6 (M.D. Pa. Mar. 25, 2011) (observing, in a "class of one" case, that "the complaint's allegations suggest that, despite the fact that no zoning permit was required, [the municipal zoning officer] exercised his authority to shut it down because of a discriminatory animus. If true, [the officer's] conduct violated clearly established law.").

Finally, the Barley Snyder Defendants contend that, with respect to Advantage Point's allegation that they "masterminded" the policy to block their access to the main, the defendants are entitled to have the Court analyze the issue of qualified immunity as to each Barley Snyder Defendant individually. They argue that this is particularly so because "logic dictates that there can only be one mastermind of a plan. To have more than one mastermind, would reflect that there is no master." Defs.' Mem. Supp. 10-11. However, it is apparent that two or more persons can jointly "mastermind" a plan whenever they closely collaborate in the development and organization of the plan, and case law confirms that courts speak of two or more "masterminds" of a single plan or scheme. See, e.g., United States v. Dorado, 554 F. App'x 825, 829 (11th Cir. 2014) (referring to two codefendants as "the masterminds and leaders of [a] fraud scheme"); United States v. Nguyen, 504 F.3d 561, 567 (5th Cir. 2007) (referring to several witnesses as "the masterminds of [a] plan"). Here, Advantage Point has alleged that "[t]he Barley Defendants are the masterminds who devised the conspiracy against Advantage and instructed the Kutztown Defendants and SSM Defendants to carry out that conspiracy." Second Am. Compl. ¶ 44. In other words, the Second Amended Complaint alleges that each of the Barley Snyder Defendants participated in the development and organization of the alleged policy or plan. Advantage Point's

allegation that each of the attorneys participated in the scheme plausibly alleges that each took action that violated clearly established law, which is sufficient to preclude each of them from being protected by qualified immunity.

## III.   The Barley Snyder Defendants' Motion to Stay is granted.

The Barley Snyder Defendants contend that if the Court denies its Motion for Reconsideration, the Court should stay this action pending the Barley Snyder Defendants' appeal of the Court's denial of qualified immunity. They point out that qualified immunity "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." See Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009). Further, the Barley Snyder Defendants state that they "currently represent Kutztown in connection with state court proceedings that concern directly, or indirectly, the SCRA, Maxatawny, and Advantage Point." Id. at 13. They contend that such representation could be "irreparably harmed" if they are required to engage in discovery in this matter. Id. In response, Advantage Point contends that in view of the Barley Snyder Defendants' "deep involvement with the actions of the Kutztown Defendants and the SSM Defendants, even if they are not a party to the case, the Barley Defendants will be third party witnesses, subject to subpoenas for documents and testimony." Pl.'s Mem. Opp'n 14. The Barley Snyder Defendants reply that if they are successful in their appeal and are subsequently subpoenaed as a non-party, they "would not be in a position where they would have to defend themselves. Attorney client privilege would be preserved, and they could continue to represent the Kutztown Defendants in state court proceedings." Defs.' Reply 10, ECF No. 121.

The Supreme Court has consistently held that a qualified immunity defense should be resolved at the earliest possible stage of litigation to avoid undue burdens of litigation. See, e.g.,

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is

resolved, discovery should not be allowed.");  see also Galarza v. Szalczyk, No. CIV.A. 10-6815,

2012 WL 627917, at *2 (E.D. Pa. Feb. 28, 2012) (collecting cases). As one court has explained,

> [t]he United States Supreme Court and Court of Appeals for the Third Circuit
> have placed significance upon relieving government officials from the burdens of
> discovery, when possible, prior to the resolution of whether those officials are
> entitled to qualified immunity. The standard upon which to determine whether to
> stay discovery in these instances strongly favors staying discovery until the
> qualified immunity issue is resolved; however, the standard is permissive, leaving
> such decisions to the discretion of the district court.

Seeds of Peace Collective v. City of Pittsburgh, No. CIV.A 09-1275, 2010 WL 2990734, at *2

(W.D. Pa. July 28, 2010).

Despite this presumption in favor of staying discovery, a number of courts have permitted

discovery to proceed during the pendency of a defendant's interlocutory appeal of a denial of

qualified immunity when participating in such discovery will not impose an undue burden on the

defendant. In Seeds of Peace, for example, the court refused to stay discovery pending an appeal

by a group of individual defendants where the defendants would have "be[en] required to

provide testimony and participate in discovery on the remaining claims even if the Court of

Appeal for the Third Circuit [held] that they [were] entitled to qualified immunity." Id. at *3.

The court determined that in such circumstances, it was "not possible to shield defendants . . .

from the burdens of discovery in this case" regardless of the outcome of the defendants' appeal.

Id. Similarly, in Galarza, the court permitted discovery to proceed against several individual

defendants pending their motions to dismiss on grounds of qualified immunity when those

defendants, regardless of the resolution of the motions, would need to participate in the discovery

process. Galarza, 2012 WL 627917, at *3. The court found that, in such circumstances, there was

"little risk of **undue** burden" on the defendants in allowing discovery to proceed, and that staying

discovery until the motions to dismiss were resolved "would merely delay, rather than relieve, the burden on [the defendants] to participate in discovery." Id.; see also 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.10 (2d ed. 1991 & Supp. 2013) ("Complex questions are presented when one defendant takes an official-immunity appeal but other defendants do not and often cannot. . . . Continued proceedings may be most attractive when the burdens approach those that may be imposed on a nonparty—a good example is discovery, even if the means chosen are available only against a party.").

Here, Advantage Point has alleged that the Barley Snyder Defendants were the primary movers behind the alleged conspiracy to block access to the Kutztown main. It therefore appears that the Barley Snyder Defendants may be required to participate in discovery as a nonparty, even if their appeal is successful and they are granted qualified immunity. Nevertheless, in view of their representation of Kutztown in related state court proceedings, the Barley Snyder Defendants have shown that the potential burden imposed on them as a party could differ significantly from that imposed on them as a non-party. For this reason, and in light of the standard "strongly favor[ing]" staying discovery until the qualified immunity issue is resolved, see Seeds of Peace, 2010 WL 2990734, at *2, the Court grants the Barley Snyder Defendants' Motion to stay these proceedings during the pendency of their appeal.[2]

---

[2]    The parties are advised that the discovery period will commence immediately following the Third Circuit Court of Appeals' decision and shall be completed no later than ninety days after the appeal is decided.

**IV.**     **Order**

**ACCORDINGLY**, this 19th day of May, 2016, **IT IS ORDERED THAT**:

1.  The Barley Snyder Defendants' Motion for Reconsideration is **DENIED**; and

2.  The Barley Snyder Defendants' Motion, in the Alternative, to Stay Proceedings is **GRANTED**, such that this matter is **STAYED** pending the interlocutory appeal before the United States Court of Appeals for the Third Circuit.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge